# UNITED STATES DISTRICT COURT
### For the DISTRICT OF NEVADA
### CIVIL DIVISION

Roger Hillygus
90 Wells Fargo Ave.
Dayton, NV 89403
(775)232-5583
rhilllygus@gmail.com
*In Proper Person*

| | |
|---|---|
| Roger Hillygus, | ) |
| Debbie Hillygus, | ) |
| Susan Hillygus, | ) |
| Herbert Eugene Hillygus (Deceased) | ) |
| The Hillygus family Trust | ) |
| (To be known as Roger Hillygus et.al. | ) |
| | ) |
| **Plaintiffs** | ) |
| --VS-- | ) |
| Frances Doherty, Individually | ) |
| Washoe County Governmental Authority, | ) |
| The 2nd Judicial District Court in Washoe County | ) |
| Judge Frances Doherty, | ) |
| Scott Freeman Chief administrator of | ) |
| The 2nd Judicial District Court in Washoe County, | ) |
| Washoe County Board of supervisors, Comm. | ) |
| Judge David Clifton, | ) |
| David Clifton, | ) |
| Reno Justice Court, | ) |
| City of Reno | ) |
| Reno City Council | ) |
| Yet Unnamed defendants a-m | ) |
| (All to be known as: Frances Doherty et.al.) | ) |
| **Defendants** | ) |

Civil Case No.    **3:18-cv-00212**
Jury Trial  XX  YES

---

## COMPLAINT FOR CIVIL CASE

**The plaintiffs:**

Roger Hillygus
90 Wells Fargo Ave.
Dayton, Nevada 89403
(775)232-5583
rhilllygus@gmail.com

Paid Amt $ 400   Date 5/8/18
NVRNO   004104   Initals KW
Receipt #

Debbie Hillygus
90 Wells Fargo Ave.
Dayton, Nevada 89403

Susan Hillygus
90 Wells Fargo Ave.
Dayton, Nevada 89403

Herbert Eugene Hillygus (deceased)
90 Wells Fargo Ave.
Dayton, Nevada 89403

The Hillygus family Trust
Roger Hillygus Successor Trustee
90 Wells Fargo Ave.
Dayton, Nevada 89403

**Defendants:**

Frances Doherty,
188 Carleton Ct.
Reno, NV 89511

Washoe County Governmental Authority,
1001 East 9th Street,
Reno NV 89512

The 2nd Judicial District Court in Washoe County,
75 Court Street,
Reno Nv 89501

Judge Frances Doherty,
1 South Sierra,
Reno, Nv 89501

Scot Freeman chief administrator of
The 2nd Judicial District Court in Washoe county,
75 Court Street,
Reno Nv 89501

Washoe County Board of supervisors, Commissioners
1001 East 9th Street
Reno NV 89512

Judge David Clifton,
1 South Sierra St.
Reno, NV 89501

David Clifton,
2840 Sagittarius Dr,
Reno, NV 89509

Reno Justice Court,
1 South Sierra,
Reno, NV 89501

City of Reno
1 East 1st Street
Reno, NV 89501

Reno City Council
1 East 1st Street
Reno, NV 89501
Yet Unnamed defendants a-m


**What is the basis for federal jurisdiction?**

      XX Federal Questions


No basis of diversity of citizenship suit


**II FEDERAL STATUTES VIOLATED:**

1. **18 US code chapter 96 RICO**
2. **18 USC 241 Conspiracy against rights**
3. **18 USC 242 Deprivation of rights under color of law**
4. **18 USC 1621 Perjury**
5. **18 USC 1623 False Declarations before court**
6. **42 USC 1983 Civil Action Deprivation of Rights**
7. **42 USC 1985 Conspiracy to interfere with civil rights**
8. **42 USC 1986 Neglect to prevent interference with civil rights**
9. **42 USC 10801 Congress findings and statement purpose**
10. **18 USC 1343 Wire fraud**
11. **Common law right intrusion upon seclusion**
12. **13th Amendment Involuntary servitude**
13. **Adding and abetting criminal act of theft of firearm**

14. 2nd amendment right to bear arms
15. 4th amendment right to remain free of warrantless searches and seizure
16. 1st amendment freedom of association
17. 14th due process
18. UCC contract law
19. NRS 159, 164, 107, ADA violations

## III Statement of Claim:

The plaintiffs allege and believe that the defendants have entered into actions that would make a reasonable man feel vexed and harassed and their actions would cause severe emotional and financial harm. The court and its officers, along with other defendants, have; deprived the plaintiffs of their due process rights, rights of freedom of movement, taken property without due process of law, aided and abetted a criminal act of theft, wire fraud and violated numerous of the plaintiffs constitutional rights, including lack of jurisdiction. The Defendants have taken actions to falsely imprison, or threaten to falsely imprison, oppression under the color of Authority, extortion of monies, extortion to gain real property, Slander, defame the character of the Plaintiffs and cause bodily harm to the other Plaintiffs. All of the above claims are used as the predicated offense used, as the underlying basis for a RICO violation claim.

## Relief:

1. The plaintiffs request that the defendants be required to restore the Hillygus Family Trust To the level of funding that was part and whole of the Hillygus Family Trust, to include cash, stocks, bonds, motor vehicles and real property along with personal possessions that were taken from their home, their residence and their person. Thus making the trust whole is to be required that all stocks and bonds held by the trust be purchased at current market value and returned to the trust, this purchase of stocks is for the number of stock certificates and

not at the value that is presently associated with said stocks. They shall also be required to pay the cash value of any bonds sold by order of the plaintiffs at an amount as if said bonds had continued to accrue interest at the stated interest rate associated with each bond. They shall be required to replace in kind any property lost because of the actions of the defendants or pay the current market value of said property as of the date of this decision. A list of items lost stolen or miss placed as a result of the action of the defendants. These valuable items sold or stolen by any party shall be purchased at fair market value and returned to the plaintiff it was taken from or to the Hillygus family trust.

Estimate cost id in excess of one million dollars.

2. The defendants request the sum of one hundred thousand dollars be paid to each plaintiff for each tortuous violation that have been found to be in part or in whole the responsibility of defendants jointly or individually. An excess of one million dollars.

3. The plaintiffs pray that the court will award the surviving plaintiffs as of January 2018 an amount not less than one million dollars per plaintiff for the actions of the defendants individually and jointly that caused the premature death of Herbert Eugene Hillygus and the separation from his loved ones. His loss and the loss of time with his family can never be undone but a dollar amount judged by this court to be appropriate for the family's loss of the head of the family, husband to Susan, Father to Roger and guiding light in their time of need. His loss was purely a means to an end for the defendants to use his assets, to pay off political favors, buy political points and fund their own enterprises. An excess of three million dollars.

4. Roger Hillygus and Susan Hillygus request that the court order that this son and mother who had a life long bond and had planned to in the eventually of the diminished health and Susan

becoming incapacitated, as stated in their trust documents, that Roger was to become the successor trustee of the Hillygus family trust and the care take of his mother as her health declined. The defendants could not allow this. They circumvented the trust and the wishes of the settlors and removed Roger Hillygus as trustee placing his sister in his place for the sole reason that she would destroy the trust and give the money to the sycophants of the defendants and place her mother, at the urging of the defendants, into a LOCKED AND DANGEROUS FACILITY WHERE SHE HAS BEEN INJURED NUMEROUS TIMES. All of this in the pursuit of forms of greed and attempts to leave the surviving settlor penniless and alone in a facility that is allowed to siphon what ever amount they wish to and claiming that as being necessary for her care. This separation and estrangement of the last years of her life are inexcusable as she had prepared for and she so clearly had stated and prepared for her retirement and her wishes in a trust document that has been ignored by the defendants. The court should award each of the plaintiffs no less than one million dollars as the damage can never be undone and the time lost but the plaintiffs can never be returned to them.  An excess of two million dollars.

5.  The court should also award compensatory damages in an amount to deter the defendants, and any other group, from entering into an arrangement to willfully take advantage of those that cannot defend themselves. Five million dollars punitive damages.

6.  The plaintiffs also wish for the court to enter into the public record the nature of the action undertaken by the defendants and the egregious result to the Hillygus family and enter a punitive damage award to deter any other person or group from conducting associated activities. Courts discretion as to amount.

Roger Hillygus
90 Wells Fargo Ave.
Dayton, NV 89403
(775) 232-5583
rhillygus@gmail.com

Roger Hillygus,
Debbie Hillygus,
Susan Hillygus,
Herbert Eugene Hillygus (Deceased)
The Hillygus family Trust,

Plaintiffs,
         vs.

Frances Doherty Individually,
Washoe County,
The Second Judicial District Court, Washoe County,
Judge Frances Doherty,
Scott Freeman Chief administrator of the Second Judicial District Court, Washoe County, NV
The Washoe County Board of supervisors/commissioners,
Judge David Clifton,
David Clifton in his personal capacity,
Reno Justice Court,
City of Reno, Reno City Council,

Unnamed defendants A-M,

(All to be known as Frances Doherty et. al.)

## ORIGINAL COMPLAINT

### *JURISDICTION*

1.   The Plaintiff being a resident of the State of Nevada is within the Jurisdiction of The US

District Court, District of Nevada.

2.   This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) (1)

because the amount in controversy exceeds $75,000.

3.   This Court  enjoys venue under 28 U.S.C. § 1391(a)(2) because all or a substantial portion

of the events that gave rise to Plaintiff's claims transpired in the State of Nevada, including the

1

publication or republication of the defamatory falsehoods and the damage to Plaintiff's reputation.

4.   This Court enjoys personal jurisdiction over the Defendants because the false and defamatory statements made by Defendants were published in Nevada and available throughout The United States and the Plaintiff-target of the defamatory statements was and remains a resident of Nevada.

5.   As one of the Named parties is in fact the Washoe County District Court Judge Frances Doherty in her non judicial acts both professionally  in acts not within her duties as a jurist and as a private citizen in the city of Reno state of Nevada and award would come from the general fund of the Washoe County and thus the source of revenue for court operations, thus any litigation in this Washoe County District Court would be biased because of that's court relies on the general funds of Washoe County for operating expenses.

6. The Federal District court in Reno Nevada is the court of general jurisdiction as it has the ability to evaluate and render a decision on such a complicated and far reaching constitutional case without having financial ties to any of the parties or relying on funds from the Washoe County Nevada's general funds for its operating expenses.

7. The plaintiffs are claiming numerous causes of action that are violations of constitutional rights so as to allow the jurisdiction of the United States District Court, District of Nevada.

## ***THE PARTIES***

1.   Roger Hillygus will proceed as a Pro Se Representing himself Roger Hillygus (Roger) and all of the other plaintiffs. I am a resident of Lyon County in the state of Nevada. 90 Wells Fargo Ave., Dayton, Nevada 89403. First plaintiff in this action.

2

2. I Roger Hillygus will proceed as a Pro Se Representing Debbie Hillygus (Debbie) wife of Roger Hillygus and all of the other plaintiffs. Debbie is a resident of Lyon County in the state of Nevada. 90 Wells Fargo Ave., Dayton, Nevada 89403. Second plaintiff.

3. I Roger Hillygus will proceed as the Pro Se Representing Susan Hillygus (SUSAN), settlor of the Hillygus Family Trust, and a resident of Washoe County in the State of Nevada. A person who has been deemed to be medically incapacitated an unable to make legal decisions on her own, case filed on her behalf. 90 Wells Fargo Ave., Dayton, Nevada 89403. Plaintiff three.

4. I Roger Hillygus will proceed as the Pro Se representative Representing Herbert Eugene Hillygus, a settlor of the Hillygus Family Trust, a deceased person and a former resident of Washoe County in the State of Nevada, when living and the damages claimed in this complaint occurred on his person and property. 90 Wells Fargo Ave., Dayton, Nevada 89403. Plaintiff four.

5. I Roger Hillygus precede Pro Se Representing the Hillygus family Trust, as the true and legitimate successor Trustee to the Hillygus family Trust, a Trust formed by and registered to the settlors who had residence in Washoe County. 90 Wells Fargo Ave., Dayton, NV  Plaintiff five

6. (Above Plaintiffs to be known as: Roger Hillygus Et. al.)

7. Frances Doherty as an individual for her "non-judicial acts" and those acts that are in violation of the law, outside her legal acts within the scope and jurisdiction as a legal judge.  She resides within the County of Washoe State of Nevada. At 188 Carleton Ct. Reno, NV 89511 Defendant one

8. David Clifton as an individual for his "non-judicial acts", administrative acts as an administrator and not as a legal judge issuing orders in the court setting, He resides

3

within the County of Washoe State of Nevada. 2840 Sagittarius Dr. Reno NV. 89509 Defendant two.

9. The Washoe County Governmental Authority of Washoe County in the state of Nevada, the employer of defendants here in named, and soon to include some of the defendants yet unnamed a-m. 1001 East 9th Street, Reno NV 89512 Defendant Three.

10. The Washoe County District Court in and for the County of Washoe in the State of Nevada and the legal authority which allows Washoe county court authority to operate. Regulated and authorized by the court system directors, Supervisors and the Washoe County Commissioners. 75 Court Street, Reno NV 89501 Defendant four.

11. Judge Frances Doherty as her position as judge, who operates a court room that is outside the legal jurisdiction, a trespasser on the law, her non judicial acts as her court and actions are without legal authority, She fails to nor does she wish to follow, the established rules as established by the Nevada Revised Statutes and legal case precedent. Her court can best be described as a "Kangaroo Court" or "Rouge Court" or a "trespasser on the law". The acts of this judge are "non-judicial Acts" as they are performed in a venue which in even the most corrupt of situations should be considered to have no semblance of a true judicial court of law, as no laws are followed nor used in her legal actions. Judge Doherty is a member of an ongoing criminal conspiracy that meets and exceeds the necessary requirements and the predicated violations of a RICO conspiracy. The Washoe County District Court and Frances Doherty are both residents in Washoe County. 1 South Sierra, Reno, NV 89501 Defendant five.

12. The chief Justice of the Washoe County District Court, Judge Scott Freeman, whose responsibility it is to monitor evaluate, discipline and cause the courts under his

control and to ensure that they operate in a fair, unbiased, legal and ethical manor all of which are administrative duties and he fails to meet his administrative role. 75 Court Street, Reno NV 89501 Defendant Six.

13. Washoe County Board of County Commissioners, who individually as persons who are personally liable for the actions of entities operating under the legal authority known as Washoe County Nevada and who operate as a regulatory and administrated group to overseeing and administering the duties of Washoe County Entities. This Board of Commissioners operates as an entity and as the individuals who hold the legal authority to control and monitor all actions by all entities and departments which operate as a part of Washoe County Entity. This group and entity operate in the County of Washoe, State of Nevada. 1001 9th Street Reno NV 89512 Defendant Seven.

14. The City of Reno as the legal authority which controls the Reno Justice Court and provides for the basis for the Judges and personnel who work within the legal authority known as the Reno Justice Court. This group and entity operate in the City of Reno, County of Washoe and State of Nevada 1 East 1st Street Reno NV 89501, Defendant Eight.

15. Judge David Clifton who is a Judge of Reno Justice Court in the City of Reno, and State of Nevada. He operates as the administrator of the "eviction court" allows him to issue evictions in such a manner and without court proceedings as to make these evictions, lockouts and thefts of property and destruction of lives as an administrative "non-Judicial acts" as the court no longer requires nor allows the person that is the "evictee" or "lock-out-tee" the admission to the legal process in this court. The "Judge and Court" uses paid for administrative acts, under the pretense of being "orders" from

the "Reno Justice Court" as a means to circumvent the "VICTIMS " legal rights

throwing persons, pets and families out on the streets under the guise of legal

authority, as he did to the Hillygus' . The court the employer and Clifton are within the

City of Reno in the State of Nevada. 1 South Sierra, Reno, NV 89501 Defendant Nine.

16. The Reno City Council in whole and as persons personally liable for the actions of The

City of Reno Entity, who provides the legal authority for the Justice Court and its

Judges to operate as an entity under its control and known as the Reno Justice Court

who resides and operates within the city of Reno, County of Washoe and State of

Nevada. 1 East 1st street 89505 Defendant Ten.

17. Unnamed defendants A-M as entities and individuals become known and their

involvement is determined along with their personal liability is established they shall

become named defendants, Defendant A-M.

18. The above entitled Defendants Known as; Frances Doherty et. al..

## COMPLAINT

The above named plaintiffs allege and believe that the defendants have entered into

criminal actions, lacked jurisdiction to act, violated constitutional rights, committed fraud

against the plaintiffs, all which would make a reasonable man feel vexed and harassed and their

actions have cause severe emotional and financial harm. The court and its officers, along with

other defendants, have deprived the plaintiffs of their due process rights, rights of freedom of

movement, taken property without due process of law and violated numerous of the plaintiff's

constitutional rights. The Washoe County Sherriff, court officers, lawyers appointed by judge

Doherty are all specifically instituted as a means of furtherance of their criminal conspiracy;

This conspiracy is conducted to produce actions that work toward  their self-enrichment at the

expense of the Hillygus family, The Family Trust, and many others.  The Court Officers, have

engaged in criminal actions including; Adding and abetting criminal acts of theft, extortion, to

falsely imprison, threaten to falsely imprison, impose involuntary servitude,  to extort monies,

Slander, defame the character of the Plaintiffs and cause bodily harm to the other Plaintiffs.

The Defendants through their actions have engaged in a pattern of actions that caused the

Plaintiffs financial harm, physical harm, removed the plaintiffs from their family home,

removed items of great financial benefit to the Plaintiff and caused the Plaintiff to live in an

atmosphere of fear and great anxiety. The cumulative actions of the defendants caused mental

distress and severely harmed the plaintiff mentally, physically and financially.

The court and its officers known as the Defendants, herein, have deprived the Plaintiffs

of their constitutional rights as guaranteed in the First, Second, Fourth, Fifth, Seventh, Eighth,

Thirteenth, Fourteenth Amendments to the constitution. The Defendants cumulatively have

acted to deny the plaintiffs equal protection under the law and have committed the acts of

oppression under the color of authority.  The Courts and its officers, to include Judge Frances

Doherty in committing the acts that were in furtherance of a criminal conspiracy and not part of

the designated judicial acts as specified under Nevada Revised Statutes, the Washoe county

court system has failed to follow the rules as set forth in the Constitution, the Nevada Revised

Statutes and the Rules of Civil Procedure. All while acting outside the jurisdictional

requirements of both personal and subject matter jurisdiction. This barrage of constitutional

violations and breach of the rules of civil procedure are violations that have become a pattern of

action that would leave a reasonable man to be believe in a conspiratorial conduct to vex and

harass the Plaintiff and deny him equal protection under the law. By the court administration

failing to administer the illegal actions of its officers, supervisors becomes complacent in their

assigned administrative duties. For the court of limited jurisdiction is engaging in actions

outside of the judicially assigned duties and responsibilities outlined under statute and manuals and as such, they are therefore, in furtherance of a criminal conspiracy. These acts are non-judicial acts as the acts are done without jurisdiction and NOT for the purpose of allowing the court officers to operate as arbitrators of legal disputes, but instead they are acting purely to gain self-enrichment in both monetary terms and in the social status gained through the court providing and insuring that attorneys have employment and that the attorneys and other sycophants of the court receive financial compensation at the expense of the person that has been rendered into an abusive, illegal guardianship.

The Officers of the Court have entered into actions that, through their actions alone, have deprived the Plaintiffs of their full protections of their constitutional Rights. Judge Frances Doherty has through her non-judicial actions caused the Plaintiffs sever financial harm and has used her position of authority to personally enrich herself and has used her position to enrich those persons who practice law in her court room. Thus securing her status in the legal community and praises from those who practice law in her court. Through her action she has caused Roger Hillygus and the other Plaintiffs to lose the full benefit of his father's company. Robin Renwick the estranged sibling of Plaintiff after the court illegally appointed her the guardian of Herbert Hillygus, she neglected and abused him. Through her actions, she caused the untimely death of her father and the Judge Doherty allowed her to predicatively act in a manner that would cause the death of his father to which she had herself named as guardian of the individual known as Herbert Eugene Hillygus.

The Washoe county employees of the Second Judicial District Court and the employees of the city of Reno Justice Court have all been colluding and conspiring in a pattern of action devoid of jurisdiction, and involving criminal fraud, more than with malice a fore thought against the Plaintiffs. It has been determined that the crime against the family by the defendants

has only left the remaining assets of the Hillygus family residence for them to steel. By their

acquisition of the Hillygus' family home of 45 years, they will have completely destroyed all

remaining assets once valued at close to ONE MILLION DOLLARS.  This home was built for

their family by a family member and was built as a home that would last them and the next

generation of the heirs to the Hillygus family legacy. Yet this is not the plan of the employees of

the Second Judicial District Court of Washoe County and the City of Reno Justice court. They

have evicted the family from their family home and have attempted to sell this home in direct

opposition to the wishes of the settlors as contracted to in their trust contract and documents.

The Washoe county District Court employees and the employees of the city of Reno

Justice Court have tried to circumvent the contractual relationship between Debbie Hillygus and

the Hillygus family Trust. As a gift to the trust, employee Debbie Hillygus accepted promissory

notes as payment towards thousands of hours of labor as an employee of the trust. She did this

as a method to ensure her eventual payment for service without the burden of the payment for

her services being required by the settlors as the settlors had taken a large financial loss at the

hands of Robin Renwick who ran a confidence game on her parents.  This embezzlement game

caused the family to lose hundreds of thousands of trust dollars, trust money set aside for their

retirement and end of life of the settlors and now Plaintiffs. Debbie Hillygus only registered the

deeds of trust and the note against the family home when it became very apparent that the new

illegally appointed "successor trustee's" had no intent of paying her or her husband for any of

the services they had expended on behalf of the trust or pay any of the value of time, services,

labor owed to her for wages that she was owed as an employee. The courts mentioned above as

defendants have now both stepped in without jurisdiction and now claim the debt owed to

Debbie Hillygus is to be FALSELY paid in full AND FALSELY RECONVEYED and have

tried to make the property available for quick private discounted sale; this for the moment has

been stopped as the actions of the judge are being reviewed by the Supreme Court of the State of Nevada.

The Plaintiffs have suffered irreparable harm at the hands of the defendants. This harm is a harm to the Hillygus family but also a harm to those that are unable to even understand that their life long earnings have been stolen by a court lacking jurisdiction and involved in criminal fraud and its sycophants that claims the actions of the court to be lawful. However, it is an ongoing criminal conspiracy, whose sole intent is self-enrichment at the expense of those that cannot defend themselves. This case is a case of a family seeking justice and not a family seeking money for monies sake. The damage done is so egregious that money will not heal the damage done.  It is the loss of time with a parent as they slip from this earth. That is what is irreplaceable. The Defendants have stolen something so precious that the plaintiffs pray that the Defendants are deprived of that which they most dearly love their ability to continue to financially harm the plaintiffs. This is the only way to make them realize that what they have done is wrong and they must pay for this wrong upon the plaintiffs through an ongoing criminal conspiracy and lacking jurisdiction.

## ***STATEMENT OF THE CASE***

The first plaintiff herein, Roger Hillygus, was designated by his parents, the original successor trustees in the Hillygus Family Trust, as their successor trustee as clearly articulated in the Hillygus Family Trusts Documents, and further, he was designated as their power of attorney in both healthcare related matters and in financial matters and they signed such documents when they were both still of clear mind and competent to handle their own affairs.

He now continues as a beneficiary, Pro Se plaintiff, litigator, respondent, Movant, and interested party to stand up for his parents' rights, contracts, trust and activated powers of attorney's as he is afforded those rights under the SCR 44 to appear on his own behalf in

support of his parents' wishes. The defendants through their separate and joint acts have devastated the once substantial resources of the Hillygus Family Trust, (close to One Million Dollars) through a conspiracy of and all of its members. The Defendants have waged a scorched earth campaign in which they have used the unlimited resources of the Washoe County District Court, the Washoe County commissioners as supervisors of citizens of Washoe County, and the City of Reno, Justice Court, and have even used the Hillygus Family Trust as a means to afford the litigation. They have  gone so far as to forcibly lock Susan Hillygus in a locked facility, barring her from freedom of movement, freedom of association and the freedom of choice as to who and where she will live. Excluding her the right to property, liberty and the pursuit of life free to live free of government involvement.  She, in designing her Trust documents, clearly states that she wishes for her son to be the one who cares for her and her husband if, and when, they become unable to care for themselves. This statement is clear and unmistakable, yet it was ignored by both the Reno justice court and the Washoe County District Court. These defendants, all and in part, have claimed through slanderous statements and through their actions that Roger Hillygus violated his duties as a trustee of the trust.  His crime was that he failed to allow the court to hand every liquid asset, which could be quickly converted to cash, to the attorneys that deceived the court it maintained jurisdiction. They provided the court with false documents and concealed other pertinent records.

The court had one ultimate goal in mind. That the trust would surrender those assets, as the court deemed necessary, to those that are the sycophants and coconspirators with the judge. These sycophants follow the judges lead in her attempts to control, administer the trust as a de-facto trustee. They only want a straw man sitting in the position of successor trustee. Roger refused to honor the wishes of the court, and the illegal acts of the judge.

Mr. Roger Hillygus was ordered under threat of incarceration, so he surrendered to the judges' shill, who promptly emptied the retirement accounts of the trust and the settlors into the bank accounts of her waiting co-conspirators through wire transfers from the investment advisor for the trust.  Next, they turned their sights to the last asset available for the judge to liquidate, the house. They intend to sell the House at a discount and divide up the proceeds amongst themselves. The forced sale of the family home is in direct opposition to the wishes of the settlor and the wishes stated in the Trust Documents. This sale of the family home is a means of further transferring assets to all those involved in the criminal conspiracy.

The criminal conspirators shield the judicial acts as legitimate, in order to be protected. Because they know these acts are not "judicial in nature". This gavel wielded by a judge, who has been allowed by her employers to act as the ruler of a criminal conspiracy, is no different than the guns wielded by the mafia in the 1970's to accomplish their goals. The reason for the Federal RICO statutes. The judge's criminal conspiracy has met the requirement of committing the predicate acts necessary to be deemed to be a Ricco organized crime syndicates. This syndicate works in unison to accomplish their main goal of self-enrichment of the co-conspirators at the expense of those that have been deemed to be incompetent.

This groups actions should be subject to ridicule, distain  and should ostracize them from decent members of the public but instead they are held in high esteem, because their victims lack the ability to defend themselves, as most lack the mental faculties to even know that they have been exploited. This criminal conspiracy when challenged attacks in unison and demonizes anyone who tries to help the victim. Because it would interfere with their goals of leaving that person destitute.

The courts, and those who dictate the process, have figured out isolating the person from their family is one of the first things that must be done when you want to empty a trust or empty

the accounts of their victims.  Next, you must work at demonization of family members, and friends, who were helping and supporting the disabled person and may be in opposition to the court and its conspirators wishes. The court only wants those that agree with the court, and agree with the members of the conspiracy. They use lawyers, professional guardians, supposed medical officials, and the power of the city and the county, to add legitimacy to actions of the co-conspirators. As the court can take an illegitimate document and give it the seal of legitimacy by it approving them as being true and correct. An abusive guardian only needs the declaring of an accounting by the court to approve her theft. It is the accounting that holds the key to getting the money into the guardian's pocket with the help of her court appointed attorney. To challenge any action, or document that the court has deemed to be approved requires the submitting party to not only prove the document is flawed but also the courts actions as flawed.

The lawyers love the challenges to the acts of the court, as all of  the cost of the litigation is paid out of the guardianship estate, and the court will gladly hand the money to the co-conspirators as the court knows all that are involved are those that know how the game is played.  The main function of the conspiracy is to ensure the members get paid.   Judge Frances Doherty has used her position to add legitimacy to the actions of the members of her criminal conspiracy, the acts and orders that come from her court are not those of a court officer doing court business they are "non-judicial acts" exterior of her position as a sitting judge. This group has exploited not only the Hillygus family's assets but numerous other families as they have proven the formula for creating money works for them...

Frances Doherty has set herself up, even though she is the supposed judge, she in fact has been working as the administrator of the Hillygus family trust and the administrator of the ongoing criminal conspiracy that she operates from the offices of the Washoe County Court House. This is done with the full knowledge of the other defendants. When she does hold court

with all of her sycophants present, she has only one rule that must be followed "the judge makes the rules". This is very apparent when you cite the law, legal precedent or even when a lawyer opposes her rulings. The judge makes the law, not the legislature and if you want to work in her court you allow her to do what she wants, otherwise you suffer the consequences of opposing her. These consequence can range from a sever reprimand, to accusations of mental instability, slanderous statements on the public record, judicial bulling, refusal to pay fees owed all of which are nothing compared to the use of force she employees with her bailiffs that will surround and intimidate all who oppose the illegal acts.

This action is reinforced by people like Judge David Clifton who is in the Reno Justice court. He runs an administrative court that churns out evictions and lockouts not as a judge, but as an administrator of a paper mill. The actions lack legal court processes. The Justice court has justice in name only, as it holds no hearings and has no real justice for any citizen involved. The administrators' are the only ones who without due process remove people from their residences. Just as they did in the Hillygus home. The court appointed guardian for Susan Hillygus, Kaycee Zuzman of Fiduciary Services of Nevada and her attorney Todd Torvinen, filed perjured documents with the court, and suborned perjury claiming the Hillygus' were behind on rent and claimed they needed a lockout order. The court rather than scheduling a hearing or any other legal PROCESS AFFORDED TO ANY PERSON IN ANY OTHER JURISDICTION, issued a lockout order and sent the sheriffs and a locksmith to throw the Hillygus' out of the family home. Roger refused the sheriffs admittance to the residence and went to the court to explain the illegal actions and fraud upon the court of the guardian and her attorney Todd Torvinen. The court agreed to a "sham hearing" in which Roger explained the fraud upon the court, the perjury and the ownership of the home all of which fell on deaf ears, as the judge with the full force of the Washoe county Sheriff's office deputies standing by in the court, with helicopers circling

the court house and swat waiting around the corner of the home, and animal control also dispatched. The Judge had conspired with the Defendant and had predetermined the outcome, even before anyone spoke. The city and the county commissioner's unwitting support behind him upheld his lockout order and just so happened to have 20 plus sheriffs, including a swat team, positioned to break into the home, along with the county helicopter that was flying overhead to watch Roger leave the court and followed on his journey home. This is justice in the Reno justice court which not only barred Roger from entering the family home, but also from federal lands around the home and city streets in the neighborhood all of which were far outside the bounds of a "judge" who works for the city of Reno. The home the administrator determined was to be seized, lies miles outside of said cities boundaries and jurisdiction, thus his actions were non judicial acts and those of an over-zealous administrator...

The breaking and entering into the family residence was accomplished and then the ransacking began. The Sheriffs stood by as the personal truck of Roger Hillygus was broken into by the guardian, guns were stolen, numerous items stolen including money and personal items all under the county employees watch full eyes. They then turned their sights on the home and plundered guns and personal items from the home including family mementos that could never be replaced. The county employees observed and aided the plundering of the family home. These inexcusable acts by county employees who are supposed to protect and serve the public caused irreparable harm to the plaintiffs.

The defendants caused irreparable harm to the plaintiffs when they placed Herbert Hillygus' care, under a guardianship, in the hands of Robin Renwick. This person who the judge determined to be fit as a guardian, had in the past stolen from, and exploited, the Hillygus trust and was known to be an alcoholic, prescription pill addict, exploiter of people for her financial gain and when she found out her parents were to be incapacitated by dementia she suggested to

15

Roger Hillygus that they liquidate all assets. Sell the home and split the money and then dump the parents into a low rent state owned nursing homes to die. Roger refused. She thought that when she became Herbert's guardian she would have access to his money and thus would have money, but instead she got Herbert, with all of his problems and anger and no money. She then set on a path of neglect and purposeful acts that were specifically intended on causing the death of Herbert Hillygus when this issue was brought to the attention of the court officer (Doherty) she showed no care or concern for Herbert's welfare and he died soon thereafter. (Less than two months)

When Robin decided her need for access to the trust accounts money was essential, she concocted the scheme with Todd Torvinen Esq. and Steve Moss Esq. to change the Trust and get access to the trust accounts so they could have all the money for themselves. Little did she know that she was going to be left out as she, once the process was started, was not a necessary part of the whole criminal conspiracy. She is allowed to pick up the change that falls from the table but she was not ever going to be allowed to participate in the real bounty that was to be stolen, this was to be given to the true professionals at exploitation of a guardianship.

Attorney Steve Moss Esq., who has a tainted history with the State Bar of Nevada for undue influence of his trust clients, once again exploited his client Mr. Herbert Eugene Hillygus. Moss isolated Herbert from his wife, attempted to change a joint trust he prepared for his clients both Susan and Herbert. He claimed to represent the husband, Herbert, who he knew had been deemed incompetent by a certified physician. Moss even believed his client was incompetent, and had asked two medical Physicians through written correspondence to evaluate his client's capacity to handle financial and legal affairs. Moss used a knowingly incompetent man to sign legal documents that were used by the court, Robin and Todd Torvinen to start litigation and proceed with litigation to this date.

Mr. Moss's knowingly filed an inappropriate Petition before the District Court of Washoe County, probate department. His next act was a result of his plagiarizing guardianship applications for fees to be paid to him. By falsifying court documents to get paid even though he never participated in or filed documents in either guardianship cases smacks of criminal extortion. He was, therefore knowingly successful in extorting close to $20,000.00 dollars, from a trust he drew up. This action of use and abuse of an incompetent person has been condoned by the Washoe County District Court and its personnel who knowing of the facts of the abuse of the elderly incompetent individual they authorized payment to Moss for his "work on the trusts behalf", but it was order to be paid under guardianship law.

The court added an error of legitimacy to Moss's actions as they deemed his illegal acts to be payable as legal services as it gave the court the ability to become the administrator of the trust, which allowed Frances Doherty to act not as a judge but as an administrator to make every decision that would benefit the judge and her conspirators in this Ricco conspiracy. She would micro manage the actions of trustee, Roger, not allowing him the rights and privileges of a trustee and thus the judge became the de-facto Trustee of the Hillygus Trust.

The court if acting as a legal entity should have followed legal standards that were based on laws and legal precedent. The court as it not only knew of the actions of Moss Esq. but used said action as its way to become that administrator of the trust, spending every penny which the settlors accumulated in their lifetime on the members of the ongoing criminal conspiracy, that was based out of the Washoe County District Court Family division.   As a result of Moss Esq. conduct which he open the flood gates and allowed the court and its co-conspirators to enter the Trust, plunder it, cause the premature death of Herbert Hillygus and try and seize the family's home as it was the only remaining asset of the Hillygus Trust. The criminal conspiracy has cost the Surviving Settlor and the Trust created for her benefit, close to $1,000,000.00 dollars.

The defective petition was joined by one of the current Co- Guardians/co-trustees, the now estranged sibling of Roger. Roger has challenged the jurisdiction of the Court, as well as the Court's decision to sell protected person's real property; to place her in a locked Alzheimer's facility; the removal of her privately retained counsel, and the failure of the lower court to grant Appellant a new trial, based on the evidence that was not able to be presented at the May 31st, 2016 illegal hearings..

### *STATEMENT OF THE FACTS*

On or about June 17, 2014 current co-Guardian and Co-Trustee Robin Renwick, filed for court supervision of both of her parents against their pre-planning estate documents and activated Powers of Attorney for healthcare and durable power of financial attorney. Roger Hillygus provided the care for the Persons of Herbert and Susan Hillygus' as outlined in the Trust and the activated power of attorney for healthcare and financial purposes. Roger Hillygus was caring for his parents per their wishes, to include the ADL's (activities of daily living) as described in the trust document and agreed to by both Mr. Herbert Eugene Hillygus and Susan Lynn Hillygus.

At the time of the initial petition filing by Attorney Steven Moss, as Medical records would later show, both Eugene Hillygus, whom Mr. Moss was attempting to represent at the time, and Mrs. Susan Hillygus, (Eugene's wife), we're both suffering from mental degradation due to either dementia and/or advancing Alzheimer's.

The case somehow progressed even though  Roger Hillygus who was appointed and acting in his capacity as Successor Trustee, had meet with and was advised by the State of Nevada counsel Sally Ramm Esq. of Health and Human Services Department and eleven others including investigators to continue to care for your parents. "We see no wrong doing, all your paperwork is in order and you are doing the right thing by taking care of your parents. "This

indisputable fact set out the destruction of the Hillygus Family Trust by the District Court in this matter. The original Judge to hear the Probate matter the Honorable Judge Connie Steinheimer even removed attorney Steve Moss from further representation of his client, Mr. Herbert E. Hillygus. The Family Judge has never acknowledged that the original underlying jurisdiction in both the Guardianship and the Trust case we're flawed upon the very basis of jurisdiction. *See United States Supreme Court case Trinsey v. Pagliero. SCR 99 Jurisdiction and misconduct.*

The Court later improperly removed the original Trustee Roger Hillygus (who was the preferred choice by Herbert and Susan the Trustor's).Original trustee, Roger Hillygus, who chose Federal Bankruptcy as his fiduciary role over paying many of the voluminous attorney's fees ordered by the family court judge, by delaying some payment due to a frivolous action resulted in the ultimate insolvency of the trust. After the court removed Mr. Hillygus, it favored his sister, Robin Renwick, to pay the life savings out to the attorneys who staged this frivolous action. The court also hired a Professional Guardian, Kaycee Zusman, and appointed a GAL to support the courts illegal actions. As Zuzman was not licensed as a requirement of NRS 628B, had not filed her signed letters of guardianship, possessed no business license to operate a business in the city of Reno or in Washoe County, nor had a valid signed order by the court approving and authorizing her to act in such a capacity. The Guardian Ad Litem also, has failed to perform the duties and responsibilities as is required of the one appointed to this position.

**THE HISTORY AND TERMS OF THE CARE OF MRS. SUSAN HILLYGUS, ARE AS FOLLOW:**

Since approximately June of 2013, Roger Hillygus, and his spouse Debbie Hillygus, provided care for Mr. and Mrs. Hillygus. By January of 2014 they were providing 24/7 care, monitoring and supervision for Mrs. Hillygus, the mother, and surviving settlor in her home of

45 years.  Mr. Roger and Mrs. Debbie Hillygus were never unwilling to provide that care, and even at the date of this writing are more than willingly take up that responsibility once again.

On or about May 31, 2016, the district court in this matter held hearings relating to the sale of Mrs. Hillygus' residence; her placement into a locked Alzheimer's facility; and the replacement of her privately retained attorney, Keith Tierney Esq. The petitioners wished to remove the one and only attorney who was fighting for the rights of a vulnerable and disabled Nevada resident by way of a public access lawyer, (Washoe Legal Services) who has to date NOT filed ONE MOTION for the benefit of Mrs. Hillygus.

Attorney for Guardian and Trustee Robin Renwick/Kaycee Zusman, -- Todd Torvinen, interestingly enough noted during the May 31, 2016 hearing that the Professional Guardian was attempting to now acquire rent from Mr. and Mrs. Hillygus, as they were staying at the home of Susan Hillygus in the hope of resuming her care.

In the summer of 2016, Attorney Todd Torvinen suborned perjury in the Washoe County Justice Court, by preparation of eviction documents in which Professional Guardian Kaycee Zusman indicated, under oath, that she was the landlord of the Hillygus property, located at 2685 Knob Hill Drive, Reno, NV. She claimed she was the landlord of the property in February of 2016, before she had legally been appointed by an order or letters stating such. Zusman further Claimed that Roger and Debbie Hillygus owed multiple months of back rent for their tenancy in the Hillygus Family property. In point of fact, there was neither rental agreement nor any agreement about any amount of monthly rent. The Justice Court of Washoe County without a hearing or legal notification of Hillygus' that a complaint was even been filed, issued an order to provide a lockout order. This was a non-judicial function and non-judicial in nature. This order was to prevent Mr. And Mrs. Hillygus from re-entering the Hillygus' family home, which they were legally authorized to occupy. The order which was written by Todd

Torvinen and signed by Justice Court Judge David Clifton, a high school friend of Todd

Torvinen, restricted Mr. Hillygus' movement on Federal BLM property, he was also restricted

from movement on public roads in Washoe County, a violation of his rights afforded by the bill

of rights and the freedom of movement.

Previously noted -- during the hearing on May 31st, 2016, Counsel for Trustee/Guardian

Todd Torvinen noted the duty to maintain income from the Trust property. As of the date, of

this writing, after the falsely based eviction/lockout of Roger and Debbie Hillygus, the

guardian/ trustee has made NO effort to rent said property in order to maintain income, which

was the theoretical underlying need for the sham eviction. This eviction was supported by the

defendants in their actions and inactions.

On May 31st, 2016, the court determined it was appropriate without the benefit of any

Expert medical testimony or expert witness testimony of any kind, to disregard the rights of

Susan Hillygus. The court determined that her property be disposed of selling her real property

so as to provide money for the courts co-conspirators. The court has placed Susan in a locked

facility instead of being cared for by her son and daughter-in-law in her own home, which is the

least restrictive environment. See Olhmstead v. L.C. All this was done without the benefit of a

finding that the protected person was insolvent, or needed nursing care. The court ordered the

termination of her private counsel, Mr. Keith Tierney Esq., the only elder law lawyer who

actually came to the residence of Mrs, Hillygus, engaged the care givers, neighbors, and social

workers and medical professionals in an attempt to represent his client's wishes. The court

appointed a "Free" lawyer, Mr. Dave Spitzer of Washoe County Legal Services, who by the

way only practices in front of Judge Frances Doherty, and has hundreds of guardianship cases

assigned to him by the Judge. This judge is also affiliated with WLS as one of their past

presidents, a past executive director for the organization, on the board of directors with attorney

Todd Torvinen, and does fundraisers for the organization. An organization that Todd Torvinen was a member of for over TWENTY years and only recently left the organization after the conflict of interest was raised by the filing of a documents pointing out said nepotism and conflict of interest by the court. The courts claims no conflict exists and others in the court claim that no nepotism or conflict exists. .

### *BRIEF HISTORY*

Herbert and Susan Hillygus were not rich by any means, and spent their lives in service of others, as teachers, and tried to teach others as they had their children, that it was their responsibility to be good citizens, care for others, be law abiding citizens, and to rely on the police and courts for protection. In their life times they were both happy and fulfilled in their lives through their work, their home and their friends. They have had a good life and if it wasn't for the actions of Judge Doherty,  Judge Clifton, their supporting defendants, and the unwillingness of the hierarchy to discipline and control the self-serving rouge elements in their midst, they would have been able to spend the rest of their lives living and loving what they had created.

I was raised by my father and mother to believe and have the faith in the system. That the court system was here to level the playing field and allow all who come before the court to be seen as equals, whether rich or poor, no matter the creed, sex, political affiliation, or their socio-economic position in society.  My father and mother, tried to teach my sister, Robin Renwick, the same values as myself, but were disappointed in the path my sister, Robin Renwick, chose. She chose a path in becoming a self-absorbed, greedy, egotistical person whose only concern is how she appears to the outside world. This flaw in character caused her to exploit my father, embezzle trust funds, concoct numerous failed schemes of self-enrichment and through her willful and intentional acts cause my gathers death with the help of the

defendants. This erratic behavior destroyed her marriage, financially ruined her family, and made her unable to sustain a meaningful relationship. Her behavior caused her son, my nephew, to try to commit suicide and she hid this suicide attempt from the world to save her own narcissistic image.

Lady Liberty, the symbol of the justice system, is wearing a blindfold to symbolize that the evidence that is to be presented to the court shall be weighed on its merits and that the court itself will not be the one to influence it, as the scales of justice are blind. That is what I used to believe. I used to have faith in the integrity of the legal system to protect those from exploitation, such as my mother and father, which it has failed to do. The willful acts of the defendants allowed and supported the actions of those that caused harm and the defendants acts will continue if the federal court does not show that there is integrity in the judiciary still.

I used to have faith that the court would not, and should not, condone perjured testimony, yet on numerous occasions I have seen the courts allow and condone it. The court, itself, suborns perjury in order for the judge to reach her predetermined decisions. I used to believe in the rule of law, yet I have seen those rules ignored, and manipulated and used as a means to an end for a legal profession and judge who has no respect for the law or the people. I have seen a judge who on numerous occasions has had ex-parte communication with lawyers involved in this case. She has allowed the opposing lawyer Todd Torvinen to write every order that this court has issued thus making these orders non judicial acts as the court neither structured nor correct the self-serving language placed in these orders. . The opposing counsel has done this without any input by myself or allowing me a superficial reading and response to the flagrantly biased, one sided, and self-serving ordered written by the opposing counsel. As with the orders after hearings, the court signs documents that contain numerous changes from the court's orders from the bench, yet the court never reviews the documents nor asks for my

input, as I am representing myself at this point and have done so for the last two years, for input from both sides is required per NRCP prior to the signing of these official court orders. This court has used its power as a means to an end of enriching the lawyers that practice before it.

I have heard personal slanders, threats, and oppression under the color of authority from the judge, while she has sat on the bench, such statements as, Roger Hillygus' lack of respect for the family court and its judge, Frances Doherty.  My father, who was at the time determined by physicians to lack his ability to make many decisions for himself, walked out of the first hearing before this judge. In which he had seen the court officers domineer and bully myself and show no concern as to his wishes or the trust documents themselves and he spoke clearly as to my need to "get this issue out of this court. You will never get a fair shake from this woman Judge, she is biased against the opposite sex and if you stay in that court she will ruin all I have worked for." I have always respected my father as he was good judge of character. He stated what he believed to be their character as they had presented it in front of him.

After my first hearing in the family court I told my lawyer, "I want this case out of this court and into a real business court of contract or trust law", he insisted by stating, "This was the best court for this matter". I did not even conceive of the possibility that what he meant was, "this is the best court for this matter, as they will make sure the trust pays my legal bills, my opponent's legal bills and gives us all we want, and need in the way of payments". If I would have known then, what I know now, I would have removed both of my parents from the jurisdiction of the Nevada court system.

I have received an education in the ways of this corrupt legal system, and the lawyers and judges that exploit the trusts and guardianships that have the misfortune of coming into contact with their system. This is only possible by the acts of the defendants being supported by those who gave control over them. These defendants have a duty to discipline and correct the

actions of those that are under their control and they are legally responsible for their actions.  I myself have been exploited, lied to, defamed and used by this system and those that make their "living "by being part of it.  I have lost the respect of the practitioners who call themselves protectors of the law and have sworn an oath to uphold the rights afforded to citizens of this great nation. As the individuals who practice under the guardianship system have perfected the art of slanderous allegations. Knowing that is all that is needed to convict someone in the Family court system as the rules of evidence do not apply. They have figured out how to use the system of hearsay, innuendos, and false statements to convict someone of a crime without due process all in their pursuit of the all mighty dollar. .

This system has for years been fine tuning its nefarious actions to reap the greatest benefit for all those involved in exploiting people. As this system is purely set up for the monetarily benefit the guardians, and the lawyers who represent said guardians. By imposing guardianships on those with money or property the court ensures a never ending source of money and victims. The police were apathetic and only after persistence can you get them to do a halfhearted investigation of the exploitation and undue influence practiced upon the vulnerable. This does not include the judges involved, who see themselves as the bullet proof. Until they get caught with blood on their hands, and are forced to retire. This is the exact behavior that is being perpetrated upon the Hillygus Family in this case.

All of this exploitation would not be possible, if it were not for judges like Judge Doherty and the other defendants that have allowed her actions to go unchallenged.  The defendants sponsoring and illegally conscripting individuals who have pre-planned for the future by compiling a trust and placing a family as the power of attorney for healthcare and durable power of attorney for financial decision making is a crime. She, and the other defendant's, illegal actions have thrown my life into a drastic and seemingly insurmountable

turmoil. The defendants through their actions, changed my life, my family's life, the life of my mother and that of my father who was neglected and hastened into an early death. His death was accomplished by his daughter, who the judge said should be his guardian, without even using the resources available from the state to launch an investigation. It was solely based on a petition written by the divorce attorney for Robin Renwick, Todd Torvinen who knew of her drinking, prescription medication issues and her financial thefts/embezzlement and mismanagement that caused the destruction of her marriage and family. Any and all of which he knew would have disallowed and barred Robin Renwick as a guardian for anyone. As she did not meet the legal requirements, or have the moral character to be the guardian of a dog let alone a person in need of guardianship.  Robin Renwick wanted the money that was in the trust, as she had recently divorced and had failed as a real estate agent. She is only surviving by living in a client's home who she had convinces not to sell their home in the down market, and instead rent it to her. The amount her ex-husband is required to pay in child support and alimony as a result of their divorce decree has a clause placed into the agreement that if she is determined to be squandering the payments by the ex-husband than he is no longer required to make the payments.   In her original petition for guardianship she wanted the trust split giving her control of Herbert Hillygus' portion, of the community property or trust property. This however, was never accomplished. When she found out she could not get to the money in the trust, she lost interest in her ward and began a pattern of neglect that caused his premature death.

This neglect was brought to the attention of the court, by myself, however, the court ignored my pleas for help and allowed Robin Renwick to continue to abuse and neglect her father.  Once she had killed her father she set her sights on her mother and filed a petition to become the guardian of Mrs. Susan Hillygus. The court showed no consideration for the health and welfare of either Herbert Eugene Hillygus, or his wife Susan Hillygus.

The Court was only concerned with the trust and the money therein. This money was intended for her sycophants and they need this money to fund their life style.  Judge Doherty had one goal, that was to empty the trust of every penny that they (the five attorney's appointed by the judge) could possibly get away with. These orders would leave the settlors destitute and relying on others for their daily needs. The Judge accomplished this monumental feat by removing Roger Hillygus from his lawful position as trustee. He refused to pay the lawyers, who sponsored the frivolous litigation, and instead filed the necessary appeals and had positioned the trust for entry into the protection and jurisdiction of the Federal Bankruptcy court. The court by replacing him with his sister, Robin Renwick, allowed her to empty every investment account, through wire fraud, set aside by the trust for the benefit of the settlors. Instead she sold every asset she could get her hands on and gave the money to those who claimed to earn it, the lawyers. One of which only filed two documents in the cases a notice of appearance, and an application for fees and costs.

The Nevada legislature in 2015 enacted a new regulation affecting the way guardians conduct business known as NRS 628B. It requires those who are private professional guardians and those who are supposed to be in the business of being professionals to be licensed and bonded.  Some of the professionals do in fact follow the law and are registered, bonded and licensed, in order to help their wards. The court has allow a person, Kaycee Zuzman and her company, who is not bonded, who had not even bothered with doing the paperwork with the state to become legal, let alone to have the people in her office become legally able to work for her in the business. This became a known fact to Judge Doherty and she excused it just like she has every other action by Kaycee Zuzman, including the theft of property, money and documents by her and her staff which she has admitted to in court. They accomplished this by breaking and entering my locked vehicle that was sitting on the property owned and lived in by

my family. She has also on numerous occasions committed frauds upon the court, including when she claimed to be the landlord of the Hillygus' Family home and that Roger Hillygus his wife and mother were tenants who did not pay the Rent.  Roger filed notice with the Reno Justice Court that the documents that were submitted to the court to try and accomplish a lock out were fraudulent and that he was legal and rightfully in residence of their family home.

Judge Frances Doherty has failed myself, my family, society, and the generations to come in my family and even failed the court system itself. The whole sale theft of my family's assets and the depriving of those that my parents had determined and wished to help through the distribution of their trust. My parents were convinced to establish a trust, by Steve Moss Esq., who after many billable hours and at a great expense helped my father and mother determine what assets they would need to have placed into their trust. He helped determine who would be the successor trustee and who would be the power of attorney. He and my mother established the best way for their wishes to be carried out when they were no longer able to make decisions for themselves.  The first and most crucial of those issues was to determine, who the most trusted person that they knew?  Who would guard them from being exploited in their later years?  They selected their son, me, Roger Hillygus. As a boy, I was honest to a fault and showed compassion for those around me. I had proven myself,  throughout his life, not only to care for others, more than his own self, and when the chips were down they knew that I would be there for them. I have held my ground and Stood on principle, told the truth and expected justice to prevail even when a group like the defendants have put their joint effort into distorting all my family has worked for. When others confronted with this same scenario would have succumbed to the pressure of an elite group of defendants I did not allow them to break my will. Without court involvement, the establishment of a working criminal conspiracy and allowing the court to have jurisdiction, they cannot get the signed order approving their application for

fees and costs. This is problematic for it encourages an escalation of the issues, which increase litigation cost and ensures all players benefit financially from the trumped up emotional drama. If you are one of the select few welcomed into the conspiracy, this is a great system for all those involved individuals. The power that is derived, by dictating how, who, why, where ones money will be spent even knowing that it is in direct violation of the rights of the person who had guardianship imposed on them. This is the incentive that drives the judges, and the driving forces behind the abuse by the judges and the other defendants. There are those who rely on guardianship orders for their income, knowing they will not be paid if they do not impose a guardianship upon the vulnerable disabled individual. If it were not for Judge Doherty's ties to WLS Dave Spitzer Esq. would be without any cases, and therefore without a paycheck. By not rocking the boat or to actually fighting to protect his client's rights by opposing a guardianship he is the defendants go to guy with regards to guardianship appointments. Remember, guardianship is good for the court because it knows better how to care for and spend someone else's money.

   This is a great system and it even works better for the judge when she wants to force an action on someone who she lacks any legal authority over. This she did when she ordered that Debbie Hillygus, who holds a legitimate promissory note and deed of trust against the title on the Hillygus trusts property, Judge Doherty order her to participate in a forced illegal attempt at judicial extortion.  Judge Doherty ordered in a closed secret ex-parte meeting excluding Roger, even though he is the person who was served and used as the defendant in the motion to set aside the facts of a trustee, but he was held outside the court room by bailiffs that kept him from even talking to his wife.

   This negotiation was accomplished by coercion, threats, extortion and the use of an arbitrator that had a monetary outcome in the note being removed from the title on the house.

The judge withheld the pertinent information that she had no legal authority to alter the note or have it removed. This forced stipulation would be arbitrated by the GAL Ryan Earl Esq... Who had a financial interest in seeing the note set aside, along with Todd Torvinen, Kaycee Zusman, and Dave Spitzer?   This appointed lawyer, Ryan Earl Esq. was appointed by Judge Doherty as guardian ad litem, who has presented outrageous bills to the court, and uses a combination of over billing and double billing as a way of creating his income. He was appointed to represent both Herbert Hillygus, and now his wife Susan Hillygus. Judge Doherty just recently approved Ryan Earl's most recent billing in excess of seventeen thousand dollars. THIS IS NOT BAD FOR REPRESENTING A CLIENT THAT DAVE SPITZER ESQ. CLAIMED HE COULD NOT FORM AN ATTORNEY CLIENT RELATIONSHIP WITH. This individual who claims to be of sound legal mind is the one who Judge Doherty sees as an unbiased arbitrator. The court fails to disclose that the only way that all five of the court appointed lawyers get paid is to sell the house of Susan Hillygus.

It has been proven that in the past some judges have been given direct contribution to their reelection campaigns from those that practice before them, but that practice seemed more like buying a judge, than those involved were comfortable with. Now the lawyers direct the clients to contribute to reelection campaigns along with lawyers contributing to PACS that do contributions to judges. There have been judges that take numerous trips abroad, all-expense paid of course, as compensation from happy lawyers that have been awarded large legal fees by that Judge. They have even caught one Judge who was taking out home improvement loans against his home, only to have that note against his home mysteriously paid off by third parties. There is a lot of money being exchanged, more than from just from the Hillygus Trust, many others, and one of the first questions at the first hearing before Judge Doherty she asked the

parties was "Just how much money is there in this trust?" That was a real unusual question from a judge that had no legal basis for keeping this trust under the control of the court.

When Appellant herein Roger Hillygus, after consulting with the investment advisors, tax accountants, lawyers and business professionals paid off the note against the family home he left his mother in a position where none of her income was going out to be paying on a high interest loan. This fiduciary decision infuriated the judge and the Lawyers. This paying off the home was also done to position The Hillygus Family Trust, and Susan Hillygus, in a position of entering bankruptcy protection and having a federal Judge Take charge of the actions of Judge Doherty. As a fiduciary he was to protect the trust and allow it to do what it was intended to do and protect the settlors, and see Susan Hillygus through till the end of her life in her own home. When Roger Hillygus announced to the judge and the legal team of lawyers that the Hillygus Family Trust was being positioned to enter bankruptcy the judge removed Roger Hillygus as trustee and guardian.

### *FACTUAL HISTORY WITH REGARDS TO PROMISSORY NOTE*

In August 1993, H. Eugene Hillygus ("Gene") and his wife Susan L. Hillygus ("Sue") formed a revocable trust and then restated that trust in August 2011, which is entitled "The Hillygus Family Trust, Restated, Dated August 17, 1993" (the "Hillygus Trust"). The Hillygus Trust. Gene and Sue had only two children from their marriage—Robin Hillygus-Renwick ("Robin") and Roger Hillygus ("Roger"). The Hillygus Trust expressed Gene and Sue's intent that in the event that neither of them was able to act as a Trustee of the Hillygus Trust then their son, Roger, would serve as the Successor Trustee of the Hillygus Trust.

The Hillygus Trust obligated the Trustee to, in his/her discretion, use so much of the net income and any portions of all of the principal of the Hillygus Trust for the support, comfort, and welfare of Gene and Sue in their accustomed manner of living or for any other purpose the

Successor Trustee believed to be in Gene and Sue's best interest. The Trustee is also expressly granted the authority to borrow money for any purpose and to mortgage or pledge any trust property. Furthermore, the Trustee is granted the authority to execute contracts, notes, conveyances, and other instruments. Finally, the trustee had the authority to exercise all other rights, power, and privileges, not inconsistent with the Hillygus Trust agreement, then granted to a Trustee under NRS Chapter 163 and any future additions thereto even though said law may be repealed after the Hillygus Trust went into effect.

Since Debbie married Roger, they both have been very active participants in the lives of Gene and Sue. Debbie and Roger would typically travel to Gene and Sue's home twice a week and on the weekend to spend time with Gene and Sue. Debbie and Roger would regularly visit and spend time with Gene and Sue and even traveled, vacationed, and camped with them throughout the years.

Beginning in 2011, Debbie and Roger started to notice that Gene and Sue were requiring more and more assistance as they aged. Finally, in or about March of 2013, Roger, Debbie, Gene, and Sue sat down and had conversation about Gene and Sue's options and preferences for their care moving forward. Gene and Sue explained that they did not desire to either move into Roger and Debbie's mother-in-law's cottage at their house in Dayton or a retirement home. Both Gene and Sue expressed their desire to stay in their home of over 40 years with the support of family.

During the conversation in March 2013, both Gene and Sue were adamant that they desired to have Debbie care for them and that Debbie should be paid for her time in caring for them. They expressed that they wanted to compensate Debbie for all the work she would do around the house, including cooking, cleaning, laundry, and tracking their medical needs. Gene and Sue told Debbie to keep track of her time and that they would pay her $20 an hour during

the week and $30 an hour on weekends. Based upon Debbie's relationship with both Gene and Sue, coupled with her desire to try to fulfill Gene and Sue's wishes, Debbie agreed and accepted Gene and Sue's offer. Initially, Debbie did not track her time but as Gene and Sue's needs continued to grow, Debbie realized the extent to which they desired her to help. Beginning in July 2013, Debbie began tracking her time of taking care of Gene and Sue.

As Gene and Sue aged, they started to grow apart and no longer desired to live together. After a family conversation including Gene, Sue, Roger, and Robin, everyone decided that Gene would move to Lakeside Manor Care, which he did in December 2013. The four individuals discussed other options such as an apartment or another single-family residence, but ultimately decided he was unable to independently care for himself. By the end of 2013, Debbie had contributed and worked in excess of 730 hours with over 50 of those hours being worked on weekends.

In February 2014, Sue was hospitalized and following her hospitalization stayed with her friend Kathleen. During this time, Gene's then counsel, Mr. Moss, filed an eviction notice seeking to remove Sue from the home causing Roger and Debbie to move Sue to their home in Dayton in early March. While Sue was in Dayton, Debbie helped Sue in the mornings with bathing, dressing, medications, and breakfast. When Debbie returned home from a full work day, she would continue to care for Sue by again cooking, caring for, and helping Sue get ready to go to bed.

On May 21, 2014, Roger, with the assistance of counsel, executed a Notice Confirming Appointment of Successor Trustee in which Roger accepted the appointment as Successor

Trustee pursuant to the Hillygus Trust.1At this point, upon the advice of counsel, Roger reasonably believed he was the Successor Trustee of the Hillygus Trust.

Sue repeatedly asked Debbie to take care of her full time. In May 2014, Sue, Debbie and Roger discussed Sue's request for Debbie's full time assistance. The three agreed that Debbie would (1) help Sue full time, (2) give notice that she was resigning her employment position in June, and (3) cease working outside the home in July 2014 so that Debbie could take care of Sue full time.

On May 26, 2014, Debbie's agreement to provide caretaking services was formally reduced to writing in an employment agreement.  The Employment Agreement was executed by Roger as Successor Trustee of the Hillygus Trust. Within the Employment Agreement, the Hillygus Trust and Debbie confirmed that the written agreement was a continuation of the prior verbal agreement.

In June 2014, the Hillygus Trust executed a promissory note in favor of Debbie in the principal amount of $21,760 in exchange for the care giving services provided from July 1, 2013 through December 31, 2013 (the "2013 Note").   The 2013 Note was due on or before January 1, 2024.  The Note contained an attorneys' fees provision and was secured by a deed of trust encumbering the Hillygus Trust's real property asset. Deed of Trust and Assignment of Rents Securing Promissory Note executed June 12, 2014. The 2013 DOT, while attached to the property, was not recorded.

During 2014, Debbie had contributed and worked over of 3,000 hours with more than 1,000 of those hours being worked on weekends or as overtime. Debbie performed typical caretaking services including bathing, cooking, cleaning, shopping, companionship, ensuring medications were taken accurately and timely, and transportation to medical appointments.

Rather than paying Debbie immediately, on January 1, 2015, the Hillygus Trust provided Debbie with a Promissory Note in the amount of $76,010 for services rendered from January 1, 2014 to December 31, 2014 ("2014 Note"). The 2014 Note was due on or before January 1, 2025. The Note contained an attorneys' fees provision and was secured by a deed of trust encumbering the Hillygus Trust's real property asset ("2014 DOT"). Ex. 9; Deed of Trust and Assignment of Rents Securing Promissory Note executed January 1, 2015. The 2014 DOT, while attached to the Property, was not recorded.

From January 2015 through November 2015, Debbie had contributed and worked more than 2,000 hours with over 840 of those hours being worked on weekends or as overtime. During 2015, Debbie received payments as set forth in the Summary. At the end of November 2015, the Hillygus Trust provided Debbie with a Promissory Note in the amount of $160,882.21 for all services rendered from July 2, 2013 to November 30, 2015 after taking into account the amounts that had been paid during 2015 and the accrued, unpaid interest in the 2013 Note and 2014 Note ("2015 Note"). The 2015 Note was due and payable thirty days after written demand by Debbie. The Note contained an attorneys' fees provision and was secured by a deed of trust encumbering the Hillygus Trust's real property asset ("2015 DOT"). Deed of Trust and Assignment of Rents Securing Promissory Note executed November 30, 2015. The 2015 DOT, while attached to the Property immediately, was not recorded until March 15, 2016. Once the 2015 Note was executed, the 2013 Note and 2014 Note were deemed satisfied.

Beginning in January 2016, Debbie attempted to reach an accord with the Hillygus Trust concerning the outstanding amounts owed to her for caretaking services. Debbie sought payment for her care giving services, expenses she paid on Sue's behalf, and for appropriate tax documentation related to her compensation. Debbie's attempts were unsuccessful. Rather than attempting to resolve the amounts owed to Debbie, the Hillygus Trust filed the Petition to Set

Aside Acts of Trustee with this Court seeking to unwind the 2015 Note and 2015 DOT without any indication of its intent to compensate Debbie for the significant time commitment she made to Sue. In August of 2016, Debbie issued written demand for payment of the amounts owed pursuant to the 2015 Note. To date, Debbie has not been paid in full for the services she rendered in the amounts set forth in the 2015 Note and the attached summary.

### *PROCEDURAL HISTORY*

On January 14, 2014, Gene filed a petition was seeking to appoint Adam Clark as the successor trustee of the Hillygus Family Trust. Petition Regarding Administration of Revocable Trust filed on January 14, 2014. At a hearing on March 13, 2014, Gene, Roger, and Sue through their respective counsel agreed to continue or vacate the hearing related to the petition regarding administration of trust. Minutes from March 13, 2014 hearing filed in this matter on March 14, 2014.

On May 21, 2014, Roger, upon the advice of counsel, executed a Notice Confirming Appointment of Successor Trustee in which Roger accepted the appointment as successor trustee pursuant to the Hillygus Trust. Objection to Petition Regarding Administration of Revocable Trust filed in this matter on June 18, 2014.The next day, Gene re-noticed the hearing on his petition to administer the Hillygus Trust. Notice of Hearing: Petition Regarding Administration of Revocable Trust filed in this matter on May 22, 2014. Roger opposed the petition with respect to the appointment of Adam Clark because the amendment adding Adam Clark as the successor trustee was invalid. Objection to Petition Regarding Administration of Revocable Trust filed in this matter on June 18, 2014.

Following a hearing on June 18, 2014, the Court assumed in rem jurisdiction of the Hillygus Trust pursuant to NRS 164.010(1) and confirmed that Roger was the duly acting Successor Trustee of the Hillygus Trust pending a trial concerning his sister's objections to his

appointment.  Order after Hearing filed in this matter on July 3, 2014.  The Court, Sue, through counsel, and Robin Renwick, through counsel, were informed at least as of September 9, 2014 that Roger and Debbie had moved into Sue's residence to assist with Sue's care.  Minutes from September 2, 2014 hearing filed in this matter on September 29, 2014.

A mediation was held in or about October 2014 in the related guardianship matters.  While Debbie was physically present, she was not there to participate substantively, was not represented by counsel, did not participate in the mediation, and was solely there as emotional support for her husband.  Ultimately, there was no settlement or agreement reached in October 2014 with respect to compensation to be paid to Debbie for the care she was providing to Sue.  If a draft settlement agreement was transmitted between the parties at that point, Debbie was not privy to that information nor was she informed of the terms of that proposed settlement.

Trial was set in this matter on February 23, 2015, but the parties stipulated and the Court Ordered to convert the trial to a settlement conference to take place on February 23, 2015 instead.  Stipulation and Order to Vacate Trial and Set Mediation filed in this matter on February 20, 2015.

A settlement conference/mediation took place on February 23, 2015.   Stipulation Regarding Settlement Agreement filed in this matter on June 24, 2015.  The following individuals were present at the mediation: Robin Renwick and her counsel Todd Torvinen, Esq.; Roger Hillygus, with his counsel Michael Keane, Esq.; Susan Hillygus with her counsel Gordon Muir, Esq.; Ryan Earl as guardian ad litem for Gene Hillygus.  Id.  Debbie and Gene were not present.  Id.  The settlement confirmed that Roger would continue to serve as the Successor Trustee for the Hillygus Trust.  Id.; Minutes from February 23, 2015 filed in this matter on December 14, 2015. The stipulation, to which Debbie was not a party or signatory, provided:

Roger and/or Debbie Hillygus shall be compensated for their services as caregivers for Sue in the amount of $3,400 per month beginning March 1, 2015.  Roger and Debbie Hillygus shall at their discretion determine which portion of the above-mentioned fees shall be allocated between them according to the services they each performed.   Roger and Debbie Hillygus will maintain records of the services provided, including date, time spent, and a description of services provided and said time records shall be submitted with each annual accounting in support of the fee payments.

### STIPULATION REGARDING SETTLEMENT AGREEMENT FILED IN THIS MATTER ON JUNE 24, 2015.

In November 2015, Robin, through counsel, filed a Petition seeking, among other things, to remove Roger as the Successor Trustee if the Hillygus Trust.  Petition for Redress of Breach of Trust and Removal of Guardian filed in this matter on November 25, 2015.  The Petition seeking removal of Roger contains no certificate of service and there is no indication in the docket that Roger was ever served with it.  Nonetheless, Roger challenged Robin's efforts to remove him as trustee in mid-December 2015.  Respondent's Response to Petition for Redress of Breach of Trust and Removal of Guardian and Counter Claim filed in this matter on December 17, 2015.

In late December 2015, the Court removed Roger as trustee during a hearing, which was later set forth in a written order.  Minutes from hearing dated December 22, 2015 filed in this matter on January 4, 2016; Order Removing Trustee and Appointing Temporary Trustee of the Hillygus Family Trust filed in this action on December 23, 2015.  The December 2015 order removing Roger as trustee specifically required that the payments to Roger and Debbie for care giving to Sue continue pending further Court order.  Id.  Robin was to serve as the temporary successor trustee until subsequent order.  Id.  That subsequent order was filed April 20, 2016

and placed Fiduciary Services of Nevada, LLC as the successor trustee once they took the necessary oath and accepted the position. Order After February 9, 2016 Hearing filed in this matter on April 20, 2016. Ultimately, Kaycee Zusman was appointed as the Successor Trustee of the Hillygus Trust.

In July 2016, the Hillygus Trust, acting though its trustee Kaycee Zusman filed a petition to set aside the Note and Deed of Trust. See Petition to Set Aside Acts of Trustee filed in this matter on July 21, 2016. Despite NRS 164.033(4)2,at no time prior to Debbie's formal notice of appearance in this action on December 9, 2016 had the Hillygus Trust served Debbie with notice that the Hillygus Trust intended on invalidating the 2015 Note or the 2015 Deed of Trust that were provided in consideration of the services she provided to Sue. After making a limited appearance as an interested party, the parties agreed to continue the hearing on the Petition to Set Aside Acts of Trustee until February 21, 2017 at 2:00 pm. The primary purpose for the extension was to allow Debbie to submit a written opposition to the Successor Trustee's Petition to Set Aside Acts of Trustee. However, counsel for the Successor Trustee also wished to supplement his client's Petition to include additional legal analysis. Counsel for Debbie and the Successor Trustee agreed that the Successor Trustee would submit his supplemental authorities on or before January 19 and that Debbie would file her Opposition ten court days, plus any extension for manner of service.

Interestingly, on December 8, 2016, Robin filed an accounting for the time during which she acted as the Trustee of the Hillygus Trust. Accounting for Robin Renwick's Time as Temporary Trustee filed in this matter on December 8, 2016. While the Successor Trustee, Ms. Renwick compensated at least eight different people for care giving services provided to Sue without prior request or approval from the Court. So of those individuals, such as Monica

Fletes was compensated $15 per hour while others were compensated at $24 per hour and $36 per hour for any overtime.

## *LEGAL ANALYSIS*

The Successor Trustee's Petition to Set Aside Acts of Trustee asks this court to assert its limited in rem jurisdiction over the 2015 Note and 2015 Deed of Trust to set them aside. There is no other relief requested by the Successor Trustee. While the Supplemental Petition includes additional arguments, they do not modify, amend, or adjust the Court's jurisdiction or the requested relief. The 2015 Note and 2015 Deed of Trust were not improper, were supported by consideration, and should not be set aside. The Successor Trustee's Petition to Set Aside Acts of Trustee should be denied in its entirety.

This Court Lacks Jurisdiction over the 2015 Promissory Note and 2015 Deed of Trust Because They Are No Longer Part of the Court's In Rem Jurisdiction. Also, they lack jurisdiction of the person of Debbie Hillygus.

Once this court falsely claimed to have assumed jurisdiction of the Hillygus Trust, it could only have assumed jurisdiction as a proceeding in rem. NRS 164.010(1). As recently confirmed by the Nevada Supreme Court, the District Court's in rem jurisdiction does not allow it to enter orders concerning property that no longer belongs to the trust and precludes it from entering personal judgments against individuals. In Re Aboud Inter Vivos Trust, 129 Nev. Adv. Op. 97, 314 P.3d 941, 945 (2013). In rem jurisdiction permits the district court to enter judgment against specific property; in contrast, in personal jurisdiction permits the district court to enter a judgment against a person.

It appears the Successor Trustee is relying upon In Re Aboud Inter Vivos Trust to assert a constructive trust over property that the Hillygus Trust no longer owns or controls—the 2015 Note and 2015 Deed of Trust. See Supplemental Petition at 8. However, as acknowledged in In

Re Aboud Inter Vivos Trust, a Trust can only maintain a constructive trust when (1) the trustee breached their fiduciary duty by improperly transferring assets to a third party; (2) the third party had notice of the Trust; and (3) the third party had notice of a breach of a duty by the trustee. Id. at 945; NRS 163.115(1) (f) (A court may set aside the acts of a trustee only if the trustee breached the trust"). The Successor Trustee must prove each element to prevail in asserting a constructive trust over the 2015 Note and 2015 Deed of Trust. If the trustee fails to do so or when the court finds that the trustee transferred the trust assets with authority, the transfer operates to pass the legal and equitable title to the purchaser outside the Court's reach of in rem jurisdiction.

In In Re Aboud Inter Vivos Trust, all beneficiaries of the subject trusts consented to the transfer of all trusts' assets to a Limited Partnership in consideration for the two trusts acquiring an ownership interest in the Limited Partnership. ID. at 942. The Limited Partnership then transferred those same assets to a Corporation without the consent of all trust beneficiaries and in exchange for two promissory notes and the renunciation of one of the beneficiary's beneficial interest. Id. at 942-43. After the transfer to the corporation, the Court assumed jurisdiction of both the subject trusts and, after a hearing and receiving accountings, enter an order finding a breach of trust for transferring the assets from the Limited Partnership to the Corporation. The District Court entered a judgment against the Corporation and Betty Jo, who was the former trustee of the trusts and the general partner of the Limited Partnership, jointly and severally in the sum of $782,078.98. The District Court also imposed a constructive trust over the assets that were transferred from the subject trusts, to the Limited Partnership, and by the time the judgment was entered, were in the hands of the Corporation. The District Court based its decision on a finding that Betty Jo breached both her duty as general partner and as a trustee of the two trusts.

The Nevada Supreme Court invalidated the constructive trust over the transferred assets because the transfer from the two subject trusts to the Limited Partnership was proper; and since the transfer was proper, the only remaining trust assets were ownership interests in the Limited Partnership. Because the transfer from the two subject Trusts to the Limited Partnership was proper, the District Court's in rem jurisdiction could not extend to the assets acquired by the Corporation. Likewise, the Nevada Supreme Court voided the $782,078.98 personal judgments against Betty Jo and the Corporation because it was a judgment against them personally and not against any trust property therefore exceeding the District Court's in rem jurisdiction over trust assets provided by NRS 164.010(1) and NRS 164.015(6).

Similarly in this action, this Court assumed only in rem jurisdiction of the Hillygus Trust pursuant to NRS 164.010(1). As in In Re Aboud Inter Vivos Trust, this Court lacks jurisdiction to enter a personal judgment against Debbie, or any other party for that matter. It also lacks the ability to assert any jurisdiction over the 2015 Note and 2015 Deed of Trust unless it finds (1) Roger, as trustee of the Hillygus Trust, breached his fiduciary duty by improperly transferring assets to Debbie; (2) Debbie had notice of the Trust; and (3) Debbie had notice of Roger's breach of trust. NRS 163.115(1) (f) (A court may set aside the acts of a trustee only if the trustee breached the trust"). If the Court does not make these findings, then it lacks the ability to assert a constructive trust over the 2015 Note and 2015 Deed of Trust requiring the parties to resolve their differences, if necessary, through a separate civil action. NRS 164.033(2) (The Court shall not grant a petition concerning trust property if the court determines the matter should be determined by civil action). As set forth below, there was no breach of trust and, even if there were, Debbie did not have notice of Roger's alleged breach.

The 2015 Note and 2015 Deed of Trust Were Not Improper Because Roger Possessed the Ability and Obligation to Ensure Care for Gene and Sue by Compensating Debbie for Her Time.

To bind a principal, the agent must have actual authority, express or implied, or apparent authority.  Dixon v. Thatcher, 103 Nev. 414, 417, 742 P.2d 1029, 1031 (1987).  Apparent Authority is that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence.

Roger had the express authority to provide for the care of Sue and Gene and to compensate Debbie for doing so with the 2015 Note and 2015 Deed of Trust.  Prior to entering into the employment agreement, Roger had been informed and the world had been put on notice that Roger was the acting trustee of the Hillygus Trust pursuant to the Notice confirming Roger's appointment as trustee of the Hillygus Trust, which was recorded in Washoe County on May 22, 2014. Likewise, this Court confirmed his appointment in July 2014.

The Hillygus Trust provides that a trustee has the power and obligation as provided in the Hillygus Trust instrument, expressed by law, or granted by the court upon petition.  NRS 163.023 (emphasis added).  The Hillygus Trust obligates the Trustee to use the Hillygus Trust's assets to ensure the support, comfort, and welfare of Gene and Sue in their accustomed manner of living or for any other purpose the Trustee believed to be in Gene and Sue's best interest during any time in which Gene and Sue were incapacitated. The Trustee is also expressly granted the authority to borrow money for any purpose and to mortgage or pledge any trust property.  Furthermore, the trustee is granted the authority to execute contracts, notes, conveyances, and other instruments.

The Hillygus Trust also provides that the Trustee had the authority to exercise all other rights, power, and privileges, not inconsistent with the Hillygus Trust agreement, then granted to a Trustee under NRS Chapter 163 and any future additions thereto even though said law may be repealed after the Hillygus Trust went into effect.  Applicable statutes allow the Trustee to make payment in money or in property for the benefit of an incapacitated person for the support or maintenance of the incapacitated person.  NRS 163.400(1) (b).

Here, Sue and Gene while they were lucid and then Roger once he became the trustee of the Hillygus Trust employed Debbie to serve as, initially a part time care taker and then transitioning into a full-time care taker.   In the summer of 2014, Debbie resigned her employment position based upon these representations to be compensated for her time so she could devote more of her time to taking care of Sue.  There can be no legitimate dispute that Roger had the authority to employ an individual, including Debbie, to care for Sue.  His authority in this regard is not limited simply because Debbie is married to Roger.  There is no indication that Debbie's rates were unreasonable, that Debbie did not spend the time indicated on the attached timecards, or that Debbie failed to perform the services in an acceptable fashion. In fact, according to the accounting filed in this matter on December 8, the rates charged by Debbie were less than the amounts charged by Sue's primary in home care givers acquired by the Successor Trustee. See Exhibit 8 to Accounting for Robin Renwick's Time as Temporary Trustee filed in this action on December 8, 2016.  Debbie provided services to Sue, and to a lesser extent Gene, for which she is entitled to compensation as a matter of law.

The Successor Trustee's argument and reliance upon NRS chapter 159 is misplaced. NRS Chapter 159 only applies to actions done by an individual in his/her capacity as a guardian, not in a capacity as a trustee of a trust.  Rather, acts of a trustee are governed by NRS Chapter 164.  Accordingly, had Roger been appointed only as the Guardian and was acting in

44

his capacity as a guardian when he entered into the employment agreement with Debbie, the 2015 Note, or the 2015 Deed of Trust, then arguably he could have been required to seek court approval pursuant to NRS 159.113. However, the express terms of the Hillygus Trust and applicable portions of NRS Chapter 164 provide Roger with the ability to provide for the support of his mother Sue including entering into an employment arrangement with Debbie and providing for a manner of payment to Debbie.

In any event, Roger had the apparent authority to provide for the care of Sue and Gene and to compensate Debbie for doing so with the 2015 Note and 2015 Deed of Trust. The trustee of a trust is held out to the world by the trust as having the ability to ensure care for and to compensate others for the care of the trust's settlers. A subsequent trustee must be estopped from denying and refusing to compensate a prior care giver for services rendered simply because the caregiver may have some family relationship to the settlor or Successor Trustee. This would preclude settlors from being taken care of by the chosen caregivers in situations such as this. Accordingly, as a matter of law, Roger had the actual, express authority and at the very least the apparent authority to provide the 2015 Note and 2015 Deed of Trust to Debbie as compensation for services she rendered for almost three years.

Debbie Did Not Know Roger Was encumbering the Hillygus Trust by Executing the 2015 Note and 2015 Deed of Trust.

Roger had the express and at least the apparent authority to act as Trustee when he entered into the employment agreement on behalf of the Hillygus Trust with Debbie and when he provided the 2015 Note and 2015 Deed of Trust as consideration for services Debbie rendered. The Trustee makes no argument about how Debbie could or should have known that Roger was acting without authority. Debbie knew before she entered into the employment agreement that Roger as vested as the Trustee pursuant to the Notice Confirming Appointment

45

of Successor Trustee and shortly after entering into the Employment Agreement that even the Court confirmed that Roger was the trustee.   Additionally, ever since Roger was removed as Trustee, the current Successor Trustee has paid individuals for caretaking services without prior court approval.

Without analyzing the applicable law, the now Successor Trustee is now attempting to unwind the compensation Debbie received and was owed due to the care she provided to Sue and to a lesser extent Gene.   The Successor Trustee's attempts in this regard are inappropriate, meritless, and should be denied.

### *THE STIPULATION DID NOT LIMIT THE AMOUNTS OWED TO DEBBIE FOR THE CARE SHE PROVIDED*

It appears the now Successor Trustee attempts to use the Stipulation Regarding Settlement Agreement (the "Stipulation") as grounds to refuse to compensate Debbie for the time she contributed to Sue as an employee.   While the Stipulation reached in February 2015 contained a provision concerning compensation for providing care to Sue, that provision is silent concerning the amounts owed for past care that Debbie provided to Sue, and to a lesser extent Gene.   The Stipulation does not invalidate, limit, or otherwise hinder Debbie's claims for labor that she provided prior to the Stipulation.

Likewise, Debbie was not involved with and never consented to the Stipulation.   She did not attend the mediation that occurred on February 23, 2015.   There can be no dispute that a person's right to notice and an opportunity to be heard are paramount. Soebbing v. Carpet Barn, Inc., 109 Nev. 78, 83, 847 P.2d 731, 735 (1993).   Debbie's contractual rights cannot be infringed and invalided without her agreement or without due process afforded to her such as a notice and a hearing.   The Court and the signatories of the Stipulation lack the ability to retroactively unwind the amounts Debbie was contractually and equitably due.

The Successor Trustee includes a screen shot of a "Draft Mediated Agreement" from October 2014. The citation to a "draft mediated agreement" in an apparent attempt to bind Debbie to the Stipulation that was entered months later and after subsequent settlement efforts. The Draft Mediated Agreement is irrelevant and provided in violation of Nevada's evidence code.

While Debbie was physically present at only one of many settlement conferences in the fall of 2014, she did not participate, was not represented, and was present solely to emotionally support her husband during a single settlement conference. As this Court acknowledged in its Order after Hearing after the "Draft Mediated Agreement" was apparently circulated, despite participating in mediation, the parties were unable to settle. Order after Hearing filed in GR14-00158 on January 14, 2014. Likewise, the contents of the "Draft Mediated Agreement" are inadmissible settlement negotiations pursuant to NRS 48.105, which precludes evidence of conduct or statements made in compromise negotiations. Ultimately, the language relied upon by the Successor Trustee in the "Draft Mediated Agreement" to imply that Debbie was somehow part of the Stipulations entirely absent from the final draft which was actually entered in this matter. Simply put, whether Debbie attended an unsuccessful mediation in the fall of 2014 is wholly irrelevant to determining whether she is entitled to compensation for services she rendered and any reference to the "Draft Mediated Agreement" violates NRS 48.105.

If the Court sets aside the 2015 Note and 2015 Deed of Trust, It Subjects the Hillygus Trust to Debbie's Legal Claims to Reimbursement for Services She Provided

The Petition seeks to have the 2015 Note and 2015 Deed of Trust set aside yet remains silent concerning how to address Debbie's claims against the Hillygus Trust for compensation if it does. Debbie entered into agreements with Gene, Sue, and the Hillygus Trust for her to take care of Gene and Sue in exchange for an hourly wage. In fact, Debbie even resigned her

employment at Sue's request so she could devote more time to Sue.  There is no question that the Hillygus Trust has an obligation to Debbie to compensate her for her time.  If the 2015 Note and 2015 Deed of Trust are invalidated, then it would subject the Hillygus Trust to breach of contract, unjust enrichment liability, and/or hour and wage violations.  Debbie's claims for reimbursement and payment are not within this Court's jurisdiction pursuant to NRS 164.010, In Re Aboud Inter Vivos Trust, 129 Nev. Adv. Op. 97, 314 P.3d 941 (2013).  Accordingly, the Court should decline to address those claims pursuant to NRS 164.033(2).

### *DEBBIE HAS NOT COMMITTED ELDER ABUSE*

In passing in the original Petition, the current Successor Trustee argues that "the acts of Roger and Debbie Hillygus described herein are financial abuse and exploitation of a vulnerable person or an older person pursuant to NRS 41.1395." Petition at 6:7-9.  The Successor Trustee attempts to expand upon this argument in her Amended Supplemental Points and Authorities.  However, the attempt to include additional argument in the Amended Supplemental Points and Authorities is untimely and should be ignored by the Court.

As explained previously, the Court lacks in personal jurisdiction precluding it from entering a judgment against Debbie.  Additionally, there is no analysis or explanation of how Debbie or Roger committee elder abuse.  The Successor Trustee only includes conclusory allegations without an explanation.  Certainly, providing caretaking services and compensation for those services cannot be considered elder abuse.  Debbie has committed and expended substantial time and effort towards caring for Sue, for which she is entitled to reasonable compensation. Neither Debbie nor Roger exploited Sue by having Debbie, at Sue's express request and desire, provide caretaking services to Debbie.  It was Sue and Gene that were adamant that Debbie be compensated for her time she contributed to them.

48

Assuming jurisdiction, Attorneys' fees and costs are only appropriate if the Successor Trustee can demonstrate that the person who exploited the vulnerable person acted with recklessness, oppression, fraud, or malice. NRS 41.1395(2). There cannot be no such finding here given the circumstances. Debbie provided thousands of hours of care to Sue for which she was compensated by the 2015 Note and 2015 Deed of Trust. It cannot be recklessness, oppression, fraud, or malice to provide caretaking services to an individual and for that individual's trust to provide compensation in return.

Neither Debbie nor Roger exploited either Sue or Gene when Debbie was provided the 2015 Note and 2015 Deed of Trust. The Court should not and cannot enter a judgment against Debbie for exploitation of a vulnerable person.

## *DEBBIE HAS NOT BREACHED A FIDUCIARY DUTY*

Debbie nor Roger breached any fiduciary duty nor was the 2015 Note and 2015 Deed of Trust the result of fraud, duress, or undue influence. The Successor Trustee relies upon NRS 155.0973 as a basis to find a fiduciary relationship and in support of invalidating the 2015 Note and 2015 Deed of Trust. That statute and its presumption that a transfer if void is only applicable or appropriate, with respect to a transfer to a caregiver, when the transferor is a dependent adult. NRS 155.097(2) (b). Moreover, NRS 155.097 does not make or create a fiduciary relationship between a caregiver and the person to whom they provide services. It merely creates an avenue to unwind certain transactions in a limited set of circumstances.

NRS 155.097 is not applicable to the 2015 Note and 2015 Deed of Trust. The transferor of the 2015 Note and the 2015 Deed of Trust was the trustee of the Hillygus Trust, who is not the dependent adult. The transfer was not made by a dependent adult but rather by the then empowered and appointed Trustee of the Hillygus Trust. Debbie had no ability to use her

position as a caregiver of Sue to exert any undue influence, duress, or fraud upon Sue because Sue did not make the transfers in question—the transfer for compensation to Debbie was made by the then trustee of the Hillygus Trust. Thus, there is no presumption that the 2015 Note and 2015 Deed of Trust was void.

Moreover, even if the Court were to disagree, the facts set forth previously demonstrate by clear and convincing evidence that the transfer was not the result of fraud, duress, or undue influence.

Roger was the acting trustee of the Hillygus Trust when he executed and provided the 2015 Note and 2015 Deed of Trust to Debbie. As the Court is likely aware through Roger's actions in this matter, he is not likely to have been influenced, threatened, or put under duress in order to create the 2015 Note and 2015 Deed of Trust. There is no indication that Debbie obtained the 2015 Note and 2015 Deed of Trust by fraud, duress, or undue influence over Roger. Rather, all the evidence reveals that the documents were provided to Debbie as consideration for the extensive caretaking services provided by Debbie to Sue pursuant to a written, valid agreement.

The Successor Trustee's reliance upon Perry v. Jordan is likewise misplaced. The Successor Trustee appears to argue that Debbie breached a confidential relationship with Sue when Debbie provided services for years to Sue and only received promises to pay in the future, i.e.... the 2013 Note and 2014 Note. There is no indication that Debbie breached any confidential relationship with either Sue or the Hillygus Trust's then trustee. The Successor's Trustee's analysis that Debbie somehow breached her confidential relationship with Sue by accepting the 2015 Note and 2015 Deed of Trust in lieu of full payment for all services rendered is misplaced. Debbie had no ability to assert any influence over Sue in breach of any duty because Sue was not making financial decisions concerning the property in the Hillygus Trust.

Rather, the then trustee of the Hillygus Trust was making those decisions as he was required to pursuant to the applicable statutes and trust documents. .

Debbie did not breach a fiduciary or confidential relationship by accepting the 2015 Note and 2015 Deed of Trust in consideration for the extensive care giving services she provided to Sue for years.

### *THE 2015 NOTE AND 2015 DEED OF TRUST ARE NOT THE RESULT OF DEBBIE'S SELF-DEALING*

In Nevada, there is no breach of a duty by a trustee if the trustee has acted in good faith and in a manner he believes was for the best interest of the trust. Bank of Nevada v. Speirs, 95 Nev. 870, 874, 603 P.2d 1074, 1077 (1979). In Bank of Nevada, the successor trustee challenged the prior trustee's investment decisions with trust property arguing that the prior trustee had engaged in self-dealing with respect to his investment decisions. In that case, the trust granted the trustee broad powers empowering the trustee to buy, sell, and invest the trust's property in whatever manner seems best to the trustee. The Nevada Supreme Court acknowledged that that situation concerned a family arrangement where a decedent mother left property to her daughter in a trust controlled by the father's daughter and that the trust specifically provided the trustee father with complete discretion in investing the trust property. The Nevada Supreme Court concluded that a broad grant of authority, a testamentary exoneration of the trustee for mistakes must be accorded respect by the Court.

Here, the Hillygus Trust contains similarly broad grant of authority and testamentary exoneration of the Trustee. Specifically, the Hillygus Trust obligated the Trustee to, in his/her discretion, use so much of the net income and any portions of or all of the principal of the Hillygus Trust for the support, comfort, and welfare of Gene and Sue in their accustomed manner of living or for any other purpose the Successor Trustee believed to be in Gene and

Sue's best interest.  The Trustee is also expressly granted the authority to borrow money for any purpose and to mortgage or pledge any trust property.   Furthermore, the Trustee is granted the authority to execute contracts, notes, conveyances, and other instruments. Finally, the trustee had the authority to exercise all other rights, power, and privileges, not inconsistent with the Hillygus Trust agreement, then granted to a Trustee under NRS Chapter 163 and any future additions thereto even though said law may be repealed after the Hillygus Trust went into effect.

There can be no dispute that the Hillygus Trust extends broad powers to its trustee allowing the trustee to act as he/she deems best, just as the trustee was granted broad authority in Bank of Nevada.  Roger acted in good faith and in the best interest of the Hillygus Trust's settlors when he retained Debbie, at the direct, specific request of both Sue and Gene, to provide caretaking services.  There were no gifts provided to Debbie.  Both the 2015 Note and 2015 Deed of Trust were provided to Debbie as compensation for her services provided to Sue; just as Home Instead Senior Care was compensated for the time of their employees.  Interest was included in each of the notes in recognition of the time value of money and that Debbie was forgoing payment now in exchange for an obligation to pay in the future.  The amount of interest was proposed by the then Trustee and was accepted by Debbie.  The Successor Trustee cites no law precluding the amount of interest agreed upon in each Note.  The Successor Trustee failed to offer any evidence of what a commercially reasonable rate would be.  To the extent the Court believes the interest rate is too high, Debbie would consent to a novation of the 2015 Promissory Note reducing the applicable interest rate in half to twelve percent per annum, simple interest.

The Successor Trustee's citation to In Re Estate of Tate is also misplaced for a number of reasons.  First, In Re Estate of Tate is an unpublished decision in the state of Illinois and pursuant to Illinois Supreme Court Rule 23(e)(1), it may not be cited as precedent by any party

except to support contentions of double jeopardy, res judicata, collateral estoppel, or law of the case. IL R S CT Rule 23(d)(1). Second, the Illinois trial court found a fiduciary relationship existed between the caretaker and decedent because the decedent trusted the caregiver with blank checks and debit cards linked to his personal bank accounts.

Debbie's relationship with Gene and Sue is not the same as the relationship in In Re Estate of Tate. Debbie was not provided with the ability to pay expenses on behalf of Sue or the estate, rather that power was properly vested with the trustee at the time. Likewise, the transaction in question, the 2015 Note and 2015 Deed of Trust did not benefit Debbie as the transactions did in In Re Estate of Tate; rather, they simply made Debbie whole by providing her the compensation she was owed for her years of dedicated service and labor to Sue and Gene.

Likewise, the Successor Trustee's citations to treatises and secondary sources lacks merit. Binding authority is found in Bank of Nevada v. Speirs making any reliance upon either Bogert's treatise or the Restatement unnecessary. Moreover, even the Restatement of Trusts acknowledges that transactions involving a trustee's spouse is not per se void. Restatement (Second) of Trusts, § 170, Cmt e (1957). The comments to the Restatement (Second) of Trusts provides, with regard to sales to third parties, that "If the third person is the spouse of the trustee, the sale can be set aside as though it were made to the trustee himself. The mere fact, however, that the purchase is related to the trustee does not make the sale improper…[rather the beneficiary or successor trustee must demonstrate] that the [trustee] sold the property for less than he could have obtained for others, or otherwise abuses his discretion in making the sale." Restatement (Second) of Trusts, § 170, Cmt e (1957). Thus, the Restatement requires the transaction to be analyzed on a case by case basis. Here, the terms of Debbie's employment and services were reasonable, proper, and provided value to both Gene and Sue. Under the

Restatement section and its comments cited by the Successor Trustee, there is no self-dealing if the terms of the transaction are commercially reasonable.

There has been no self-dealing by either Debbie or Roger. As evidenced by her time cards and the attached summary, Debbie performed extensive services for Sue and to a lesser extent Gene. She is entitled to be compensated for that work, which is why the 2015 Note and 2015 Deed of Trust exist. They are supported by valid, substantial consideration and should not be set aside.

### DEBBIE STATUS AS ROGER'S WIFE AND NEVADA'S COMMUNITY PROPERTY LAWS ARE IRRELEVANT

The Successor Trustee repeatedly asserts that Roger and Debbie are alter egos of one another given their marital relationship and Nevada's community property laws. The Successor Trustee's analysis ignores the very real, tangible, and meaningful consideration provided to the Hillygus Trust's Settlor, Sue by Debbie. While Nevada recognizes community property, it is irrelevant in this instance because only if and when there is a dissolution of the marriage can Roger assert any claim to the 2015 Note and 2015 Deed of Trust. Until then, his interest, if any exists, is purely theoretical. It was Debbie who fulfilled Sue's wishes to have Debbie care for Sue. To now invalidate Debbie's compensation for doing so would work a manifest injustice against Debbie and would be contrary to the equities.

### DEBBIE HAS RESERVED HER RIGHT TO A JURY DENIED BY THE COURT

The Nevada Constitution secures all the right of a jury trial in certain contexts. Nev. Const. art. 1, § 3. Nevada's jury trial right is based on an 1864 version of the English common law as statutorily modified in this country. Aftercare of Clark Cty. v. Justice of Las Vegas Twp. ex rel. Cty. Of Clark, 120 Nev. 1, 6, 82 P.3d 931, 933 (2004). Other courts interpreting a similar constitutional provision explained that actions brought against a trustee

alleging breach of trust were heard in courts of equity and not before a jury.  Bank One, N.A. v. Borse, 351 Ill. App. 3d 482, 488–89, 812 N.E.2d 1021, 1027 (2004).   However, breach of contract claims trigger a defendant's right to trial.  See Awada v. Shuffle Master, Inc., 123 Nev. 613, 618–20, 173 P.3d 707, 711–12 (2007).  Courts are not always required to proceed first with legal issues before addressing equitable claims.  Id. at 621, 173 P.3d at 712.To the extent that this Court may attempt to adjudicate Debbie's contractual claims with respect to the 2015 Note and the 2015 Deed of Trust, Debbie has a right to have this matter heard by a jury and has asserted that right.  Given the limited language in the petition, the only relief sought is the assertion of a constructive trust over the 2015 Note and 2015 Deed of Trust coupled with an invalidation of those items.

### *CAUSES OF ACTION*

FIRST CAUSE OF ACTION

### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FIVE COUNTS)*

Plaintiff refers and re-pleads each and every allegation contained herein and by reference incorporates the same herein and makes each a part thereof the following causes of action.

1.  The officers of the District Court in the county of Washoe in the State of Nevada and those that are to regulate and control the actions of those that operate said court should have regulated the use of the court and the actions of the court as a method to vex and harass others. The court and the other defendants have allowed proceeding to continue, in a case that is meritless and specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm. This action was initiated by a fraud upon the court, was allowed to continue purely for the financial gain

of those involved in a criminal conspiracy. This conspiracy was orchestrated and regulated by Frances Doherty who through her non-judicial acts provided others with the ability to plunder the Hillygus family trust to the damage of all defendants.

2. The Court ordered and allowed the person of Robin Renwick to secure a position as guardian of Herbert Hillygus, against his objections. The court appointed lawyers to represent Herbert who worked not for his benefit but for the advancement of the courts ongoing criminal conspiracy and that of the other defendants. These attorneys worked not for the protection of Herbert and protecting his life and property, but as a means of self-enrichment of themselves and their coconspirators. The court ordered and work as a collection agency to ensure that its co-conspirators be richly compensated at the expense of the Hillygus Family trust. This behavior by the co-conspirators and defendants has cause the plaintiffs harm as they feel vexed, harassed and set upon by the full weight of the power of the State of Nevada, County of Washoe in the State of Nevada, and the city of Reno and all orchestrated by the Washoe County District Court and its officers and supported by the acts of the defendants. The court and the other defendants have allowed proceeding to continue, in a case that is meritless and specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

3. Judge Frances Doherty continuation of the damage to the defendant was exacerbated by the Judge who issued an order granting numerous lawyers an excess of 50% of the accumulated wealth held in trust at that time. The Hillygus Family Trust was established for the care of Settlors of said trust was established and funded for the purpose seeing the settlors through to the end of their lives and pass assets on to their family. The defendants continued their financial assault upon the trust till every available asset;

accept that of the family home, had been extinguished. The defendants have through their intentional actions have converted, to the use of the co-conspirators in the criminal syndicate, every asset that the Plaintiffs saved their whole life to acquire. They have done this with the goal of self-enrichment of the co-conspirators and supported by the action of the defendants. The settlors both had been suffering from debilitating illnesses, Herbert diagnosed with vascular dementia, and his wife Susan Hillygus is suffering the effects of Alzheimer's. They planned for such an eventuality and their wishes were outlined, and specifically stated, in their trust documents. Under their powers of Attorney issued to protect and care for them if they lacked the ability to do so Roger Hillygus became their de-facto guardian, medical decision maker and the successor trustee of their estate. The defendants intervened in the wishes of the settlors and circumvented the contractual relationship between parties for the purpose of self-enrichment of the defendants. The Defendants have caused long term financial and mental anguish to the defendant. The actions of the court were both arbitrary and capricious and were not within the legal practices a determined by the Nevada Revised Statues with regards to the legal procedure with regards to a civil case brought before the court.  The court and the other defendants have allowed proceeding to continue, in a case that is meritless and specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

4.  The officers and personnel of the employees of the City of Reno and the other defendants had been involved in a pattern of actions that are both illegal and unethical. The City of Reno and the other had failed to act to protect the persons of Defendants and failed to act on the complaint brought forth for the first degree murder of Eugene Hillygus by Robin Renwick in her cold an calculating neglect of Herbert Eugene

Hillygus after he was determined to be unable to care for himself and his guardianship was removed from Roger Hillygus by Judge Frances Doherty. The Plaintiff was forced to file a complaint with the Sheriffs Department internal affairs and the head Sheriff to try and gain some protection for his family, yet his plea for help were left unanswered leaving all of the plaintiffs to feel emotional distress causing harm. The court and the other defendants have allowed proceeding to continue, in a case that is meritless and specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

(SECOND CAUSE OF ACTION)

### *INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP (FIVE COUNTS)*

5. The Defendants jointly and as a group entered into a pattern of action to interfere with the contractual relationship between the plaintiffs and society that has established a contractual relationship with the plaintiffs that by their sacrificing their right of self protection and protection of their own property to that of the institutions set out by society to establish and maintain, the courts, the legislature, the police, the fire department and many other public services established for the good of the public. This covenant with the court is set down so as to keep from vigilantly justice being the norm. Persons who come to the court come with the expectation of a court that would weigh the facts, apply the applicable law, look at, understand and abide by court president set by the preceding cases ruled on by higher court all of which were not used by the defendants. The defendants treat the court system, the laws and the regulations as just a suggestion and the only real rules are those that the court decides are applicable at that time even if they run contrary to any know laws, rules or court president. The defendants

have known or should know of the corruption pf the system when Darren Mack after being abused and tormented by a judge, who is listed as the worst judge in the United States, finally snapped and took a shot with a high power rifle at the judge. The county response was to immediately not to look at the reasons the family court system and the system as a whole was broken but instead to invest in bullet proof glass and better security for the court. The defendants have allowed and condone the corruption of the system as a whole and thus are as capable as those that broke and interfere with the social contract and legal contract for a court of fair dealing.

6. The court has interfered with the contractual relationship between Roger Hillygus and the Hillygus family trust. They circumvented the contractual relationship between Roger Hillygus and the trust that was established and came into effect when Roger through the incapacitation of his parents became the successor trustee. The court had no legal reason for the circumventing of the contractual relationship established by this trust and thus has interfered with said contractual relationship.

7. The court and the other defendants have interfered with the contractual relationship between Debbie Hillygus and the other defendants as to her contract for care of the settlers causing her financial harm.

8. The court has interfered and attempted to interfere with the contract established in the deed of trust executed and filed at the county recorder's office by the court issuing a notice to the county recorder that said deed of trust has been satisfied and the other defendants through their action in support and lending their support for said actions become themselves culpable for said actions. Their intentional actions of the defendants have intentionally caused the plaintiffs irreparable emotional and financial harm.

9. The justice court in allowing and suborning perjury and using said perjury as a means to issue a lockout order on the Hillygus' family home in an administrative action. The other defendants have supported the said administrative action, ether by their actions directly in support or through their inaction in failing to control the illegal actions of an administrator who acts under the color of their authority granted to the defendants. The defendants action individually and as a group has caused the plaintiffs irreparable harm. The action of the defendants is specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

(THIRD CAUSE OF ACTION)

## *UNINTENTIONALLY CAUSING EMOTIONAL DISTRESS*

10. The actions of the defendants both knowing and unknowing have caused emotional distress to the plaintiffs. The defendants of have through their actions caused the distress of the plaintiffs in their defense of a barrage by the defendants or supported by the defendants. Their action though unintentional but should have been deemed to cause ever emotional distress to the plaintiffs.

(FOURTH CAUSE OF ACTION)

## *LIABLE*

11. The court has entered into the court record libelous statements that should have never been made from the bench or been allowed to be entered into the court record. These statements are such as to cast the plaintiff individually and jointly in a bad light. As to such these statements can be used as a mean to decrease compensation in employment or as a means of denying contractual agreement thus causing the financial harm to the plaintiffs individually and jointly because of the actions of the defendants.

(FIFTH CAUSE OF ACTION)

### *SLANDER*

12. The defendants jointly and individually have made slanderous statements about Plaintiffs these statements were made specifically with the intent of harming the plaintiffs

13. The defendants have under the guise of official and sanctioned activity issued statement demeaning the medical mental health of Roger Hillygus claiming him to be mentally deranged and in need of psychological help. These statements are made by a judge with no medical training, who failed as a lawyer and only through her exerting of her political influence was she allowed to become a family court magistrate and when the supreme court found out those magistrates were rendering decisions in criminal matters were they give the title of full district court judge. Judge Frances Doherty is a non-qualified person who renders arbitrary and capricious decisions with no legal background nor does he follow the law, but when challenges she uses her array of slanderous statements as a means of quieting opposition and badgering those that oppose her. These statements are damaging to the reputation of those that oppose her and damage the plaintiffs financially as these statements cast them in a bad light and limit their ability to conduct normal business proceeding.

(SIXTH CAUSE OF ACTION)

### *INVASION ON THE SECLUSION AND PRIVACY OF ANOTHER (THREE COUNTS)*

14. The defendants through their actions have turned the plaintiff's lives into a living hell. The Defendants jointly and separately have damage familial relation and caused financial harm to the Plaintiffs. The Defendants have used the power an authority of

their positions as a means to bully, vex and harass the plaintiffs. They have used and condoned the actions of other of the defendants and their joint action has intruded on the privacy and sanctity of familial relationships.

15. The court and the other defendants have used the power and authority as a means of interjecting themselves into the lives and contractual relationship of the plaintiffs. This interference and interjection into the personal space that a normal person would conclude, and feel the intrusion into the personal space and seclusion of the plaintiffs. This intrusion has caused the expenditure of time and money in defending against this intrusion along with the loss of time that should have been used in spending as much time as possible with those that where slowly losing their ability to comprehend and understand their relationship within the world.

16. The court intruded into the lives of the Hillygus family causing the Hillygus' to loss valuable time that Roger and other family members could have spent with Herbert Hillygus. The court appointed as his guardian that only wanted his money and through her abuse and neglect caused his premature death. This death was avoidable if even the semblance of care would have been exercised by the defendants toward Herbert, but instead their main and overwhelming concern was the attack on the trust and its successor trustee. This intrusion into the seclusion of another has caused irreparable harm and financial expense to the plaintiffs.

(SEVENTH CAUSE OF ACTION)

## ***ABUSE OF PROCESS***

17. The Plaintiff claim and affirm the actions of the Defendants to be an abuse of process that has been used as a means of self-enrichment and the creating and using the political

capital that has been gained through years of using the court and the other defendants as a weapon that can be wielded against enemies and used to award coconspirators or political allies. The legal action and accompanied actions are an abuse of process that has caused irreparable harm to the plaintiffs at the hands of the defendants.

(EIGHTH CAUSE OF ACTION)

### *INTERSTATE WIRE FRAUD*

**18.** The defendants individually in the furtherance of their ingoing criminal conspiracy in which the conspirators colluded and used the interstate money transfer system to arrange and conspire for money to be transmitted from the accounts setup and maintained in the national stock market system and the national banking system into the accounts of the co-conspirators so as to transfer the ill-gotten gains from the servers maintained for and for the exclusive use of Peterson Wealth Management and maintained in another state than Nevada to others financial recipients that maintain their financial electronic storage in states that are not within the boundaries of the state of Nevada.  This transfer of funds that are the rightful property of Hillygus Family Trust and exceed a loss in excess of three hundred thousand dollars.

(NINTH CAUSE OF ACTION)

### *FRAUD THROUGH INTENTIONAL MISREPRESENTATION*

19. The defendants in conjunction with the Person claiming to be a lawful judge conducting the business of the court, conducted a fraudulent hearing in which she tried to and issued orders stating that she had the lawful authority to Remove a deed of trust that was issued in conjunction with a promissory note owed to Debbie Hillygus for services rendered to the settlers of the Hillygus Trust. This note was issued for payment for funds due to

Debbie and in such was lawfully issued by the trustee. This deed was placed against the property owned by the trust as it was to ensure payment for service rendered. The defendants have defrauded Debbie by their claim that the note has been satisfied and that in such she is no longer the person who I to receive payment in the event of the sale of the home. This fraud is accomplished by using the resources and power wielded by the defendants and the credence associated with the use of the names listed as defendants official titles. Damage done is in excess of two hundred and fifty thousand dollars and is accruing interest.

20. The defendants have been conducting and orchestrating an elaborate conspiracy in which the defendant claims to have the legal authority to raid and destroy the Hillygus family Trust. They have used this supposed authority to orchestrate their criminal activity and have oppressed any opposition challenging their authority. The judges hide behind the protection that is associated with their title, but because their acts are outside the bounds of what legally is consider to be their official acts, these act are non-judicial in nature as they have no legal authority to do said acts and thus they are acts not protected under their title. These non-judicial acts are part of an ongoing criminal conspiracy and this conspiracy use the defendants, ether with their knowledge or by their non-action in trying to curtail the actions that they have legal authority over. Because the acts and the conspiracy reach the standard of a Ricco conspiracy it is not required that all the parties know of and are participating in the entire act to be charged as participants in such. The acts of fraud are a way in which the defendants have been using to become the owners of and have use of property that is actually legally the property of the Hillygus trust.

(TENTH CAUSE OF ACTION)

### *PROFESSIONAL NEGLECT*

21. The defendants are tasked, by their position and its authority, to monitor and when necessary correct and discipline the actions of those that are operating under their authority. The county commissioner have the authority to correct and discipline those at the District Court of Washoe County when their actions are outside the scope and authority of the court system. The family court has been on the radar for its actions that are arbitrary and capricious in nature and the string of corruption that flows through its halls. The shooting of a judge should have raised some question and the general knowledge that a judge in the family court is having sex with those divorcees that come into his court. With even a brief investigation of asking any legitimate lawyer in Washoe county about representation in the family court and they will refuse and all have the same response, that they will not practice law in the family court as the law does not exist in that court. The judge and staff fail to follow any know law and ignore the rules of civil procedure. It is a kangaroo court with the head kangaroo on the bench making decisions and calling them rulings of law. The actions of all of the defendants have committed professional misconduct for ether their direct or indirect actions in support of the family court.

(ELEVENTH CAUSE OF ACTION)

### *WRONGFUL DEATH*

22. The defendants jointly and separately have through their actions caused the wrongful death of Herbert Eugene Hillygus. The court placed Herbert into the guardianship with Robin Renwick as his guardian. This situation left a vulnerable and unprotected man in the hands of a person who only and specifically wanted Herbert's money. She began a

pattern of conduct that even in a fully competent adult would cause them harm. The actions of his guardian were those of a person with no concern for the human life which she had become the guardian. This fact became known to the court and the court ignored the pleas for help, instead the judge continued in its never ending pursuit of the money in the trust. Herbert was left on his own to deal with the world. His guardian would take him places and rather than staying with him she would leave him to find his own way home. On his walks toward home he would sometimes defecate on himself, sometimes urinate, usually fall and hurt himself and even one time was found lying in the bottom of a ditch with no way to get himself out. All of these walks toward home ended in trips to the hospital. When he was visiting a friend in a rehab center he was dropped off by his guardian and the staff at this center would feed him, and take care of him and call his assisted living center to get him a ride back to them. They finally told his guardian that she could not leave him there, yet she would still drop him on their front door step and run away leaving him to fend for himself. When a hospital would call after he would arrive by ambulance she would not answer her phone leaving him to deal with the complexities of the hospital process on his own. All of this and more was brought up to the court and they did nothing to help him and this lack of concern and his abuse caused his death.

### *(TWELVETH CAUSE OF ACTION)*

### *OPPRESSION UNDER THE COLOR OF AUTHORITY*

23. The courts used their unbeatable power that came from their position as a means to force what they wished on the plaintiffs. They have thrown the plaintiffs from their family home at gunpoint. They have kidnapped Susan Hillygus and placed her in a locked

facility that holds her against her will. They have acted in the manor of a thug or an organized crime figure that can and will do whatever they deem necessary as the means to an end for accomplishing their goal. All of this is their technique for obtaining what they want. The Money and power that comes with placing a person in a guardianship the guardianship gives them complete control of a person's life and most of all their money. When Roger tried to enter a court room in which his wife was being bullied and cajoled to relinquish control of her promissory note, he was surrounded by bailiffs and forced to sit and stay where they ordered him to. If this was anyone else who had done that it would have been called kidnapping, but for the court it is their business as usual.

(THIRTEENTH CAUSE OF ACTION)

### *VIOLATION OF THE SECOND AMENDMENT RIGHTS*

24. The defendants separately and jointly have acted to bar Roger Hillygus from possession of the guns that are rightfully his. Their actions have allowed his guns to be stolen from his personal vehicle and his family home all while county employees watched and aided in the theft of Rogers guns and personal property. The court became aware of the theft and even has been presented with testimony by the person, who has said guns in their safe, yet the court will not nor has it ever made the attempt through law enforcement to have said guns returned, let alone the other stolen items. The defendants individually and jointly have conspired to deprive the plaintiffs of their constitutional rights to keep and bear arms. This is a constitutional violation.

(FOURTEENTH CAUSE OF ACTION)

### *VIOLATION OF THE FIRST AMENDMENT RIGHTS*

25. The defendants have individually and jointly take Susan Hillygus' rights away from her. By their actions they have barred her and stopped her from attending the church that she wishes and has attended for years, They have restrained her movement and thus her right to peacefully assemble with her friends and family and discuss the matters of the day, all of which she enjoyed doing. By the establishment of a guardian who nether knows her nor care about her, she no longer has the right to petition the government for redress of grievance as he would surely oppose her treatment and incarceration. Her first amendment rights have been barred by the action of the defendants.

(FIFTEENTH CAUSE OF ACTION)

### *VIOLATION OF THE 14TH AMENDMENT RIGHTS*

26. The defendants have separately and jointly taken action to deprive the plaintiffs of their 14th amendment right of due process of law. The defendants have taken the plaintiff right to life liberty and property and done so without due process of law. Said action has been done through the use of a fictitious court process that could only be considered a court process if the only requirement is that it happened in a building known as a court house. The "court" had no intent of providing court service only in furtherance of organized criminal activity. The removal of money and property without due process is a clear violation of the 14th amendment and I supported by the actions or inactions of the defendants.

### *PREY FOR RELIEF*

Roger Hillygus comes to the court and prays for relief and compensation for the acts of the defendants who through negligence, or willful misconduct, fraud, RICO conspiracy, and operating without legal jurisdiction have damaged the plaintiffs separately and jointly.

1. The plaintiffs request that the defendants be required to restore the Hillygus Family Trust To the level of funding that was part and whole of the Hillygus Family Trust, to include cash, stocks, bonds, motor vehicles and real property along with personal possessions that were taken from their home, their residence and their person. This making the trust whole is to be required that all stocks and bonds held by the trust be purchased at current market value and returned to the trust, this purchase of stocks is for the number of stock certificates and not at the value that is presently associated with said stocks. They shall also be required to a pay the cash value of any bonds sold by order of the plaintiffs at an amount as if said bonds had continued to accrue interest at the stated interest rate associated with each bond. They shall be required to replace in kind any property lost because of the actions of the defendants or pay the current market value of said property as of the date of this decision. A list of items lost stolen or miss placed as a result of the action of the defendants. These valuable items sold or stolen by any party shall be purchased at fair market value and returned to the plaintiff it was taken from or to the Hillygus family trust.

2. The defendants request the sum of one hundred thousand dollars be paid to each plaintiff for each tortuous violation that have been found to be in part or in whole the responsibility of defendants jointly or individually.

3. The plaintiffs pray that the court will award the surviving plaintiffs as of January 2018 an amount not less than one million dollars per plaintiff for the actions of the defendants individually and jointly that caused the premature death of Herbert Eugene Hillygus and the

separation from his loved ones. His loss and the loss of time with his family can never be undone but a dollar amount judged by this court to be appropriate for the family's loss of the head of the family, husband to Susan, Father to Roger and guiding light in their time of need. His loss was purely a means to an end for the defendants to use his assets, to pay off political favors, buy political points and fund their own enterprises.

4. Roger Hillygus and Susan Hillygus request that the court order that this son and mother who had a lifelong bond and had planned to in the eventually of the diminished health and Susan becoming incapacitated, as stated in their trust documents, that Roger was to become the successor trustee of the Hillygus family trust and the care take of his mother as her health declined. The defendants could not allow this. They circumvented the trust and the wishes of the settlors and removed Roger Hillygus as trustee placing his sister in his place for the sole reason that she would destroy the trust and give the money to the sycophants of the defendants and place her mother, at the urging of the defendants, into a LOCKED AND DANGEROUS FACILITY WHERE SHE HAS BEEN INJURED NUMEROUS TIMES. All of this in the purest of forms of greed and attempt to leave the surviving settlor penniless and alone in a facility that is allowed to siphon whatever amount they wish to and claiming that as being necessary for her care. This separation and estrangement of the last years of her life are inexcusable as she had prepared for and she so clearly had stated and prepared for her retirement and her wishes in a trust document that has been ignored by the defendants. The court should award each of the plaintiffs no less than one million dollars as the damage can never be undone and the time lost but the plaintiffs can never be returned to them.

5. The court should also award compensatory damages in an amount to deter the defendants, and any other group, from entering into an arrangement to willfully take advantage of those that cannot defend themselves.

6.  The plaintiffs also wish for the court to enter into the record the nature of the action

undertaken by the defendants and the egregious result to the Hillygus family.


Respectfully submitted,


Roger Hillygus


## ***AFFIRMATION***

I affirm the foregoing document does not contain the Social Security number of anyone.

Subscribed and sworn to before me this _8TH _ day of May, 2018.


Roger Hillygus

90 Wells Fargo Ave.

Dayton, NV 89403

(775) 232-5583

rhillygus@gmail.com

Pro Se Litigant


71