

1  Roger Hillygus
   90 Wells Fargo Ave.
2  Dayton, NV 89403
   (775) 232-5583
3  rhillygus@gmail.com

4  Roger Hillygus, Pro Se
5  Debbie Hillygus, Pro Se
   Roger Hillygus as Next Friend of Susan Hillygus and her Attorney in Fact,
6  Roger Hillygus as Attorney in Fact and Heir to Herbert Eugene Hillygus (Deceased)
7  Roger Hillygus Successor Trustee of The Hillygus family Trust,
   Roger Hillygus as Attorney in Fact and Power of Attorney for Debbie Hillygus
8
   Plaintiffs,                              Case No. 3:18-cv-00212-MMD-WGC
9        vs.                               **FIRST AMMENDED COMPLAINT**
10
   Frances Doherty Individually,
11 Washoe County Clerk Jacqueline Bryant,
   The Second Judicial District Court in Washoe County, for the State of Nevada,
12 Judge Frances Doherty, Employee State of Nevada, Attorney General Adam Laxalt,
13 Scott Freeman Chief administrator of the Second Judicial District Court, Washoe County, NV,
   employed by State of Nevada, Attorney General Adam Laxalt,
14 Patrick Flanagan, Chief Administrator District Court, State of Nevada (Deceased),
   The Washoe County Board of County commissioners,
15 Kitty Jung, Commissioner,
16 Bob Lucy, Commissioner,
   Jeanne Herman, Commissioner,
17 Commissioner Vaughn Hartung,
   Commissioner Marsha Berkbigler,
18 Judge David Clifton, Employee of Washoe County,
19 David Clifton in his personal capacity,
   Reno Justice Court, a court serving Washoe County,
20 City of Reno, Reno City Council,
   State of Nevada, Attorney General Adam Laxalt,
21 Washoe Legal Services Domestic Non-Profit Corporation,
22 Washoe Legal Services Board of Directors,
   WLS President Austin K. Sweet Esq.,
23 David Spitzer Esq., Employee WLS
   Todd L. Torvinen Esq. Chartered P.C.,
24 Todd L. Torvinen, individually,
25 Robin R. Renwick, Individually,
   Robin R. Renwick, and as guardian, of H. E. Hillygus,
26 Robin R. Renwick as co-guardian, S. L. Hillygus and co-trustee, The Hillygus Family Trust,
   Kaycee Zusman, Individually,
27 Kaycee Zusman as Guardian of S. L. Hillygus,
   Kaycee Zuzman Trustee of the Hillygus Family Trust,
28 Kaycee Zusman managing partner of Fiduciary Services of Nevada LLC,

Robert Zusman managing partner of Fiduciary Services of Nevada LLC,
Robert Zusman, Individually
Deborah S. Bowers, Individually,
Kelly K. Lund a.k.a. Kelly Kathleen Wozniak, Individually and as Guardian and Trustee,
Fiduciary Services of Nevada LLC dba Lund Enterprises LLC,
Lund Enterprises LLC,
Kelly K. Lund Managing Partner Lund Enterprises LLC,
Daniel D. Lund Managing Partner Lund Enterprises LLC,
JEA Senior Living, Jerry Erwin Ass. Inc. a Foreign Corp.,
Debra A.W. Fredericks Ph.D., dba Integrated Behavioral Healthcare
Washoe County Sheriff's Department,
Washoe County Sheriff Chuck Allan, and Chuck Allan individually,
Washoe County Deputy Sherriff Captain Jerry Baldridge, and Jerry Baldridge individually,
Washoe County Deputy Sheriff Lieutenant Greg Herrera, and Greg Herrera individually,
Washoe County Deputy Sheriff John Macken, and John Macken individually,
Ryan J. Earl Esq. Guardian Ad Litem,
Gordon Muir Esq.
Hawkins Folsom, & Muir P.C.,
Don Leslie Ross Esq.,
Michael W. Keane Esq.,
Woodburn and Wedge a Chartered Domestic Professional Corporation,
Stephen Craig Moss Esq.,
Michael B. Springer Esq., Silver State Law LLC.,
The Barber Law Group Inc.,
Joel Bennett Barber, President and registered agent,
Ryan J. McElhinney Esq. Associate, Barber Law Group,
The Gunderson Law Firm P.L.C., President Mark H. Gunderson,
John R. Funk Esq. Associate, Gunderson Law Firm,

Unnamed defendants A-M,

(All to be known as Frances Doherty et. al.)
                    Defendants,

# **FIRST AMMENDED COMPLAINT**

## ***JURISDICTION***

1.  The Plaintiff being a resident of the State of Nevada is within the Jurisdiction of The US

District Court, District of Nevada.

2.  This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) (1)

because the amount in controversy exceeds $75,000.

3.   This Court  enjoys venue under 28 U.S.C. § 1391(a)(2) because all or a substantial portion of the events that gave rise to Plaintiff's claims transpired in the State of Nevada, including the publication or republication of the defamatory falsehoods and the damage to Plaintiff's reputation.

4.   This Court enjoys personal jurisdiction over the Defendants because the false and defamatory statements made by Defendants were published in Nevada and available throughout The United States and the Plaintiff-target of the defamatory statements was and remains a resident of Nevada.

5.   As one of the Named parties is in fact the Washoe County District Court in the Second Judicial District Court of Nevada and an employee of the State of Nevada, Judge Frances Doherty in her non judicial acts both professionally  in acts not within her duties as a jurist and as a private citizen in the city of Reno state of Nevada and award would come from the State of Nevada general fund or the Washoe County fund and thus the source of revenue for court operations, thus any litigation in this Washoe County District Court would be biased because the court relies on the general funds of Washoe County for operating expenses.

6. The Federal District court in Reno Nevada is the court of general jurisdiction as it has the ability to evaluate and render a decision on such a complicated and far reaching constitutional case without having financial ties to any of the parties or relying on funds from the Washoe County Nevada's general funds for its operating expenses.

7. The plaintiffs are claiming numerous causes of action that are violations of constitutional rights so as to allow the jurisdiction of the United States District Court, District of Nevada.

### *THE PARTIES*

1. Roger Hillygus will proceed as a Pro Se representing himself Roger Hillygus (Roger) and all of the other plaintiffs as their attorney in fact or power of attorney (POA). I am a resident of Lyon County in the state of Nevada.  90 Wells Fargo Ave., Dayton, Nevada 89403. First plaintiff in this action.

2. I Roger Hillygus will proceed as a Pro Se representing Debbie Hillygus (Debbie) wife of Roger Hillygus as her attorney in fact and POA and all of the other plaintiffs. Debbie is a resident of Lyon County in the state of Nevada. 90 Wells Fargo Ave., Dayton, Nevada 89403. Second plaintiff.

3. I Roger Hillygus will proceed as the Pro Se representing Susan Hillygus (SUSAN), settlor of the Hillygus Family Trust, as her next friend, attorney in fact and or POA, she is a resident of Washoe County in the State of Nevada. She is a person who has been deemed to be medically incapacitated and unable to make legal decisions on her own, this case is filed on her behalf as she has no guardian ad litem or court appointed attorney representing her wishes. 90 Wells Fargo Ave., Dayton, Nevada 89403. Plaintiff three.

4. I Roger Hillygus will proceed as the Pro Se representative, representing Herbert Eugene Hillygus, a settlor of the Hillygus Family Trust, as his former POA, attorney in fact, and now heir, a deceased person and a former resident of Washoe County in the State of Nevada, when living and the damages claimed in this complaint occurred on his person and property. 90 Wells Fargo Ave., Dayton, Nevada 89403. Plaintiff four.

5. I Roger Hillygus precede Pro Se, representing the Hillygus family Trust, as the true and legitimate successor Trustee to the Hillygus family Trust, a Trust formed by and

4

registered with the state to the settlors whose residence is in Washoe County. 90 Wells Fargo Ave., Dayton, NV  Plaintiff five

6. (Above Plaintiffs to be known as: Roger Hillygus et al.)

7. Frances Doherty as an individual for her "non-judicial acts" and those acts that are in violation of the law, outside her legal acts within the scope of her job duties and responsibilities and without proper jurisdiction as a legal judge.  She resides within the County of Washoe State of Nevada. At 188 Carleton Ct. Reno, NV 89511 Defendant one

8. David Clifton as an individual for his "non-judicial acts", outside the scope of his job duties and responsibilities, or as administrative acts as an administrator and not as a legal judge issuing orders in the court setting, without proper jurisdiction. He resides within the County of Washoe State of Nevada. 2840 Sagittarius Dr. Reno NV. 89509 Defendant two.

9. The Washoe County Board of County Commissioners of Washoe County in the state of Nevada, the employer of some defendants here in named, and soon to include some of the defendant's yet unnamed a-m. 1001 East 9th Street, Reno NV 89512 Defendant Three.

10. The Washoe County District Court in and for the County of Washoe in the State of Nevada and the legal authority which allows Washoe county court authority to operate. Regulated and authorized by the court system directors, Supervisors and the Washoe County Board of County Commissioners. 75 Court Street, Reno NV 89501 Defendant four.

11. Judge Frances Doherty as her position as judge, employed by the State of Nevada, represented by Attorney General Adam Laxalt, who operates a court room that is

outside the legal jurisdiction, a trespasser on the law, her non judicial acts as her court and actions are without legal authority, a violation of individuals civil rights. She fails to nor does she wish to follow, the established rules as established by the Nevada Revised Statutes and legal case precedent. Divesting her of Judicial Immunity. Her court can best be described as a "Kangaroo Court" or "Rouge Court" or a "trespasser on the law". The acts of this judge are "non-judicial Acts" as they are performed in a venue which in even the most corrupt of situations should be considered to have no semblance of a true judicial court of law, as no laws are followed nor used or cited in many of her issued orders. Judge Doherty is a member of an ongoing criminal conspiracy that meets and exceeds the necessary requirements and the predicated violations of a RICO conspiracy. She violates plaintiffs ADA (Americans with Disabilities Act, civil rights, has discriminated against plaintiffs based on gender, violated the fair debt collections act, the minimum wage laws, many NRS statutes. The Washoe County District Court and Frances Doherty are both residents in Washoe County. 1 South Sierra, Reno, NV 89501 Defendant five.

12. The chief Justice of the Washoe County District Court, Judge Scott Freeman, a State of Nevada Employee, represented by the Attorney General Adam Laxalt, whose responsibility it is to monitor evaluate, discipline and cause the courts under his control and to ensure that they operate in a fair, unbiased, legal and ethical manor all of which are administrative duties and he fails to meet his administrative role. 75 Court Street, Reno NV 89501 Defendant Six.

13. Washoe County Board of County Commissioners, who individually as persons who are personally liable for the actions of entities operating under the legal authority known as Washoe County Nevada and who operate as a regulatory and administrative

body to oversee and administer the day to day functions, and duties of Washoe County Entities. This Board of Commissioners operates as an entity and as the individuals who hold the legal authority to control and monitor all actions by all entities and departments which operate as a part of Washoe County, Nevada. This group and entity operate in the County of Washoe, State of Nevada. 1001 9th Street Reno NV 89512 Defendant Seven.

14. The City of Reno as the legal authority which controls the Reno Justice Court and provides for the basis for the Judges and personnel who work within the legal authority known as the Reno Justice Court. This group and entity operate in the City of Reno, County of Washoe and State of Nevada 1 East 1st Street Reno NV 89501, Defendant Eight.

15. Judge David Clifton who is a Judge of Reno Justice Court in the City of Reno, and State of Nevada, employed by Washoe County, and the Washoe County Board of County Commissioners. He operates as the administrator of the "eviction court" allowing him to issue evictions without proper jurisdiction in such a manner and void of due process, making these evictions, lockouts and thefts of property illegal and a destruction of the plaintiff's lives a violation of their civil rights. "Non-Judicial acts" are no longer protected by judicial immunity. The court, the employer Washoe County, and Clifton are within the City of Reno, in the State of Nevada. 1 South Sierra, Reno, NV 89501 Defendant Nine.

16. The Reno City Council in whole and as persons personally liable for the actions of The City of Reno Entity, known as the "Reno Justice Court" for lending the Name "Reno" to the court known as the Washoe County Justice Court. Who in providing the legal authority for the Justice Court and its Judges to operate as an entity under its name,

known as the, "Reno Justice Court" who resides and operates within the city of Reno, County of Washoe and State of Nevada. 1 East 1st street 89505 Defendant Ten.

17. The Washoe County Clerk, Jacqueline Bryant, an employee of Washoe County, in violation of the duties and responsibilities as clerk, by denying documents filed by plaintiffs, failing to seal documents filed as sealed, failing to process appeals and accept cash payments, harassing plaintiffs, by disallowing the filing of documents for petty reasons, allowing documents to be filed by plaintiffs in violation of the law and protections of social security rights. The employer and Bryant are within the city of Reno, and county of Washoe, at 1 So. Sierra St. Reno, NV 89501.

18. Board member Kitty Jung, The Washoe County Board of County Commissioners, in violation of her oath of office, failure to follow the NRS regarding public records request, failure to uphold the policies and procedures, the rules and regulations of the county regarding departments operating with in the county. The employer and JUNG are residents of Washoe County, at 1001 East 9th Street, Reno, NV 89512.

19. Board member Bob Lucy, The Washoe County Board of County Commissioners, in violation of his oath of office, failure to follow the NRS regarding public records request, failure to uphold the policies and procedures, the rules and regulations of the county regarding departments operating with in the county. The employer and LUCY are residents of Washoe County, at 1001 East 9th Street, Reno, NV 89512.

20. Board member Jeanne Herman, The Washoe County Board of County Commissioners, in violation of her oath of office, failure to follow the NRS regarding public records request, failure to uphold the policies and procedures, the rules and regulations of the county regarding departments operating with in the county. The

employer and HERMAN are residents of Washoe County, at 1001 East 9th Street, Reno, NV 89512.

21. Board member Vaughn Hartung, The Washoe County Board of County Commissioners, in violation of his oath of office, failure to follow the NRS regarding public records request, failure to uphold the policies and procedures, the rules and regulations of the county regarding departments operating with in the county. The employer and HARTUNG are residents of Washoe County, at 1001 East 9th Street, Reno, NV 89512.

22. Board member Marsha Berkbigler, The Washoe County Board of County Commissioners, in violation of her oath of office, failure to follow the NRS regarding public records request, failure to uphold the policies and procedures, the rules and regulations of the county regarding departments operating with in the county. The employer and BERKBIGLER are residents of Washoe County, at 1001 East 9th Street, Reno, NV 89512.

23. State of Nevada Attorney General, Adam Laxalt. Failed to protect the civil rights of its residents, failed to investigate crimes and complaints issued to the AG, failed to arrest, indict, and prosecute known felons. Instead he will represent the criminals authorizing the crimes a serious conflict of interest and violation of law. The attorney General is a resident of Nevada and resides at 100 North Carson Street, Carson City, Nevada 89701.

24. Washoe Legal Service a non-profit corporation, a domestic corporation doing business in Washoe, County Nevada. Under a registered agent James P. Conway Esq. and the executive director. Also operating under a president Austin K. Sweet Esq. with office manager Jessica Garza. They are in violation of their fiduciary duty, contractual duty,

a dereliction of duty, violation of civil rights, and joining in the RICO conspiracy to defraud the Hillygus Family Trust and imprison the Settlor Susan L. Hillygus, and have concealed facts and evidence to the court a fraud upon the court in multiple cases in State Court, under Judge France Doherty a former leader, president, and executive director and board member of WASHOE LEGAL SERVICES. The board of directors, the president, and the registered agent all reside in Washoe County at 299 South Arlington Ave. Reno, Nevada 89501.

25. Washoe Legal Services Board of Directors, a non-profit 501(c) 3 domestic Nevada Corporation doing business in Washoe County under grants from the Federal Government, State and Local Governing bodies, and private donations. The board is condoning the illegal use of grant money, participating in the RICO conspiracy to defraud families of money and property in concert with many other organizations and individuals to include Judge Frances Doherty. The board, the registered agent James P. Conway Esq. and the president Austin K. Sweet are residents of Washoe County at 299 South Arlington Ave. Reno, Nevada 89501.

26. Washoe Legal Services President Austin K. Sweet Esq. he is affiliated with the organization a Domestic Nevada Corporation for non-profit surviving on Grant money to represent the indigent of Washoe County, he is condoning the theft of grant money for ill-gotten purposes, and participating in a RICO conspiracy to defraud families of money and property by representing conflicting interest through his employer The Gunderson Law Firm. He resides at 299 South Arlington Ave. Reno, Nevada 89501.

27. Washoe Legal Services Employee David Spitzer Esq. works for the non-profit domestic corporation as a Guardian appointed by Judge Doherty department (12) of the Second Judicial District Court as an attorney to protect the rights of disabled

people, he is participating in the RICO conspiracy to defraud the Hillygus family of

untold thousands of dollars, through a breach of his fiduciary duty, legal malpractice,

dereliction of duty, breach of trust, and breach of contract. Has violated the plaintiffs

ADA right, and multiple NRS statutes. He is employed by WLS and resides at 299

South Arlington Ave. Reno, Nevada 89501.

28.  Todd L. Torvinen Esq. and Member of Washoe Legal Services and past member of

The Board of Directors of Washoe Legal Services, currently counsel for Robin R.

Renwick, and Kaycee Zusman, Deborah S. Bowers, and Kelly K. Lund, all affiliated

with Fiduciary Services of Nevada a Limited Liability Corporation and part of the

RICO conspiracy to defraud the Hillygus family Trust and the surviving settlor Susan

L. Hillygus who is currently locked-up against her pre-estate planning documents. He

is violating plaintiffs ADA rights, multiple NRS statutes. Torvinen is guilty of; legal

malpractice, extortion, perjury, suborning perjury, a fraud upon the court, civil rights

violations, deceptive trade practices, breach of trust, for knowingly and purposefully

deceiving the court, and concealing information he knew to exist in an attempt to have

the court illegally take jurisdiction of a trust, which he attempts to illegally represent

for selfish motives. He is a current resident of Washoe County and operates a business

a Domestic Professional Corporation with Nevada Business I.D. # 19961072763 with

an Entity # C-1921-1996 at 232 Court Street, Reno, Nevada 89501.

29. Todd L. Torvinen Individually, for breach of trust, breach of fiduciary duty,

dereliction of duty, deceptive trade practices, breach of contract, and multiple

violations of law, his ethical duty, and a fraud upon the court and the trust of Susan L.

Hillygus. He is violating plaintiffs ADA rights. He is a resident of Washoe County and city of Reno, and resides at 2055 Meadowview Lane, Reno, Nevada 89509.

30. Robin R. Renwick Individually, for perjury, suborning perjury, false representation, fraud in the inducement, RICO, embezzlement, breach of fiduciary duty, breach of trust, theft, obtaining money under false pretenses, possession of stolen property, kidnapping, wrongful death, ADA rights, for her participation in the fraud upon the court, false documents and the conspiring to defraud the Hillygus family Trust. She is a resident of Washoe County, Reno, Nevada residing at 11380 Parma Court, Reno, Nevada 89521.

31. Robin R. Renwick in her capacity as Guardian of Herbert E. Hillygus, for fraud, embezzlement, theft, extortion, and RICO for her involvement in the wrongful death of Herbert E. Hillygus. She is a resident of Washoe County, Reno Nevada residing at 11380 Parma Court, Reno, Nevada 89521.

32. Robin R. Renwick in her capacity as Guardian of the person of Susan L. Hillygus, as Co-guardian of the estate of Susan L. Hillygus, and co-trustee of the Hillygus Family Trust. For her involvement in the fraud upon the court, false statements, theft, embezzlement, ADA violations, and the kidnapping of settlor Susan L.  Hillygus. She has colluded, conspired, and has been involved in the criminal syndicate to defraud Susan L. Hillygus of her assets, and keep locked-up and institutionalized the individual known as Susan L. Hillygus. She resides in Reno, Nevada at 11380 Parma Court, Reno, Nevada 89521.

33. Kaycee Zusman Individually, for her theft of firearms belonging to plaintiff, being in possession of stolen property, theft generally, obtaining money under false pretenses, defrauding the Hillygus Family Trust, RICO and her involvement in the criminal syndicate to keep disabled persons locked-up and deprived of their civil rights and ADA rights. Kaycee Zusman resides in Washoe County, in Reno, Nevada at 14275 Domingo Court, Reno, Nevada 89511.

34. Kaycee Zusman in her capacity as Guardian of Susan L. Hillygus, for her theft of trust property, obtaining money under false pretenses, fraudulent accounting, perjury, suborning perjury, and fraudulent transfers, fraudulent conveyances, and general fraud against the person, RICO, ADA violations.  Kaycee Zusman is a resident of Reno and resides at 14275 Domingo Court, Reno, Nevada 89511.

35. Kaycee Zusman in her capacity as Trustee of the Hillygus Family Trust, for her theft of trust assets, fraudulent conveyances, and transfers, theft of personal property, extortion, and obtaining money and property under false pretenses, placing Susan L. Hillygus in a locked facility and Human Trafficking by selling Susan L. Hillygus as a portion of her business transaction being sold to Lund Enterprises and Kelly Lund, RICO, and ADA rights. The Zusman's are residents of Washoe County and reside in Reno at 14275 Domingo Court, Reno, Nevada 89511.

36. Kaycee Zusman as Managing Partner of Fiduciary Services of Nevada (FSON) for her theft of trust assets, extortion, obtaining money under false pretenses, possession of

stolen property, fraud, perjury, and suborning perjury, RICO and ADA violations.
Fiduciary Services of Nevada is a limited liability Corporation with Nevada Business
I.D. # NV20061115039 and Entity # E-0491582006-1 with registered agent as
Kaempfer Crowell Ltd. 510 W. 4th Street, Carson City, Nevada 89703 and a business
location of FSON as 402 S. Minnesota  Street Carson City, Nevada 89703.

37. Robert Zusman individually, for his participation in the theft of personal property from
the plaintiffs, possession of stolen property, fraud, co-conspirator in RICO, obtaining
money under false pretenses, contractual interference, aiding and abetting criminal acts
of theft, extortion, and slander to WCSO, to include his efforts to frustrate, harass, and
annoy the true trustee of the Hillygus Family Trust. Robert Zusman is a resident of
Washoe County, and resides in Reno, Nevada at 14275 Domingo Court, Reno,
Nevada, 89511.

38. Robert Zusman as Managing Partner of Fiduciary Services of Nevada (FSON) for his
participation in the theft of assets, and property from the residence of Susan L.
Hillygus and the theft of property of Plaintiff Roger and Debbie Hillygus, to include
firearms a violation of NRS and the criminal acts of possession of stolen property.
Robert Zusman of FSON  whose articles of organization document # 20060418602-79
and registered agent of Kaempfer Crowell Ltd. 510 W. 4th St. Carson City, NV 89703
and the business location of 402 S. Minnesota Carson City, NV 89703.

39. Deborah S. Bowers individually, and as employee for Fiduciary Services of Nevada
for her involvement in the fraudulent accountings, as co-conspirator in a RICO

14

conspiracy to defraud the Hillygus Family Trust, ADA violations, the theft of personal property from the residence of Susan Hillygus known as 2685 Knob Hill Dr. Reno, Nevada 89506, Deborah S. Bowers is a resident of Carson City, Nevada and employed by FSON with a known address of 402 So. Minnesota Carson City, NV 89703.

40. Kelly K. Lund aka Kelly Kathleen Wozniak, individually and as guardian and trustee of Susan L. Hillygus and the Hillygus family Trust, for her purchasing of the business known as Fiduciary Services of Nevada and purchasing of Susan L. Hillygus as a human being which is human trafficking, the RICO conspiracy, ADA violations, and the Fraud in the inducement of transmitting of wards or property of the state to another. The purchaser of a business as human beings being an asset of the sales price of the business, which is a violation of human rights. She is a resident of Washoe County, Nevada residing in Sparks, Nevada at 5359 Desert stone Dr. Sparks, NV 89436.

41. Kelly K. Lund a managing partner of Lund Enterprises LLC. A Nevada Business I.D. # NV20171787886 and Entity # E-0570082017-0 for her participation in the business enterprise and criminal syndicate of joining a RICO conspiracy to defraud Susan L. Hillygus and the Hillygus Family Trust, and ADA violations. With a registered agent in Las Vegas at 3773 Howard Hughes Parkway, suite 5005 Las Vegas, Nevada 89169-6014.

42. Daniel Lund a managing partner of Lund Enterprises LLC a Nevada business for the purchasing of Fiduciary Services of Nevada LLC and dba Lund Enterprises. Daniel

Lund is a resident of Lyon County, and resides at 1 Harbor Road, Dayton, Nevada 89403, with a registered agent in Las Vegas, Nevada 3773 Howard Hughes Pkwy., suite 5005 Las Vegas, Nevada 89169-6014.

43. JEA Senior Living dba Stone Valley Alzheimer's Center for their contractual interference, false imprisonment, intentional affliction of emotional distress, slander and libel for placing a photograph of Debbie and Roger Hillygus in the employee's break lounge, for their participation in the RICO conspiracy, ADA violations, and fraud billing practices. JEA is a foreign corporation known as Jerry Erwin Associates Incorporated, with Jerry Erwin as President and Director the foreign corporation has a Nevada Business # NV20121253086 and a foreign Corp. Entity # E0220772012-5 with a registered agent in Nevada known as National Registered Agents, Inc. of Nevada 701 S. Carson Street Suit 200, Carson City, Nevada 89701. The address for the out of State entity is 5101 NE 82nd Ave. Suit 200 Vancouver, WA 98662. The physical location of the dba is Stone Valley Alzheimer's Special Care Center 6155 Stone Valley Drive, Reno, Nevada 89523.

44. Debra A. W. Fredericks PhD. for her involvement in producing a slanderous and libelous document, by her participation in the RICO conspiracy, Fraud in the inducement of injury upon a disabled individual, exploitation, undue influence, willful and intentional affliction of emotional distress, contractual interference. Debra Fredericks is a resident of Washoe County, and Resides in Reno at 5705 W. Brookdale Dr. Reno, Nevada 89523.

45. Integrated Behavioral Healthcare owned and operated as an unincorporated business entity in the state of Nevada for her producing a slanderous and libelous document which had no basis in fact and was produced for the conspirators who retained her services placing her as a participant in the RICO conspiracy as a co-conspirator, to defraud the Hillygus family trust. The business is located in Reno, with an address known as 890 Mill Street, Reno, Nevada 89502.

46. The Washoe County Sheriff's Office and its employees a department of Washoe County and regulated by the Washoe County Board of County Commissioners, for their violations of NRS statutes, civil rights, and the policies and procedures, and rules and regulation also known as SOP standard operating procedures, also for an assault with a deadly weapon, attempted murder, breaking and entering, illegal search and seizure, trespassing, harassing, threatening actions, theft of firearms, failure to investigate theft, participation in the theft of personal property, failure to provide public records upon request a violation of NRS 239, slander and libel, contractual interference, elder abuse, false arrest, false imprisonment, and conspiring with co-conspirators in a RICO, false eviction. These crimes were accomplished as a result of improper training, lack of proper supervision, chain of command violations, and retaliation against the Hillygus family for internal affairs investigations filed by plaintiffs. The department is located at 911 Parr Blvd., Reno, Nevada 89506, and the county offices of 1001 East 9th Street, Reno, Nevada 89501.

47. Washoe County Sheriff Chuck Allan, in his capacity as highest commanding officer in the Sheriff Department for his lack of follow through, to see that plaintiffs were provided the public records requested a violation of NRS 239, failure to follow

17

through with multiple internal affairs complaints requested by the FBI and ATF, failure to investigate criminal activity reported by plaintiffs, failure to properly oversee the activities of the departments SWAT Team, and the RAVEN Helicopter which was utilized to follow and harass the plaintiff's and his failure to properly train deputies in the proper law, procedure, and policies of the department, and for his incompetence in the administration of the Department, which he is to serve the public as an elected position and paid by the taxpayers of Washoe County and regulated by the Board of County Commissioners.

48. Washoe County Captain Jerry Baldridge in his capacity as highest commander on scene on September 7, 2016 in which he participated in the theft of personal property belonging to plaintiff's, failed to properly inventory, secure, and run NCIC reports on firearms seized while on scene, a violation of SOP and the laws and statutes regarding actions taken by commanding officers while on scene. He conspired with the individuals identified above, took false reports, failed to investigate crimes a violation of NRS, failed to arrest individuals for possession of stolen property, a dereliction of duty, breach of duty, elder abuse, and violation of civil rights of breaking and entering, illegal search and seizure. He is a resident of Washoe County, and resides at 14390 Riata Cir., Reno, Nevada 89521.

49. Washoe County Lieutenant Greg J. Herrera in his capacity as the highest commanding officer on scene during the months of August, and September of 2016. In which he failed to properly document the illegal actions taken by subordinates and trainees who violated many policies and procedures and SOP's required by officers in charge while on scene, he participated in civil rights violations, illegal search and seizure, theft of firearms, and failed to properly inventory property taken or handled while on scene,

failed to properly photograph items taken, failed to investigate crimes reported, and

failed to recover stolen property while in the possession of others. Herrera is a resident

of Washoe County, and resides at 8140 Willow Ranch Trail, Reno, Nevada 89523.

50. Washoe County Deputy John Macken in his capacity as responding Deputy for the

WCSO in the fall of 2013 and 2014 and the counties failure to respond to a public

complaint filed as a result of his behavior filed in July of 2014. Oppression under color

of authority, abuse of power, dereliction of duty, elder abuse, elder endangerment, for

his actions to evict the plaintiffs from the residence known as 2685 Knob Hill Dr., he

without court orders, threatened the plaintiffs with false arrest, false imprisonment,

and assault if plaintiffs failed to follow his direction to vacate the residence while

caring for a disabled owner and resident. John Macken is an undercover deputy with

the WCSO and is/was employed in 2014 and is a resident of Washoe County, at 911

Parr Blvd., Reno, NV 89506, and the County offices of 1001 East 9th Street, Reno, NV

89501.

51. Ryan J. Earl Esq. in his capacity as the guardian ad litem for both plaintiffs Herbert E.

Hillygus, and Susan L. Hillygus. Earl fail to protect the rights of his clients, resulting

in legal malpractice, breach of trust, breach of contract, use of deceptive trade

practices, dereliction of duty, fraud upon the court, failure to perform his duties as

assigned, failed to provide pertinent information and concealed information from the

court, his client and the plaintiffs, he also colluded and conspired with the co-

conspirators in extortion, theft, and other violations associated with a RICO and fraud

in the inducement, and ADA violations. Earl is a resident of Washoe County and

resides in Reno, Nevada at 6623 Stone Valley Drive, Reno, NV 89523. He also

maintains an office located in Reno, Known as; 548 West Plumb Lane #B, Reno, NV 89509.

52. Gordon Muir Esq. in his capacity as counsel for plaintiff Susan L. Hillygus. Muir failed to protect the contractual trust rights of his client, resulting in legal malpractice, deceptive trade practices, dereliction of duty, fraud, breach of contract, breach of trust, breach of fiduciary duty against his client and her trust including the beneficiaries, and heirs, to include the plaintiffs. Muir was one of many bar members who violated the rules and laws and ethical duties in protecting the vulnerable, and their trusts, through fraud, and his involvement in the concealment upon the court of documents, and facts, resulting in fraud, theft, extortion, and conspiring with esquires in a RICO conspiracy and ADA violations. Muir is the president, and registered agent of Hawkins Folsom & Muir, he is a resident of Washoe County, and resides at 4272 Whistle wood court, Reno, NV 89509. He also practices law at 679 Sierra Rose Drive, Reno, NV 89511.

53. Hawkins Folsom & Muir a professional corporation located in Washoe County. Failed to protect the contractual trust rights of their client a plaintiff, through fraud upon the court, RICO, and ADA rights, and failed through legal malpractice, deceptive trade practices, and breach of contract, duty, and fiduciary duty for wire fraud. The corporation is located in Washoe, County and licensed with the State and operates in Reno under the President and registered agent Gordon Muir of 4272 Whistle Wood Court, Reno, NV 89509. Also, at 679 Sierra Rose Drive, Reno, NV 89511.

54. Don Leslie Ross Esq. in his capacity as counsel for plaintiffs. Ross failed to properly represent or follow the rules of conduct, laws and statutes, contracts, and failed his clients as a result of legal malpractice. Ross breached his fiduciary duty, contractual duty, and deceptive trade practices and dereliction of duty. Ross also conspired with

bar members in an association to defraud the Hillygus family trust, through conspiring

with others to withhold, documents, conceal documents, and perpetrated a fraud upon

the court and fulfilled the elements of a RICO conspiracy, and ADA violations. Ross

is a resident of Washoe County, and resides at 1484 Serendipity Court, Sparks, NV

89436. He is also a member of the firm of Woodburn & Wedge, located in Washoe,

County at 6100 Neil Road, suite 500 Reno, NV 89511.

55. Michael W. Keane Esq. in his capacity as counsel for plaintiffs. Keane committed a

fraud upon the court by failing to disclose facts and information to the court, failed to

follow the directions of his clients, signed documents in protest of his client, conspired

with the other bar members in a RICO conspiracy, and ADA violations. His actions

resulted in legal malpractice, dereliction of duty, deceptive trade practices, breach of

duty, breach of fiduciary duty, breach of contract among others. His actions cause

severe harm to his clients, as trustee, beneficiary, and as the son of the settlors.

Keane's actions have resulted in injury to his clients through, stress, depression,

anxiety, and sever emotional distress. Keane is a resident of Washoe County, and

resides in Reno, at 975 Vine Street, Reno, NV 89503. He is also a partner of

Woodburn and Wedge doing business in Reno at 6100 Neil Road suit 500, Reno, NV

89511.

56. Woodburn & Wedge a Chartered professional corporation. The partners and associates

of the corporation have violated the rights of the plaintiffs and have conspired with

other bar members in an association, group, or syndicate to commit fraud against the

plaintiffs and the court in a RICO conspiracy to defraud the Hillygus Family Trust.

Some of the esquires who performed duties for the plaintiffs include; Don Ross,

Michael Keane, Sharon Januzzi, Jason Morris, Lauren Birkich, and others yet

identified. The staff have also yet to be identified. These associates, and partners committed legal malpractice, breach of duty, breach of contract, and used deceptive trade practices, for wire fraud, mail fraud, theft, and perjury and fraud in the inducement. The registered agent for the corporation is John Murtha Esq. who acts as the president and director of the Nevada business entity I.D. # NV19681002592 and an Entity # C2596-1968. The location of the registered agent is in Washoe County and in Reno, at 6100 Neil Road suit 500, Reno, NV 89511.

57. Stephen Craig Moss Esq. in his capacity as counsel for plaintiff's to include; Susan L. Hillygus, Roger Hillygus, and Herbert E. Hillygus committed legal malpractice, breach of fiduciary duty, breach of contract, breach of trust, and has conspired with a group of bar members to defraud the plaintiffs, his clients and the family trust in a RICO conspiracy. His action have cause irreparable harm to the family and plaintiffs, by stress, anxiety, depression, and severe emotional distress. This is the basis for the following complaint as Moss was the initiator of the improper action taken in the state court. Moss committed a fraud upon the court by concealing documents and facts to the court, theft of money from an incompetent, elder abuse, exploitation, wire fraud, mail fraud, and perjury and witness tampering. By his actions he has cost the family and trust untold thousands of dollars. Moss is a resident of Washoe County, and resides in Sparks, at 1980 Mania Court, Sparks, NV 89434. He is also employed in Reno, and works for 470 East Plumb Lane suit 310, Reno, NV 89502.

58. Michael B. Springer Esq. in his capacity as counsel for plaintiff Herbert E. Hillygus. Springer violated the rights of his client, resulting in legal malpractice. Springer received wired funds resulting in wire fraud, and mail fraud. Springer is a resident of

Washoe County and resides at 100 Shelter Court, Reno, NV 89511. Springer is also

employed at 190 W. Huffaker Lane suit 401, Reno, NV 89511.

59. Silver State Law LLC is a domestic limited liability doing business in the State of

Nevada, through the registered agent Jeffery S. Spencer at 190 W. Huffaker Lane,

suite 401, Reno, Nevada 89511. This is the corporation created by Michael B. Springer

and is the business which is operated and used by Michael B. Springer who has

committed legal malpractice resulting in injury to the plaintiffs. Springer is a resident

of Washoe County and resides at 100 Shelter Court, Reno, NV 89511.

60. The Barber Law Group Inc. in their capacity as legal representative of the plaintiffs.

The group owned and operated by Joel Barber who established the Nevada Business as

a professional corporation for his legal practice. Joel Barber and his associates were

retained by the Hillygus Family Trust and trustee in November of 2015 during an

initial consult which the trustee wrote a check to the law group for $150.00 and a

retainer was signed to represent the trust in appealing the payment of attorney fees

owed by the trust. Also an additional $2500.00 dollars was provided to the firm to

represent the trustee in appealing the order. The firm failed to represent the trustee,

failed to file documents on behalf of the trustee, failed to appear in court, and failed

provide any legal support for the client. Next, the firm failed to disclose the fact that

they had a conflict of interest in the case as they had previously represented a client

associated with the case. This fact is proved because Todd Torvinen, (the opposition

counsel) filed in case GR14-00158 the guardianship of Herbert E. Hillygus an exhibit

which was a medical report by Debra Fredericks with the Barber group fax number at

the top of the documents filed in court by Torvinen, proving the Barber Law group

was in violation of a conflict of interest, and had been communicating with Todd

Torvinen, and other parties associated with the case. Again in December of 2015 the barber group after communicating with Todd Torvinen and Steve Moss had plaintiff sign a new retainer absent any facts, proof, or evidence against their client claiming to represent him for a criminal matter, when the client never had done any criminal act, he had not disclosed any criminal act. The only way the barber group would have conceived of such a notion is baffling and could have only come as a result of communicating with Torvinen. The Barber Law Group is in violation of clients rights, and had committed legal malpractice against the plaintiffs. The actions of counsel is a result of breach of trust, breach of contract, breach of fiduciary duty, dereliction of duty, and a fraud. The associates and employees of the Barber Law Group have harmed the plaintiffs, and have conspired with other bar member or group to deceive the court of fact and truth in a RICO conspiracy. The fraud committed upon the plaintiffs have cause irreparable harm, by financial loss, stress, anxiety, and depression. The Barber Law Groups registered agent, and president and director is Joel Bennett Barber in Washoe County, residing at 4255 Plateau Road, Reno, NV 89519. The physical location of the business is also in Washoe County, at 557 Washington Street, Reno, NV 89503.

61. Joel Bennett Barber Esq. in his capacity as President and Registered agent of the Barber Law Group Inc. responsible for any associate or subordinate under his supervision. Associate Ryan J. McElhinney Esq., and Elizabeth Bittner Esq. committed legal malpractice against the plaintiffs. The actions of the esquire's results in fraud upon the court for filing false documents the bar members knowingly knew were false, and made false representations to the court such as perjured statements, and conspired with other member of an association and group to defraud the trust and the

plaintiffs of money and property in a RICO conspiracy. The registered agent and supervisor counsel resides in Washoe County at 4255 Plateau Road, Reno Nevada, 89519. Also resides at 557 Washington Street, Reno, NV 89503.

62. Ryan J. McElhinney Esq. in his capacity as counsel for plaintiff and an associate of Joel Barber and the Barber Law Group as he is a subordinate. McElhinney committed legal malpractice, by breach of contract, breach of trust, breach of fiduciary duty, and deceptive trade practices. He failed to properly represent his client failed to disclose a conflict of interest, communicated with opposing counsel, committed a fraud upon the court, perjured himself, and conspired with others in a group known as a RICO conspiracy to defraud the Hillygus Family Trust, and others. McElhinney is a resident of Washoe County and is employed at 557 Washington Street, Reno, NV 89503.

63. The Gunderson Law Group a professional corporation in their capacity as counsel for plaintiffs. Mark H. Gunderson Esq. as president and registered agent for the group as he is the supervisor of any associate under his tutelage or subordinate counsel under the rules of the bar. The Gunderson Law Group has committed legal malpractice against the plaintiffs. They have breached their contract, breached the trust, and breached their fiduciary duty, by deceptive trade practices, and dereliction of duty. The actions of the group include conflict of interest which was not disclosed by employees, the failure to follow the directions of their client, the conspiring with other members of a group for the detriment of the plaintiffs. This action as a co-conspirator is the predicated factors for a RICO conspiracy by members of a group for profit against a trust or a disabled individual. The professional corporation has a president and registered agent known as Mark H. Gunderson located in Washoe County, and

residing at 3895 Warren Way, Reno, NV 89509. He is also a resident of Washoe

County residing in Reno at 300 Yellow Pone Road, Reno, NV 89511.

64. John R. Funk Esq. in his capacity as counsel for plaintiffs. Funk committed legal

malpractice for his representation of the plaintiffs. He committed breach of trust,

breach of contract, breach of fiduciary duty in his representation of his clients. He

failed to secure proper waivers, failed to disclose a conflict of interest with Washoe

Legal Services, this among other frauds was undertaken by Funk. He conspired with

members of a group to defraud his clients, through communicating with a criminal

syndicate in a RICO conspiracy. These actions have caused harm to the plaintiffs and

have resulted in stress, anxiety, depression, and irreparable damage upon the finances,

and emotional distress of the clients. Funk is a resident of Washoe, County and resides

in Reno at, 4378 Banchory Court, Reno, NV 89519. He is also an employee and

associate of the Gunderson Law Group located in Washoe County at 3895 Warren

Way, Reno, NV 89509.

65. Unnamed defendants A-M as entities and individuals become known and their

involvement is determined along with their personal liability is established they shall

become named defendants, Defendant A-M.

66. The above entitled Defendants Known as; Frances Doherty et. al..

### *FIRST AMMENDED COMPLAINT CASE SUMMARY*

1.  The above named plaintiffs allege and believe that the defendants have entered into

criminal actions that have caused the Plaintiffs harm separately and as a group.

2.  The defendants lacked jurisdiction to act and take control of the trust and establish a

guardianship over the settlors and thus controlled their trust.

3. The defendants who as individuals, and as personal employees of agencies or government entities, allowed the original complaint filed by Steve Moss Esq., who committed a fraud upon the court with his filling and willfully exploited a disabled person, violated the rules of civil procedure in his filing as the person who he used to initiate said action was verifiably incompetent and he was in violation of the Nevada bars rules of ethics as he was representing one party against another party that he had a previous business relationship as he had represented both Herbert and Susan Hillygus in the drafting of the trust and represented Roger Hillygus as the successor trustee prior to his filing to have him removed. .

4. Todd Torvinen Esq. knew of Moss's Fraud upon the court, helped plan and execute said fraud, and with the full knowledge of his client, Robin Renwick, joined in said fraud by joining said litigating. The mental Health of Herbert and Susan Hillygus was known to all involved and all knew they were mentally incompetent to make decisions.

5. These three conspirators were and are the driving force that has destroyed everything that THE SETTLORS HAD AQUIRED IN THEIR WHOLE LIVES OF WORKING AND SACRIFICING FOR THEIR FUTURE AND THAT OF THEIR FUTURE GENERATIONS.

6. Moss Esq., who knowingly and with malice-a-for-thought used a man, Herbert Eugene Hillygus, to start litigation that he and others could use to rob the Hillygus Family Trust committed a fraud upon the court.

7. Moss Esq. knew Herbert lacked the reasoning capabilities to be able to understand and make the decisions that are legally required by a person who enters into a contract and that he could not proceed with litigation, as he lacked the ability to direct the conduct of the lawyer who was supposedly representing his interests.

8. Moss was the original drafter of The Hillygus Family Trust and represented both of the Settlors. Through litigation he filed on January 14, 2014 he now represented only Herbert against Susan a joint owner and beneficiary to the trust. Clearly a violation of the standards of the legal profession and numerous laws and statutes.

9. This knowing and willful act of Fraud upon the court, became aware to the court. This was during the original and first hearing in the Washoe County District Court in front of the Honorable Robin Wright (probate commissioner). She was the one who determined that Herbert and Susan were to be medically evaluated for competence, prior to proceeding any further. The hearing was vacated. The PARTIES STIPULATED THAT IF THE MEDICAL PROFESSIONALS DETERMINED THAT SUSAN AND HERBERT WERE INCOMPETENT TO MOVE FORWARD THEN MOSS WAS TO FILE A SUPLIMENTAL TO HIS PETTITION STATING SUCH. All of this was on the record in the probate court and in front of Robin Wright probate commissioner.

10. Moss failed to file a supplemental to his original petition, instead he just set the case for a hearing in front of the probate commissioner again, Judge Robin Wright.

11. The defendants have violated the first amendment rights of the plaintiffs, by baring their free association amongst themselves, the actions of the defendants have curtailed, discouraged, limited and stopped all contact, at times, between Plaintiffs  as the defendants have interjected themselves into the personal and business relationship of the Hillygus family members and their associated trust contract.

12. This violation of rights of the plaintiffs has been accomplished through the false establishment of a legal action, which was one of the basis for a fraud upon the court.

This predicate act had no basis in fact yet was allowed to go forward even though the court knew of and condoned the perjury and fraud upon the court. .

13. The Second Judicial District Court and many of its Judges have allowed and committed multiple illegal acts relating to jurisdiction. By illegally forcing jurisdiction upon the plaintiffs they have perpetrated a tortuous harm to the plaintiffs.

14. The court has enforced illegal acts and actions they claim are acts of a legitimate court, yet the court ignores the law and therefore, commits acts in a tortuous nature.

15. The actions of the defendants are a violation of the rights of the plaintiffs to be free to speak. By baring the plaintiffs the constitutional right to freely express their opinions. For the actions of the defendants through their involvement in the action are criminal in nature. The actions of the court suppress dissent. This is oppression under the color of authority. For those plaintiffs that oppose the court and its illegal acts to freely speak.

16. The defendants have committed fraud against the plaintiffs. All actions would make a reasonable man feel vexed, harassed and set upon. By a system that is intent on the theft from the Hillygus' Trust. The court it appears has established, and instituted a program that allows for and condones the destruction of families and the theft of their assets. These actions have cause severe emotional and financial harm to the plaintiffs.

17. The court and its officers, along with the other defendants, have deprived the plaintiffs of their due process rights, rights of freedom of movement, taken property without due process of law and violated numerous of the plaintiff's constitutional rights, all of which have caused severe financial and emotional harm to the Plaintiffs.

18. The Washoe County Sheriffs, the court officers, and the lawyers appointed by Judge Doherty are all specifically instituted as an end to the means of the furtherance of their

criminal conspiracy. The goal of which is the destruction of the Hillygus Family Trust and its assets.

19. This conspiracy is conducted purely to work towards the conspirator's self-enrichment at the expense of the Hillygus family, The Family Trust, and many others who are not yet named plaintiffs in this case.

20. The Court Officers, have engaged in criminal actions including; aiding and abetting criminal acts of theft, extortion, false imprisonment, threat of imprisonment, against those that attempt to use the legal process to fight the conspirators actions. As punishment for challenging or speaking out against the crimes, the Judge has imposed involuntary servitude, extorted money, intentionally slander, and defamed the character of the Plaintiffs. This has all been through willful an intentional acts, causing financial and physical harm to the Plaintiffs.

21. The Defendants through their actions have engaged in a pattern of actions that caused the Plaintiffs financial harm, physical harm, removed the plaintiffs from their family home, removed items of great financial benefit to the Plaintiffs. Interfered in contractual relationships of the Plaintiffs and caused the Plaintiff to live in an atmosphere of fear and great anxiety.

22. The cumulative actions of the defendants have caused mental distress and severely harmed the plaintiffs mentally, physically and financially.

23. The court, its officers, its employees and its sycophants, known herein as the Defendants; have deprived the Plaintiffs of their constitutional rights as guaranteed in the First Amendment rights, Second Amendment rights, Fourth Amendment rights, Fifth Amendment rights, Seventh Amendment rights, Eighth Amendment rights, Thirteenth Amendment rights, and Fourteenth Amendment rights to the constitution of the United

States  which are causes for action in this complaint and have caused the plaintiffs emotional and financial harm.

24. The Defendants cumulatively have acted to deny the plaintiffs equal protection under the law and have committed the acts of oppression under the color of authority and have caused the plaintiffs emotional and financial harm.

25. The Courts and its officers, to include Judge Frances Doherty in committing the acts that were in furtherance of a criminal conspiracy and not part of the designated judicial acts as specified under Nevada Revised Statutes and have caused the plaintiffs emotional and financial harm..

26. The Washoe county court system has failed to follow the rules as set forth in the Constitution, the Nevada Revised Statutes and the Rules of Civil Procedure causing severe emotional and financial harm as the Plaintiffs lack the ability to ascertain the requirements to litigate and be able to competently institute legal action and ascertain an outcome as the rules are not followed by the court.

27. The court has failed to acknowledge the motions for hearings with regards to jurisdiction and has acted without jurisdiction over the plaintiffs individually and as a group causing severe emotional and financial harm.

28. The court has not met the jurisdictional requirements of both personal and subject matter jurisdiction and thus its actions are non-judicial in nature.

29. The barrage of constitutional violations and breach of the rules of civil procedure are violations that have become a pattern of action that would leave a reasonable man to be believe in the conspiratorial conduct of the defendants to vex and harass the Plaintiff and deny them equal protection under the law, causing severe emotional and financial harm...

30. The courts administration has been failing to administer, and regulate the illegal actions of its officers.   The supervisors become complacent in their assigned administrative duties and fail to conduct audits of the personnel under their control, this is an intentional act of negligence on their part.

31. The family court is a court of limited jurisdiction. The court is engaging in actions outside of the judicially assigned duties and responsibilities outlined under statute and manuals. Therefore, their actions are in furtherance of a criminal conspiracy.

32. The acts of the family court are non-judicial acts, as the acts are done without jurisdiction. Lack of jurisdiction denies the court officers the ability to operate as arbitrators of legal disputes. To operate absent jurisdiction is acting purely to gain self-enrichment, both monetarily and in social terms, through status gained. Insuring that the attorneys have employment and that the attorneys receive financial compensation at the expense of the person that has been rendered into an abusive, and illegal guardianship.

33. Judge Frances Doherty, has through her non-judicial actions, caused the Plaintiffs sever financial harm and she has used her position of authority to personally enrich herself and has used her position to enrich those persons who practice law in her court room, thus causing severe emotional and financial harm to the plaintiffs.

34. Judge Doherty has used her position to secure her status in the legal community and praises from those who practice law in her court, thus securing personal benefit from her actions.

35. Judge Doherty through her action has caused Roger Hillygus, and the other Plaintiffs, to lose the full benefit of his father's company, as she secluded and isolated him from his family and placed him in a guardianship of a person, Robin Renwick, whose sole intent was to shorten his life and enrich herself.

36. Robin Renwick, the estranged sibling of Plaintiff Roger Hillygus, after the court illegally appointed her to be the guardian of Herbert Hillygus, allowed and condoned an abusive pattern of neglect. Plaintiff objected to the neglect in open court as did his father Herbert to his GAL and attorney Spitzer. Neither the Judge, the GAL, nor the attorney rallied to the aid of Herbert. The neglect of the guardian, his attorney, the GAL, and the judge resulted in Herbert's premature death.

37. Through the actions of Robin Renwick, she and others caused the untimely death of her father, and Judge Doherty, who appointed her and allowed her to predicatively act in a manner that would cause the death of his father, allowed and condoned her actions when she became aware of them.

38. Robin Renwick had herself named as guardian of the individual known as Herbert Eugene Hillygus, specifically with the intent of committing the act of theft from the individual, but when it became apparent that Robin would not have access to the funds in the trust, when it became apparent that she received no financial benefit from being Herbert's guardian, she neglected him and abused him causing his untimely death.

39. The State of Nevada employees of the Second Judicial District Court and the employees of Washoe County in the Reno Justice Court have colluded and conspired in a pattern of action claiming to have judicial jurisdiction, yet devoid of jurisdiction, and involving criminal fraud against the Plaintiffs causing severe emotional and financial harm.

40. Judge Doherty and defendant have through their criminal acts against the Plaintiffs, depleted the trust for their benefit and have only left the Hillygus family residence for them to liquidate in order for them to divide the proceeds amongst the conspirators. This action has caused the plaintiffs emotional and financial harm.

41. By their sale of the Hillygus' family home of 45 years, they will have completely destroyed all remaining assets of the Hillygus family Trust which was once valued at close to ONE MILLION DOLLARS and leaving Susan Hillygus destitute and without any assets.

42. This home was built for their family, by a family member, and was built as a home that would last them, and the next generation into the future, this home was a place of peace and owned by the Family Trust free and clear. Something the settlors wanted.

43. The plan of the Defendants, to include the employees of the Second Judicial District Court of Washoe County and the City of Reno Justice court was to sell the home of Susan Hillygus right out from underneath her. By locking her up in an institution an ADA violation, they could disseminate the capital amongst the co-conspirators. The effect would cause severe emotional and financial harm to the Plaintiffs...

44. They have evicted the family from their family home and have attempted to sell this home in direct opposition to the wishes of the settlors as contracted to in their trust documents. Again causing severe emotional and financial harm to the Plaintiffs...

45. The Washoe county District Court employees and the employees of the city of Reno Justice Court have tried to circumvent the contractual relationship between Debbie Hillygus and the Hillygus family Trust by instituting a transfer of ownership in direct opposition to the legal requirements for a transfer of ownership of Real property. This is based upon the laws in the state of Nevada.

46. Debbie Hillygus accepted a promissory notes as payment towards thousands of hours of labor as an employee of the trust. The court again lacking jurisdiction has tried to circumvent the federal labor laws, NRS laws, and the deed of trust and the promissory note. Through these illegal acts, the court has caused emotional and financial harm.

47. Debbie Hillygus provided care requested of her by the settlors. She accepted the note as a method to ensure her eventual payment for her labor services without the burden of her immediate payment. As the settlors had previously taken a large financial loss at the hands of Robin Renwick who ran a confidence game on her parents causing a financial loss in excess of hundreds of thousands of dollars.

48. This embezzlement caused the family to lose hundreds of thousands of trust dollars, trust money that was set aside for their retirement at the end of their life. The investments were for the care of the settlors and now Plaintiffs. Her actions were self-serving and instituted purely by her wish for self-enrichment.

49. Debbie Hillygus only registered the deeds of trust and the note against the family home when it became very apparent that the new illegally appointed "successor trustee's" had no intent of paying her or her husband for any of the services they had expended on behalf of the trust.  By denying the value of time, services, and labor owed as wages owed as an employee, is a federal violation.

50. The Family court mentioned above as defendants have now both stepped in without jurisdiction, claiming in documents that the debt owed to Debbie Hillygus has been paid in full, AND HAS FALSELY RECONVEYED said note and deed of trust through an illegal order. Thus harming plaintiff both financially and mentally.

51. The court and the defendant/ co-conspirators have tried to make the property available for quick private discounted sale; this for the moment has been stopped as the actions of the judge as her actions are being reviewed by the Supreme Court of the State of Nevada.

52. The Plaintiffs have suffered irreparable harm at the hands of the defendants. This harm is harm to the Hillygus family, but also harm to those other persons that are unable to

even understand that their life long earnings have been stolen by a court lacking jurisdiction, involved in a RICO conspiracy, involved in criminal fraud and the courts sycophants that claims the actions of the court to be lawful.

53. The defendants are involved in an ongoing criminal conspiracy, whose sole intent is self-enrichment at the expense of those that cannot defend themselves causing severe emotional and financial harm to the Plaintiffs.

54. This case is a case of a family seeking justice for ADA violations and not a family seeking money for monies sake.

55. The damage done is so egregious that money alone will not heal the damage done. For the Defendants actions have caused severe emotional and financial harm to the Plaintiffs.

56. The lost time with a parent, as they slip from this earth, is irreplaceable. Causing severe emotional and financial harm through their actions.

57. The Defendants have stolen something so precious that the plaintiffs pray that the Defendants are deprived of that which they most dearly love, MONEY. They should be stopped from continuing to financially harm the plaintiffs.

58. What they have done is wrong. They must pay for this wrong upon the plaintiffs. This court should put a stop to defendant's ongoing criminal conspiracy.

## I. THE UNDERLYING LITIGATION

59. The first plaintiff herein, Roger Hillygus, was designated by his parents, the original successor trustees in the Hillygus Family Trust, as their successor trustee as clearly articulated in the Hillygus Family Trusts Documents, and further, he was designated as their power of attorney in both healthcare related matters and in financial matters and

they signed such documents when they were both still of clear mind and competent to handle their own affairs.

60. He now continues as a beneficiary, Pro Se plaintiff, litigator, respondent, Movant, and interested party to stand up for his parents' rights, contracts, trust and activated powers of attorney's as he is afforded those rights under the SCR 44 to appear on his own behalf in support of his parents' wishes.

61. The defendants through their separate and joint acts have devastated the once substantial resources of the Hillygus Family Trust, (close to One Million Dollars) through a conspiracy of and all of its members causing severe emotional and financial harm.

62. The Defendants have waged a scorched earth campaign in which they have used the unlimited resources of the Second Judicial District Court, the resources of the Washoe County residents as taxpayers, and the County commissioners as supervisors of the Washoe County government. Who once elected by the citizens of Washoe County, swore an oath to be the overseer of the Reno Justice Court, the WCSO, the employees hired by the county to fulfill their obligation to the taxpayers?

63. The Defendants have gone so far as to forcibly kidnap and lock Susan Hillygus in a locked facility, barring her from freedom of movement, freedom of association and the freedom of choice as to who and where they will live and every human right associated with being a person in the United States causing severe emotional and financial harm.

64. The Defendants have attacked the Plaintiffs in court. They have denied plaintiffs the rights to property, liberty and the pursuit of life free of government involvement.

65. Susan Hillygus and Herbert Hillygus, in designing their Trust document, clearly stated who would care for them in the event they become unable to care for themselves. Their wish was for their son Roger Hillygus to provide end of life care. They never wished for

a stranger, a court, a guardian, or multiple attorneys to invade the sanctity of the family. They believed one should honor thy parents, and not bear false witness.

66. This statement is clear and unmistakable, yet it was ignored by both the Reno justice court and the Second Judicial District Court.

67. The Defendants, all and in part, have unethically claimed through slanderous statements, a fraud upon the court, and through their self-serving motives that Roger Hillygus violated his duties as a trustee of the trust. This simply is NOT true. Thus causing severe emotional and financial harm.

68. Roger Hillygus supposed crime was that he failed to allow the court to hand every liquid asset, which could be quickly converted to cash, over to the attorneys that deceived the court.

69. The Defendants provided the court with false documents and concealed other pertinent records so as to continue litigation. Thus causing severe emotional and financial harm to the plaintiffs.

70. The Defendants had one goal in mind. Keep all parties under the false jurisdiction of the court. So, that the trust would ultimately have to surrender all the trust assets over to the initiators of the unnecessary court action, THE ATTORNEYS. This illegal action has caused emotional and financial harm to the plaintiffs.

71. The defendants, through fraud, and contrived family dysfunction and being members of an organization or associated group, deceive the judges in an attempt to control, administer, and deny the family of their rights.

72. The Defendants want a straw man, or puppet sitting in the position of successor trustee. Someone who they can order around and control. This caused severe emotional and financial harm to the Plaintiffs.

73. Roger challenged the orders of the court. As he believes a court which acts without proper jurisdiction acts illegally, and thus its orders are considered void. Roger was honoring thy parents. He attempted to challenge those who would bear false witness, but was denied a trial.

74. Mr. Roger Hillygus was ordered under threat of incarceration to abide by the judge's orders to pay five attorneys the trust investments set aside for his parents care. The judge acting as debt collector a violation of federal law, the fair debt collection act and bankruptcy law, removed Mr. Roger Hillygus as trustee for positioning his parents to enter the protections of federal bankruptcy.

75. He was forced to immediately surrender the trust to the judge. Who immediately appointed a shill, Robin Renwick, who promptly wired funds a federal violation, and emptied the FDIC retirement accounts of the trust to the attorneys who initiated the frivolous action? This caused severe emotional and financial harm to the plaintiffs.

76. The Defendants then turned their sights to the last asset available for the judge to liquidate, the family home of 45 years.

77. The Defendants intend to sell the House at a discount and divide up the proceeds amongst themselves as they have done many times before.

78. The sale of the family home is in direct opposition to the wishes of the settlor and the wishes stated in the Trust Documents.

79. This sale of the family home is a means of further transferring assets to all those involved in the criminal conspiracy herein known as the Defendants.

80. The criminal conspirators shield their actions by claiming them to be judicial acts, and legitimate acts of the judiciary, in order to be protected. However, the fraudulent acts are done by a judge who is in the top fifteen of the highest paid officials in the state of

Nevada. She is attempting at being appointed to the Supreme Court of Nevada. For once on the bench she can continue to leverage her power to keep guardianships a viable method of defrauding families of wealth.

81. The acts are not "judicial in nature" but are a furtherance of a criminal conspiracy which has severe emotional and financial harm to the plaintiffs.

82. This gavel wielding corrupt judge, has been allowed by her employers to act as the ruler of a criminal conspiracy. Her orders are no different than the orders issued by judges on the payroll for the mafia in the past to accomplish their goals. The court now instead of using a select few of corrupt sergeants or deputies bought and paid for by the mob, uses the naiveté of the whole Washoe County Sheriff's Department regarding guardianship as a good thing, and the only way they will violate people's rights. For they can claim, "I was just following orders". Remember history and following orders not so long ago. It ended up in criminal convictions for war crimes against humanity.

83. The reason the Federal RICO statutes were written, was to make those in a criminal conspiracy liable for all of the acts of the conspirators. This is to include judges and public officials that felt they were untouchable because of their position and political power.

84. The judge's criminal conspiracy has met the requirement of committing the predicate acts necessary to be deemed to be a RICO organized crime syndicate.

85. This syndicate works in unison to accomplish their main goal of self-enrichment of the co-conspirators at the expense of those that have been deemed to be incompetent.

86. They usually do this to those with money and no family support or by demonizing those family members who have been helping the disabled, to the point that they no longer can

physically or mentally, or emotionally fight for the rights of the disabled family member.

*87.* Roger Hillygus has failed to shrink from the threats and danger placed on him by the defendants and has suffered severe emotional and financial harm...

*88.* The conspirators as a group have conducted illegal actions and commenced frivolous court proceedings that should subject them to ridicule, distain and should ostracize them from society. However, instead they are held in high esteem, because their victims lack the ability to defend themselves, as most lack the mental faculties to even know that they have been exploited.

*89.* This criminal conspiracy, when challenged, attacks in unison and demonizes anyone who tries to help the victim or stands up to their "legal order", because it would interfere with their goals of leaving that person destitute.

*90.* The courts, and those who dictate the process, have figured out isolating the person from their family is one of the first things that must be done, when you want to empty a trust or empty the accounts of their victims.

*91.* They have placed Susan Hillygus in the farthest possible locked facility from the family that had cared for her, as this action is intent on causing severe emotional and financial harm to the Plaintiffs and isolating Susan...

*92.* Next, you must work at demonization of family members, and friends, who were helping and supporting the disabled person and may be in opposition to the court and its conspirators wishes, which these Defendants have done.

*93.* Roger Hillygus has been treated as a bad person who is intent on destroying the trust and its assets for his own benefit, when in fact he is the only person involved in the court action who is pure of heart and is defending the rights of his mother, Susan.

*94.* The court only wants those that agree with the court, and agree with the members of the conspiracy, to have any voice in the care of Susan and her trust.

*95.* The Defendants use lawyers, professional guardians, supposed medical officials, and the power of the city and the county, all are used to add legitimacy to actions of the co-conspirators.

*96.* The court takes illegitimate documents and gives their seal of legitimacy. They approve accounting documents as being true and correct, submitted by private professional guardians even though they overbill, double bill, and charge to keep the court appointed attorneys legitimized, thus making any dispute of their documents an overwhelming task, such as disputing Zusman's illegal accountings.

*97.* An abusive guardian only needs the Court to declare her accounting legal. This approves her theft of trust assets, and allows her to divide up the trust assets between the co-conspirators.

*98.* It is this illegal accounting that holds the key to getting the money from the trust into the guardian's pocket with the help of the court appointed attorney.

*99.* For a family member to challenge any court action, or court filed document that the court has deemed proper requires the submitting party to not only prove the document is flawed but also the courts actions approving said action as flawed.

*100.*     The lawyers love the challenges to the acts of the court, as all of the cost of the litigation is paid out of the guardianship estate, as they claim all acts are part of the guardianship litigation and the court will gladly hand the money to the co-conspirators as the court knows all that are involved are those that know how the game is played.

*101.*     The main function of the conspiracy is to ensure the members get paid from the assets of the disabled person. Judge Frances Doherty has used her position to add

legitimacy to the actions of the members of her criminal conspiracy. For the acts and orders that come from her court are not those of a court officer doing court business, they are "non-judicial acts" a violation of her position as a sitting judge.

102.    This group has exploited not only the Hillygus family's assets causing them severe emotional and financial harm, but numerous other families that have fallen victim to the conspirators that have proven that the formula for creating money works for the conspirators...

103.    Frances Doherty has set herself up, even though she is supposed to be an impartial judge. She is acting as the de-facto administrator of the Hillygus family trust and the key administrator of the ongoing criminal conspiracy that she operates from the offices of the Second Judicial District Court as a state employee.

104.    This is done with the full knowledge of the other defendants who knowingly support her actions causing severe emotional and financial harm to the plaintiffs.

105.    When Doherty does hold court with all of her sycophants present, she has only one rule that must be followed; "the judge makes the rules", this is very apparent when you cite the law, legal precedent, or even when a lawyer opposes her rulings, the judge goes into hysterical rants as to her power.

106.    The judge makes the law, not the legislature and if you want to work in her court, you allow her to do what she wants, otherwise you suffer the consequences of opposing her actions.

107.    These consequence can range from a sever reprimand, to accusations of mental instability, slanderous statements on the public record, judicial bulling, refusal to pay fees owed all of which are nothing compared to the use of force she employees with her

bailiffs that will surround and intimidate all who oppose the illegal acts this was done to plaintiffs.

108.     The cumulative effect of the actions of the family court is a severe emotional and financial harm.

109.     This action is reinforced by people like Judge David Clifton who is in the Reno Justice court who runs an administrative office that churns out evictions and lockouts not as a judge, but as an administrator of a paper mill.

110.     Judge Clifton runs a paper mill, that lacks a legal court processes and denies due process to residents, by providing rental companies and landlords with a way of evicting so called undesirables.

111.     The Justice court has justice in name only, as it holds no hearings and has no real justice for any citizens involved.

112.     The administrators' of the justice court paper mill are the only ones, who without due process, remove people from their residences and do so without a properly noticed or properly served summons or proper court hearings. This happened in this case.

113.     Just as they did in the Hillygus home. Roger Hillygus opposed the lockout order for fraud, perjury, and suborning perjury, and objected to the officers sent to conduct the lockout. Unlike most persons who are locked out of their residence Roger read THE DOCUMENTS USED FOR ISSUING THE ORDER AND POINTED OUT THE PERJURY INVOLVED.

114.     The court appointed guardian for Susan Hillygus, Kaycee Zuzman of Fiduciary Services of Nevada and her attorney Todd Torvinen, filed perjured documents with the court, and suborned perjury claiming the Hillygus' were behind on rent and claimed they needed a lockout order.

115.    The court rather than scheduling a hearing or any other legal PROCESS AFFORDED TO ANY PERSON IN ANY OTHER JURISDICTION, issued a lockout order and sent the sheriffs and a locksmith to throw the Hillygus' out of the family home.

116.    Roger refused the sheriffs admittance to the residence and went to the court to explain the illegal actions and fraud upon the court of the guardian and her attorney Todd Torvinen.

117.    The court agreed to a "sham hearing" in which Roger explained the fraud upon the court, the perjury and the ownership of the home all of which fell on deaf ears, as the judge with the full force of the Washoe county Sheriff's office deputies standing by in the court, with helicopters circling the court house and swat waiting around the corner of the home, and animal control also dispatched all premeditated actions and predetermined decision made prior to the hearing.

118.    The Judge had conspired with the Defendant and had predetermined the outcome, even before anyone spoke.

119.    The county commissioner's unwitting support the actions of Clifton, upheld his lockout order and who just so happened to have 20 plus sheriffs, including a swat team, positioned to break into the home, along with the county helicopter that was flying overhead to watch Roger leave the court and followed him from the court.

120.    In the case of a true hearing the court would not have the sheriffs and others positioned to act if they were to rule for a lockout as this would have been a waste of county resources if he had not made a predetermined outcome. .

121.    This is justice in the Reno justice court, which not only barred Roger from entering the family home, but also from federal lands around the home and city streets in

the neighborhood all of which were far outside the jurisdiction of a "judge" who illegally imposed a lockout order.

122. The breaking and entering into the family residence was accomplished by the WCSO deputies, swat, and animal control and then the ransacking of personal property began in the residence and the vehicles on the premises.

123. The Sheriffs stood by as the personal truck of Roger Hillygus was broken into by the guardian and the Deputy Sheriffs and guns were stolen, numerous items stolen including money and personal items, all under the county employees watch full eyes.

124. They then turned their sights on the home and plundered guns and personal items from the home including family mementos that could never be replaced. The county employees observed and aided the plundering of the family home.

125. These inexcusable acts by county employees who are supposed to protect and serve the public caused irreparable harm to the plaintiffs.

126. The defendants caused irreparable harm to the plaintiffs when they placed Herbert Hillygus' care, under a guardianship, in the hands of Robin Renwick.

127. This person who the judge determined to be fit as a guardian, had in the past stolen from, and exploited, the Hillygus trust and was known to be an alcoholic, prescription pill addict, exploiter of people for her financial gain and when she found out her parents were to be incapacitated by dementia she suggested to Roger Hillygus that they liquidate all assets, sell the family home, split the money and then dump the parents into a low rent state owned nursing homes to die, but Roger refused.

128. Robin Renwick thought that when she became Herbert's guardian she would have access to his money and thus would have money herself, but instead she got Herbert, with all of his problems and anger and no money.

*129.*     She then set on a path of neglect and purposeful acts that were specifically intended on causing the death of Herbert Hillygus when this issue was brought to the attention of the court officer (Doherty) she showed no care or concern for Herbert's welfare and he died soon thereafter. (Less than two months)

*130.*     When Robin decided her need for access to the trust accounts money was essential, she concocted the scheme with Todd Torvinen Esq. and Steve Moss Esq. to change the Trust and get access to the trust accounts so they could have all the money for themselves.

*131.*     Attorney Steve Moss Esq., who has a tainted history with the State Bar of Nevada for undue influence of his trust clients, once again exploited his client Mr. Herbert Eugene Hillygus.

*132.*     Moss isolated Herbert from his wife, attempted to change a joint trust he prepared for his clients both Susan and Herbert.

*133.*     He claimed to represent the husband, Herbert, who he knew had been deemed incompetent by a certified physician. Moss even believed his client was incompetent, and had asked two medical Physicians through written correspondence to evaluate his client's capacity to handle financial and legal affairs.

*134.*     Moss used a knowingly incompetent man to sign legal documents that were used by the court, Robin and Todd Torvinen to start litigation and proceed with litigation to this date.

*135.*     Mr. Moss's knowingly filed an inappropriate Petition before the District Court of Washoe County, probate department.

*136.*     His next act was a result of his plagiarizing guardianship applications for fees to be paid to him. By falsifying court documents to get paid even though he never

participated in or filed documents in either guardianship cases smacks of criminal extortion.

*137.*     He was, therefore knowingly successful in extorting close to $14,000.00 dollars, from a trust he drew up.

*138.*     This action of use and abuse of an incompetent person has been condoned by the Washoe County District Court and its personnel who knowing of the facts of the abuse of the elderly incompetent individual they authorized payment to Moss for his "work on the trusts behalf", but it was ordered to be paid under guardianship law.

*139.*     The court added an error of legitimacy to Moss's actions as they deemed his illegal acts to be payable as legal services as it gave the court the ability to become the administrator of the trust, which allowed Frances Doherty to act not as a judge but as an administrator to make every decision that would benefit the judge and her conspirators in this RICO conspiracy.

*140.*     She would micro manage the actions of trustee, Roger, not allowing him the rights and privileges of a trustee and thus the judge became the de-facto Trustee of the Hillygus Trust.

*141.*     The court if acting as a legal entity should have followed legal standards that were based on laws and legal precedent.

*142.*     The court as it not only knew of the actions of Moss Esq. but used said action as its way to become that administrator of the trust, spending every penny which the settlors accumulated in their lifetime on the members of the ongoing criminal conspiracy, that was based out of the Washoe County District Court Family division.

*143.*     As a result of Moss Esq. conduct which he open the flood gates and allowed the court and its co-conspirators to enter the Trust, plunder it, cause the premature death of

Herbert Hillygus and try and seize the family's home as it was the only remaining asset of the Hillygus Trust.

144.     The criminal conspiracy has cost the Surviving Settlor and the Trust created for her benefit, close to $1,000,000.00 dollars and caused the plaintiffs severe emotional and financial harm....

145.     The defective petition was joined by one of the current Co-Guardians/co-trustees, the now estranged sibling of Roger. Roger has challenged the jurisdiction of the Court, as well as the Court's decision to sell protected person's real property; to place her in a locked Alzheimer's facility; the removal of her privately retained counsel, and the failure of the lower court to grant Appellant a new trial, based on the evidence that was not able to be presented at the May 31st, 2016 illegal hearings.

146.     The actions of the defendants jointly and separately has caused the plaintiffs severe emotional and financial harm.

**KEY PLAYERS IN THE UNDERLYING CASE**

**ROBIN R. RENWICK**

147.     Robin Renwick is the daughter of Susan and Herbert Hillygus and estranged brother of Roger Hillygus. Robin has a long history of exploiting her parents for her own financial gain. When she found out that her parent's faculties were diminished she exploited them and cost the Trust in of $350,000 in a get rich quick scheme that only benefited Robin. Robin approached Roger with a proposal that they sell all their parents assets split the money and dump them in a low rent convalescent center. Roger refused her suggestion and proceeded to help his parents through their lives.

148.     Robin Renwick applied to the court to have her parents trust divided and to have her appointed as the guardian of her father and his money. Her guardianship document

sworn to as be true and correct, even though she is and alcoholic, addicted to prescription drugs and a squander of money as proven through her divorce documents. Her attorney Todd Torvinen, who also was her divorce attorney and privy to her many illegal acts, submitted to the court that she was a proper guardian for her parents. This fraud upon the court proved faital to her father Herbert Hillygus (deceased).

149.     Robin when she became aware of the frailty of her father attacked with a vengeance and developed a get rich quick scheme in which she was the party to get rich quick.

150.     This scheme consisted of quick flipping properties in Idaho, but as usual her knowledge of the market was wrong and she bought with her fathers money and his credit properties 9that she collect a commission on the purchace( but she bought just as the market collapsed. So she rented out the properties put the rental income in her own pocket, paid no payments on the property ad let the banks foreclose on them.

151.     The property she had her name placed on, even though she had not put one penny toward the purchase. She did not let go in to default and insisted that her father mortgage his paid for house at a high interest rate to pay off that property so ad to remove her name. Then dumped it in her fathers lap. He was forced to sell the property at a loss of $150,000 to the trust.

152.     Her get Rich quick scheme cost the Trust over three hundred Thousand dollars and caused her parents' home they owned outright to be mortgaged at a high interest rate with excessively large payments.

153.     Robin Renwick used her disabled and mentally compromised father to put a large deposit on her attorneys account to begin litigation against the trust.

*154.*     Robin Tied to divide the trust and orchestrate a divorce between her parents so as to gain access to trust funds.

*155.*     Robin abused and neglected her father causing his premature death

*156.*     Robin had herself placed on trust checking accounts which she plundered to pat her own bills.

*157.*     Robin used her access to trust accounts to pay her divorce attorney bills from her divorce

*158.*     Robin when her father died stole every possession which he had including expensive personal jewelry, home furnishings and cash he had in his apartment

*159.*     Robin broke in to Roger Hillygus home in Dayton Nevada ransacked the residence and stole Roger and his wife's personal property

*160.*     Robin broke into her mother's home and emptied her mother's jewelry box of expensive personal jewelry none of which has ever been seen again

*161.*     Robin forced her way into the residence at knob hill in golden valley Nevada and assaulted the licensed nurse Roger had employed to watch after his mother while he was out of town.

*162.*     Robin Renwick perpetrated a fraud upon the court to initiate the litigation to try and seize the Hillygus family Trust

**Todd Torvinen Esq.**

*163.*     Todd Torvinen was Robin Renwick's divorce attorney and perpetrated a fraud upon the court to initiate litigation to try and seize the Hillygus family Trust

*164.*     Todd used a knowing incompetent man, Herbert Hillygus, in collusion with Steve Moss Esq. and Robin Renwick to try and change the Hillygus family trust knowing that Susan Hillygus and Herber6t Hillygus were both incompetent

165.    Todd Torvinen has entered into a criminal conspiracy to defraud and plunder the Hillygus Family trust

166.    Todd has knowing committed perjury in his statements to The Family court and the Reno Justice court

167.    Todd has suborned perjury by creating false statements for his clients and accepting their knowingly false statements and entering them into the court record

168.    Todd has created knowingly false orders for the family court which he knew had no resemblance to the order state from the bench and because of the collusion by the judge these statements became the orders signed by the court

169.    Todd knowingly violated the rules of evidence and submitted false documents with no corroboration to the court claiming them to be true and correct

170.    Todd tries and attempted to access the accounts of the Hillygus Family trust to remove funds to pay Robin Renwick's legal bills

171.    Todd assisted and allowed the abuse of Herbert Hillygus that caused his premature death

172.    Todd participated in the act of extortion to try and force Roger to surrender the Hillygus Trust to his control

173.    Todd participated in a criminal conspiracy that meets and exceeds the required number of predicate acts to be consider a Rico criminal conspiracy

174.    Todd conspired with others to commit a fraud upon the court to taint and maneuver the court's opinion as to the actions that were proper and appropriate I the guardianship and trust case.

**Stephen Craig Moss**

*175.*     Stephen C. Moss Esq. was hired by Susan and Herbert Hillygus to draft the original Trust Documents and remained the family's lawyer till such time as he began to conspire with Robin Renwick and Todd Torvinen to change the Hillygus Family Trust while both Settlers were no longer in control of their mental faculties.

*176.*     On June 4th of 2014 Roger Hillygus and Herbert Hillygus drafted and hand delivered a letter discharging on Moss as representing Roger Hillygus as successor trustee and the Hillygus Family Trust and Herbert Hillygus on the 12th of June 2014again draft another letter discharging Moss as he still had Moss Esq. acting as if he was still the council for the trust and the trustee.

*177.*     On the 18th of June Moss appeared in the probate court claiming to still represent the trust and the trustee along with Susan and Herbert all of which were frauds upon the court.

*178.*     Robin Wright was not informed as to Moss's Discharge, he also concealed his client's competence and that of Susan Hillygus also being incompetent.

*179.*     Judge Connie Steinheimer removed Moss and validated the appointment of Roger Hillygus as Successor Trustee.

*180.*     Steve moss was fired by both Herbert Hillygus and Roger Hillygus prior to any appearance in court yet committed a fraud upon the court and request fourteen thousand in legal fees under guardianship laws even though he has never appeared or done any legal work with regards to guardianship a blatant Fraud upon the court, yet Judge Doherty ordered his payment to be made for his fraudulent billing.

*181.*     Steve Moss approached Herbert Hillygus knowing he was incompetent and had him write him two checks one for fifteen hundred dollars and the other for two thousand.

*182.*     Moss had the bank process the check for fifteen hundred dollars and had said funds deposited into his own account, but Roger Hillygus managed to close the account the checks had been written on prior to Moss collecting on the two thousand dollar fraudulent check.

***Health and Human services elder protective services (EPS)***

*183.*     Sally Ramm Esq. and eleven other persons that were employees of EPS in a meeting with Roger and Debbie Hillygus and Susan Hillygus were present to discuss the care and evaluation of the long term needs of Susan Hillygus. The evaluation and the suggestions were all positive and they suggested that the family continue the care as presently provided for Susan and they saw no need for EPS continued involvement in the family's lives.

*184.*     Complaint to EPS was anonymous but EPS found no wrong doing on behalf of Roger Hillygus and Debbie Hillygus.

*185.*     Robin Renwick instituted an ongoing string of fictitious complaints to EPS, Washoe County Sheriff's Office, with US Bank and numerous other groups solely to vex and Harass Roger Hillygus and his Wife

*186.*     US BANK BRANCH MGR LINDA MCGUIRE & ARTIST JOHNSON were influenced by Robin Renwick and they changed their attitude and business approach to dealing with Roger Hillygus. Robin Renwick interfered with the contractual relationship between Roger Hillygus and the banking community causing severe emotional and financial harm from her actions.

*187.*     Complaints by Robin Renwick, Steve Moss Esq. and Todd Torvinen Esq. entered into the court Record unfounded accusations and innuendos about Roger and Debbie Hillygus to build a compilation of accusation that they use as claims of

wrongdoing. These accusation are now treated as facts by the court even though there was never any supporting evidence or corroborating testimony, just the continual and never ending repeating of accusations till such time they begin to claim them as facts. These unfounded accusations were used to disparage the character of Roger and Debbie and cast them in a bad light to family and friends, etc.

188.    Roger unlike his sister was devoted to his parents and considered his time spent with them as family time to be enjoyed and cherished. As it became apparent that His parent's faculties were fading he took it upon himself to become more involved in their day to day lives. He would make time for shopping with his mom and working in the yard with her. He would take time out of his day to talk with his dad and get a feeling for his mental state for that day and deal with him accordingly. His father still enjoyed the things he use to enjoy, but sometimes just need a little help to get the projects done, and Roger was always ready willing and able to help him when he needed it. The actions of Herbert at sometimes seemed disjointed but with the care of a son Roger could understands and help him with the task at hand. That is how Roger figured the rest of their lives would be, but that was before Robin began her scorched earth approach to gain control of the trust as that is where the money was and she had to have the money, She has proven that she is only interested in money and family, family loyalty and human kindness were not in her making as she is only money motivated and human life means nothing. Roger has for five years battled to try and protect his parents from the conspiracy that has overwhelmed them and has finally after losing faith in any semblance of justice coming from the state court reached out to the Federal District Court for the justice that his family needs.

189.    Roger Hillygus with nothing to hide subpoenaed the US Bank records and entered them in whole into the court record to prove that the false accusations of wrong doing on his part was to bear false witness, perjury, and fraud. This entering the full record of all transaction should have satisfied all of those that accused Roger of wrongdoing. Sadly the answer is NO. The judge proceeded with only hearsay, false allegations, innuendo, and no testimony, no affidavits, no expert witnesses, no depositions, no interrogatories, and no trial. ONLY the false accusations, which kept being made even though the records clearly showed no wrongdoing on his part.

**WCSO (WASHOE COUNTY SHERRIFF'S OFFICE)**

190.    December of 2013 Susan had returned from a ten day trip to see her brother alone in Los Angeles. When she was returned to Roger and Debbie they met her in Bishop, California with her brother who drove her to Bishop. Susan when returning home explained to Herbert that it would be best if he lived somewhere besides in the family home as his advances toward other woman had become more blatant and regular. He agreed and moved to the Lakeside manor as his uncle had lived there and he like the number of available single woman in the facility. Within days of moving in he had established a relationship with a new girlfriend.

191.    Robin began a pattern of undue influence on Herbert and began to use him as a weapon to attack Susan, Debbie and Roger. Robin would fill his head full of lies and thoughts of being taken advantage of just to drive a wedge between Roger and Herbert. Roger would spend many hours talking to his father and explaining to him that the way that things were going was how they had to be as living in the house with his wife and his girlfriend was disrespectful to both and would cause conflict.

192.     Robin on February the 12th of 2014 had WCSO deputy John Macken come to the residence and threaten and verbally assault the Hillygus' and without any paperwork or proper legal standing throw Roger and Debbie out of the family home with a threat of incarceration, false arrest, and false imprisonment if he returned and they were still living in the house. The WCSO deputies forced Debbie and Roger to leave the residence. Leaving Susan who required 24/7 care alone and confused in the residence. On Friday the 14th Susan called Roger crying an incoherent, Roger facing threat to his own safety by the WCSO deputies returned to the home and stayed with her over the weekend. When Roger was away running errands Herbert drove illegally without a valid license with his girlfriend, and came to the home, and verbally assaulted and bullied Susan. When Roger returned she was in such a state that she retired early complaining of a head ache, and nausea.  The next morning early he called an ambulance and sent her to the hospital, believing she had a stroke, or seizure or suffered a nervous breakdown.

193.     The hospital entered her into the hospital directory under an assumed name as the nurses, social workers, and medical professionals feared for her safety at the hands of Robin and Herbert as they had been informed as to the actions that had proceeded in the days before the hospitalization. The hospital kept her for a week and they protected her from intrusion and harm from others. For her protection Roger moved her to his house in Dayton where she could be protected as no one knew she was there.

194.     At Robin's insistence Herbert who needed 24/7 care and supervision was moved into the family home with his girlfriend against her family's protests. It soon became readily apparent that he could no longer care for himself, protect himself from others, handle his finances, enter into legal contracts, or care for the home and it was not a safe living situation for the couple, so, Robin again   moved the couple into another

independent living facility in Sparks, NV known as the Villas. This independent living facility only provided meals; not the 24/7 care needed by Herbert per the medical reports by multiple certified medical professionals. Prior to Herbert being deemed incompetent Roger at the urging of Dr. Elliott took Herbert to the DMV and the DMV sent Herbert a letter regarding his driver's license, which would be revoked if he failed to retake the drives test. Roger knew he had been in a string of fender bender accidents and it was just a matter of time before he hurt someone or himself while driving.

195.      Robin Renwick knew of his license being revoked and insisted that his truck remain at his residence and she gave him ready access to his keys and he drove and crashed numerous times after his license was revoked until the center where he was living insisted that his truck be removed from the grounds as they considered being available to him was a threat to public safety.  Roger collected the truck from the individuals Robin had steal it and took it to the house in golden valley at his mother's insistence. Because Sue begged Roger daily they returned to live in the house that she loved. Robin used this taking of Gene and Sue's vehicle once again as a weapon against Roger, claiming he was stealing it from his father. Next, she drove him out so he could drive it back to the villas. Roger reasoned with his father and explained to him that he had to quit driving, because he was a public danger while behind the wheel.

196.      Roger, and his wife and his mother remained in the home till Robin had managed to cause the death of Herbert. Next, she turned her eyes on Susan, as her next victim. Roger attempted to explain that Robin had herself positioned as the guardian over Herbert and that she now was going to control Susan's life. This put Susan into an emotional state till she collapsed on the floor with what appeared to be a heart attack at first when she was found, as stated in documents. She was rushed to the hospital and a

pacemaker was implanted in her chest. After three days in the hospital Roger suggested to Robin through email and the like that since his mother was going to have numerous doctors visit over the next few weeks and that for connivance it would be best that Robin took her to her house and returned her to Golden Valley once Susan was released to regular and full activity by the doctors who installed the pacemaker. Robin took this opportunity to capture and control her mother by isolation and by kidnapping and that was the last time she was allowed to see her home, pets, belongings and things she had grown to love.

197.     With the aid of Kaycee Zusman (FSON) and Torvinen and at the approval of Judge Doherty they have locked her away, warehousing her in an institution an ADA violation and NRS statutes till such time as she will die and they will be done with her care.  In the mean time they had Roger and his wife evicted from the Family home at gunpoint. Tried to have the deed of trust and promissory note owned by Debbie Hillygus determined to be invalid and have her legally issued note declared to be paid in  full by the will and whim of the judge through judicial extortion. This was in complete contradiction to the law and Nevada Revised Statutes regarding property rights.

**DON LESLIE ROSS ESQ.**

198.     He was retained by Roger Hillygus as the attorney for the Trustee of the Hillygus Family Trust. He failed to appear at scheduled hearings sent his underlings to hearings with no knowledge as to the case. Failed to provide Roger with retainer agreement and have it signed by such. Generally, a dereliction of his duties and hid pertinent information from the court in an effort to extend the case and receive more billable hours.

199.     Roger Filed a bar complaint with the Nevada Bar with regards to the actions and inactions of Don Ross as he was derelict in his duties and failed to meet the legal responsibilities as a lawyer representing a client's interests. By a breach of contract, breach of fiduciary duty, and through deceptive trade practices.

## COMMISSIONER ROBIN WRIGHT SECOND JUDICIAL DISTRICT

200.     As the probate commissioner, she heard the initial petitions, and it was vacated. However, with provisions to be supplemented after the medical professionals determined the capacity of Herbert and Susan.

201.     A hearing was again set before the probate commissioner, However no supplement was provided. Susan did not attend the June 19, 2014 hearing, nor did her attorney Gordon Muir. Roger Hillygus was also not at the hearing, nor was his attorney Don Ross in attendance. A breach of duty, and therefore with not all parties present no stipulation could have been allowed for the court lacked jurisdiction to move the case forward.

202.     This was the basis for the court attempting to gain jurisdiction. A flaw which has never been acknowledged, even though it has been raised multiple times as a defect in the record.

## JUDGE CONNIE STEINHEIMER SECOND JUDICIAL DISTRICT

203.     This was the first District court judge to hear the probate case. Her immediate impulse was to remove Stephen C. Moss as the attorney representing Herbert for undue influence against the elderly Herbert, and exploitation of the vulnerable Herbert who was confused as to the reason he was in court with his Son Roger who was helping him as per his trust and POA's.

204.    The judge appointed Roger Hillygus as the successor trustee and gave him access
to the bank funds so he could provide for the care of his parents per the trust and POA's.

## MICHAEL KEANE ESQ. OF WOODBURN AND WEDGE CHARTERED

205.    Michael Keane Esq. took on the litigation without a signed retainer of the
Hillygus and knew of his client's insistence that they go to trial and that trial was to be
trial by jury. Michael Keane never filed for a notice of appearance in the trust case.
Roger insisted that the trust case be moved away from the Family Court to a regular
district Court where the rules of civil procedure, rules of evidence, apply. He wanted to
rules and the law known as the Nevada Revised Statutes, the uniform commercial code,
the constitution of the United States and the bill of Rights none of which are applied in
the family court to apply in this case. These rules are not even acknowledged by Frances
Doherty and the Second Judicial District Court Family Court Division.

206.    Michael keen refused to move the case to another court and said that this was the
best court for this mater. What he should have said, was this is the best court to insure
that he gets paid by the trust. He never prepared for nor took the legitimate steps to
prepare for a trail. A requirement of the judges scheduling order. He did in fact conspire
with the other attorneys to have a stipulation conference held by Judge Doherty in which
she decided and stated what was going to be stipulated to and allowed only the opposing
counsel to present input.

207.    Michael Keen Esq. along with the other attorneys entered into a fraudulent
agreement in which they would create controversy and billable hours as a means of
collecting money from the Hillygus Family Trust. On February the 23rds of 2015 Roger
Hillygus and Michael Keane had a meeting of the minds that they could no longer work

together toward Rogers's goal of a Trial. Michael Keane presented Roger with a document that was a notice of discharge of counsel (Motion to Withdrawal) and both parties signed said document separating their business relationship. Michael Keane after an ex-parte communication with the judge in violation of the rules of civil procedure. The judge supposedly told Keane that they were having mediation today she was running it and Roger was appearing and going to participate with or without Keane. Roger agreed for Keane to stay but only as an advisor as their business relationship had ceased. The stipulation agreement designed by, created by and the sole person who constructed said agreement was Judge Frances Doherty. The court told Roger to raise his hand and said he had sworn to the agreement. As this agreement wasn't a true agreement and was forced under duress on Roger thus making it invalid.

208.    As Roger when he was presented with so called arbitrated agreement that was totally constructed and written by Todd Torvinen he refuse to sign the document. After weeks of badgering by Keane who would not accept that he had been discharged and that Roger would not sign said agreement as it wasn't an agreement it was a forced one-sided construction of a document to favor Todd's Torvinen and his client. Michael Keane after it became apparent that Roger would not sign the document signed said document on behalf of Roger and claimed to be his legal counsel even after discharge. The court has ordered that even though Roger did not sign said document he is bound to it by the signature of his discharged legal counsel.

**LAUREN BERKITCH ESQ.  WOODBURN & WEDGE CHARTERED**

209.    An associate at Woodburn and Wedge who wrote documents for the attorney and came with the senior attorney and participated with the discussions all in the furtherance of creating billable hours for the company.

**SHARON JANUZZI ESQ.  WOODBURN & WEDGE CHARTERED**

*210.*        An associate who appeared on behalf of Roger Hillygus being clueless about the litigation and agreed to give jurisdiction to the probate commissioner in direct violation of the clients wishes. She appeared without ever meeting Roger or having a discussion as to his thoughts and direction that he requested the litigation to be dismissed through a Motion to Dismiss for failure to state a claim, and a motion for summary judgement for failure to produce any discovery by Torvinen.

**JASON MORRIS ESQ. WOODBURN & WEDGE CHARTERED**

*211.*        A document lawyer at Woodburn and Wedge who created documents and supposedly placed the thoughts and wishes of Roger Hillygus down on paper for the court. However, he never meet nor had any discussion with Roger about the case.

**DR. KENT ELLIOTT PHYSICIAN RENOWN MEDICAL CENTER**

*212.*        As personal physician of both Susan and Herbert for a period of seven to eight years and he was the one that diagnosed dementia in Herbert.

*213.*        As the personal physician of both Susan and Herbert, Dr. Kent Elloitt was a general practitioner who saw to the general health care of both Susan and Herbert. He knew both individuals better than any other physician as he saw both parents on a regular basis, as his office was just minutes away from the home of both Herbert and Susan. Therefore, he saw both patients for various colds, sprains, and check-ups. As an expert his testimony was never solicited, nor was his office staff solicited as they knew the condition of Herbert and Susan and the care which was being provided to them by their son Roger.

214.     Dr. Kent knew that Roger was providing care and support to his parents made himself available at any time if Roger need guidance in the care and trajectory of his parent's health concerns.

215.     Danielle and Fauna are the medical assistants for Dr. Kent and as the medical assistants are the first point of contact in the office and would allow Roger to express his concerns as to his parent's health care needs. .

**DR. JONATHAN SPIVACK PHYSICIAN RENOWN MEDICAL CENTER**

216.     Dr. Jonathan Spivak a neurologist that tested and monitored the progression in the disease in both Herbert and Susan. He was instrumental in the creating the knowledge base that allowed Roger to understand and comprehend the disease that had gripped his parents. As a specialist in the brain and the effects of both Alzheimer's and dementia Dr. Spivak was an expert in the field. He had extensive knowledge and experience with both Herbert and Susan and knew the care being provided by Roger. However, he was never solicited as an expert witness, he never provided testimony, and was never sent depositions or questioned by counsel. This lack of expert witness testimony is part of the basis of the RICO on the part of the attorney's.

**DR. LORRAINE BENNUTO LICENSED CLINICAL PSYCHOLOGIST**

217.     Licensed clinical psychologist at the Stanford center who engaged the Hillygus' and after interviewing Susan and Herbert created an action plan to teach Debbie and Roger how to care for Susan and Herbert and the fundamentals of caring for someone as the disease progresses in them.

218.     She provided support and training to help with creating an environment where Susan and Herbert would be safe and be provided with the best possible care.

219.     The Sanford center provided Books and notes as to help create a knowledge base for Debbie and Roger to draw on as there care responsibilities became more challenging.

220.     They helped with Ideas and guidance in the best way for Roger and Debbie to meet the care needs of Herbert and Susan.

221.     After the death of Herbert they helped with organizing the Celebration of life, and attended the celebration at the home of Herbert.

222.     Dr. Benuto is an expert in the field of Alzheimer's and dementia. She was never solicited for testimony. She knew the superior care both Herbert and Susan were receiving, and she was never asked or sent questions by the GAL, the Attorney appointed by Judge Doherty, David Spitzer, or even the attorney's for Roger. For without the expert testimony, no witness statements, and no depositions the case could be decided against Roger. This was known by all the attorney's in the case. So they intentionally kept the facts, proof, and evidence away from the court and judge. This is the predicate factor for a RICO conspiracy.

## SANFORD CENTER FOR AGING UNR PROGRAM FOR PUBLIC

223.     The Stanford center helps with the Training for the public to meet the needs of the aging population. Their goal is to provide the public with the ability to care for and understand those going through the aging process, and keeping the family in an environment familiar and secure, like the family home.

224.     This keeping individuals in the family home with care provided by the family was advocated by the center and the employees who educated the public. Roger and his wife were living in the family home caring for the individual afflicted with the disease.

225.     These professionals were never solicited by the court or the attorney's. These are the professionals who provide the knowledge and training to family in the community,

and they were never called as expert witnesses, never called to testify, never called upon to provide guidance in this case. One more reason this case has been onesided.

## DR. DEBRA FREDERICKS INTEGRATED BEHAVIORAL HEALTH

*226.*     Debra Fredericks was hired by Todd Torvinen to create a fraudulent evaluation of Herbert Hillygus. What she created was a, "made to order document" which was used by Todd Torvinen and Robin Renwick to slander and disparage Roger Hillygus. The document which was created, and that was used by Todd Torvinen Esq. had no basis in fact or reality. It was solely used as an instrument to allow the court to seizes the Hillygus Family Trust and create guardianships for both Susan and Herbert.

*227.*     Herbert Hillygus did not want to go to an appointment with Debra Fredericks. He was drug their by Robin Renwick who helped orchestrate and created the fictitious document, provided by Debra Fredericks. This document was a fabrication and complied without any communication with the POA for healthcare Roger. In fact, Roger was never asked to attend, or provide any input into the document, which was created only for the court to take control of the lives of the people who had created a trust and POA's for healthcare and financial decision making.

*228.*     Debra Fredericks was never solicited to provide corroboration or authenticity of her document. She never testified, was never subpoenaed, nor did she provide expert testimony at a hearing of trial. This is another reason the court was used by the attorney's in the RICO conspiracy.

## JUDGE FRANCES DOHERTY

*229.*     Frances Doherty operates a court without the rule of law. She does as she wants when she wants and creates an atmosphere of fear and dread because the decisions have no basis in fact or the outcome cannot be predicted as no rhyme or reason is involved in

her decisions. Her decisions are a text book definition of decisions that are arbitrary and capricious in nature and thus are not judicial decisions but are the decisions rendered by a judge gone mad with power who believes only her knowledge and reasoning ability has the ability to render a decision. The law, the codes nor any previous decision setting precedent matter and only she can decide the case in front of her. To challenge her with the law, facts, case law or long standing rules means the possibility of incurring her wrath as she is the ruler of her domain.

230.     Violation of fair debt collection act as she becomes the debt collector for those that she allows to practice law in her court. Once she decides that money is to be paid to a lawyer she will stop at nothing to collect it for them. She does not care what the laws says about the legal way to collect a debt she has ruled and knows that it is not possible to appeal her decision to throw a debtor in jail for refusing to pay as she deems it to be in contempt of court to not do as she orders. She knows it gives her the ultimate authority to do as she will without review under appeal as contempt citations are not appealable.

231.     She claims mediation is to appear in her court do as she orders and she decides what the results of the medication will be. This is a violation of mediation rules as she as the presiding judge is not supposed to be privy to the mediation nor is she to know the outcome and reasons why the medication failed, Yet she believes that her conducting the mediation and her determining the mediation outcome is proper and oppose her, and risks a trip to jail or a substantial fine.

232.     Judge Doherty knowingly and with full knowledge of the theft that was committed as a conspirator and is committing the crime of adding and abetting in criminal act of theft. For when she allowed Zusman to keep and possess the guns, money and other items stolen from the vehicle of Roger Hillygus. Something Zusman

testified to that she possessed the stolen items yet Judge Doherty allows her to and provides her with the legal cover to continue to keep said items that are knowingly the property of Roger Hillygus.

## WASHOE LEGAL SERVICES

*233.*    Washoe legal services is in the business of providing agreeable attorneys that will act and follow the lead of Judge Doherty who sponsors, promotes and fundraises for the organization along with providing them with a never ending supply of clients. The conflict of interest is blatant and readily apparent to any onlooker as Doherty uses WLS as her right arm to do as she wishes without decent.

## VIOLATIONS OF RIGHTS AND POA (Power of Attorney)

*234.*    On or about June 17, 2014 current co-Guardian and Co-Trustee Robin Renwick, filed for court supervision of both of her parents against their pre-planning estate documents and activated Powers of Attorney for healthcare and durable power of financial attorney.

*235.*    Roger Hillygus provided the care for the Persons of Herbert and Susan Hillygus' as outlined in the Trust and the activated power of attorney for healthcare and financial purposes.

*236.*    Roger Hillygus was caring for his parents per their wishes, to include the ADL's (activities of daily living) as described in the trust document and agreed to by both Mr. Herbert Eugene Hillygus and Susan Lynn Hillygus.

*237.*    At the time of the initial petition filing by Attorney Steven Moss, as Medical records would later show, both Eugene Hillygus, whom Mr. Moss was attempting to represent at the time, and Mrs. Susan Hillygus, (Eugene's wife), we're both suffering from mental degradation due to either dementia and/or advancing Alzheimer's.

238.    The case somehow progressed even though  Roger Hillygus who was appointed and acting in his capacity as Successor Trustee, had meet with and was advised by the State of Nevada counsel Sally Ramm Esq. of Health and Human Services Department and eleven others including investigators to continue to care for your parents. "We see no wrong doing, all your paperwork is in order and you are doing the right thing by taking care of your parents".

239.    This indisputable fact set out the destruction of the Hillygus Family Trust by the District Court in this matter.

240.    The original Judge to hear the Probate matter the Honorable Judge Connie Steinheimer even removed attorney Steve Moss from further representation of his client, Mr. Herbert E. Hillygus.

241.    The Family Judge has never acknowledged that the original underlying jurisdiction in both the Guardianship and the Trust case we're flawed upon the very basis of jurisdiction. *See United States Supreme Court case Trinsey v. Pagliero. SCR 99 Jurisdiction and misconduct.*

242.    The Court later improperly removed the original Trustee Roger Hillygus (who was the preferred choice by Herbert and Susan the Trustor's).Original trustee, Roger Hillygus, who chose Federal Bankruptcy as his fiduciary role over paying many of the voluminous attorney's fees ordered by the family court judge, by delaying some payment due to a frivolous action resulted in the ultimate insolvency of the trust.

243.    After the court removed Mr. Hillygus, it favored his sister, Robin Renwick, to pay the life savings out to the attorneys who staged this frivolous action.

244.    The court also hired a Professional Guardian, Kaycee Zusman, and appointed a GAL to support the courts illegal actions.

245.     As Zuzman was not licensed as a requirement of NRS 628B, had not filed her signed letters of guardianship, possessed no business license to operate a business in the city of Reno or in Washoe County, nor had a valid signed order by the court approving and authorizing her to act in such a capacity.

246.     The Guardian Ad Litem also, has failed to perform the duties and responsibilities as is required of the one appointed to this position.

**HISTORY & TERMS OF CARE OF MRS. SUSAN HILLYGUS**

247.     Since approximately June of 2013, Roger Hillygus, and his spouse Debbie Hillygus, provided care for Mr. and Mrs. Hillygus.

248.     By January of 2014 they were providing 24/7 care, monitoring and supervision for Mrs. Hillygus, the mother, and surviving settlor in her home of 45 years.

249.     Mr. Roger and Mrs. Debbie Hillygus were never unwilling to provide that care, and even at the date of this writing are more than willingly take up that responsibility once again.

250.     On or about May 31, 2016, the district court in this matter held hearings relating to the sale of Mrs. Hillygus' residence; her placement into a locked Alzheimer's facility; and the replacement of her privately retained attorney, Keith Tierney Esq.

251.     The petitioners wished to remove the one and only attorney who was fighting for the rights of a vulnerable and disabled Nevada resident by way of a public access lawyer, (Washoe Legal Services) who has to date NOT filed ONE MOTION for the benefit of Mrs. Hillygus.

252.     Attorney for Guardian and Trustees Robin Renwick/Kaycee Zusman, Todd Torvinen, interestingly enough noted during the May 31, 2016 hearing that the Professional Guardian was attempting to now acquire rent from Mr. and Mrs. Hillygus,

as they were staying at the home of Susan Hillygus in the hope of her being returned to them and they would resuming her care.

253. In the summer of 2016, Attorney Todd Torvinen suborned perjury in the Washoe County Justice Court, by preparation of eviction documents in which Professional Guardian Kaycee Zusman indicated, under oath, that she was the landlord of the Hillygus property, located at 2685 Knob Hill Drive, Reno, NV.

254. Zusman claimed she was the landlord of the property in February of 2016, before she had legally been appointed by an order or letters stating such.

255. Zusman further Claimed that Roger and Debbie Hillygus owed multiple months of back rent for their tenancy in the Hillygus Family property.

256. In point of fact, there was neither rental agreement nor any agreement about any amount of monthly rent.

257. The Reno Justice Court of Washoe County without a hearing or legal notification of Hillygus' that a complaint was even been filed, issued an order to provide a lockout order. This order was issued by David Clifton whose wife is a senior Deputy attorney with the Attorney General's Office the state of Nevada with Adam Laxalt.

258. This was a non-judicial function and non-judicial in nature. A fraud.

259. This order was to prevent Mr. And Mrs. Hillygus from re-entering the Hillygus' family home, which they were legally authorized to occupy. Not at will tenants.

260. The order which was written by Todd Torvinen and signed by Justice Court Judge David Clifton, a high school friend of Todd Torvinen, restricted Mr. Hillygus' movement on Federal BLM property, he was also restricted from movement on public roads in Washoe County, a violation of his rights afforded by the bill of rights and the freedom of movement. The judge did not have jurisdiction over federal land.

261.     Previously noted -- during the hearing on May 31st, 2016, Counsel for Trustee/Guardian Todd Torvinen noted the duty to maintain income from the Trust property.

262.     As of the date, of this writing, after the falsely based eviction/lockout of Roger and Debbie Hillygus, the guardian/ trustee has made NO effort to rent said property in order to maintain income, which was the theoretical underlying need for the sham eviction. Breach of trust, breach of fiduciary duty, and theft.

263.     This eviction was supported by the defendants in their actions and inactions caused severe emotional and financial harm to the plaintiffs.

264.     On May 31st, 2016, the court determined it was appropriate without the benefit of any Expert medical testimony or expert witness testimony of any kind, and with no regards for the rights of Susan Hillygus, to sell her home. Plaintiffs filed for a stay of the order, filed for a new trial, and intent to appeal. Judge Clifton had no jurisdiction over a matter in a higher court, and one under the one family one court, one judge. Torvinen and troop had options available to them within the district court which were not exercised first before leaving the district court. A violation of law.

265.     The court determined that her property shall be disposed of, selling her real property so as to provide money for the courts co-conspirators. The true definition of exploitation, and elder abuse.

266.     The court has placed Susan in a locked facility instead of being cared for by her son and daughter-in-law in her own home, which is the least restrictive environment. See Olmsted v. L.C. a federal ADA violation for the rights of the disabled.

267.     All this was done without the benefit of a finding that the protected person was insolvent, incapable of living in her home with care from her family or needed nursing care. A violation of due process, and the first amendment.

268.     The court ordered the termination of her private counsel, Mr. Keith Tierney Esq., the only elder law lawyer who actually came to the residence of Mrs. Hillygus, engaged the care givers, neighbors, and social workers and medical professionals in an attempt to represent his client's wishes. A violation of a trial with experts and testimony.

269.     The court appointed a "Free" lawyer, Mr. Dave Spitzer of Washoe County Legal Services, who by the way only practices in front of Judge Frances Doherty, and has hundreds of guardianship cases assigned to him by the Judge. An example of RICO.

270.     This judge is also affiliated with WLS as one of their past presidents, a past executive director for the organization, on the board of directors with attorney Todd Torvinen, and does fundraisers for the organization. More collusion and RICO.

271.     Washoe legal services is an organization that Todd Torvinen was a member of for over TWENTY years and only recently left the organization after the conflict of interest was raised by the filing of a documents pointing out said nepotism and conflict of interest by the court. More RICO activity.

272.     The courts claims no conflict exists and others in the court claim that no nepotism or conflict exists. More false statements.

### *NARRATIVE*

273.     Herbert and Susan Hillygus were not rich by any means, and spent their lives in service of others, as teachers, and tried to teach others as they had their children, that it was their responsibility to be good citizens, care for others, be law abiding citizens, and to rely on the police and courts for protection.

274.   In their life times they were both happy and fulfilled in their lives through their work, their home and their friends.

275.   They have had a good life and if it wasn't for the actions of Judge Doherty, Judge Clifton, their supporting defendants, and the unwillingness of the hierarchy to discipline and control the self-serving rouge elements in their midst, they would have been able to spend the rest of their lives living and loving what they had created.

276.   I was raised by my father and mother to believe and have the faith in the system. That the court system was here to level the playing field and allow all who come before the court to be seen as equals, whether rich or poor, no matter the creed, sex, political affiliation, or their socio-economic position in society.

277.   My father and mother, tried to teach my sister, Robin Renwick, the same values as myself, but were disappointed in the path my sister, Robin Renwick, chose. She chose a path in becoming a self-absorbed, greedy, egotistical person whose only concern is how she appears to the outside world.

278.   This flaw in character caused her to exploit my father, embezzle trust funds, concoct numerous failed schemes of self-enrichment and through her willful and intentional acts cause my father's death with the help of the defendants.

279.   This erratic behavior destroyed her marriage, financially ruined her family, and made her unable to sustain a meaningful relationship. Her behavior caused her son, my nephew, to try to commit suicide and she hid this suicide attempt from the world to save her own narcissistic image.

280.   Lady Liberty, the symbol of the justice system, is wearing a blindfold to symbolize that the evidence that is to be presented to the court shall be weighed on its

merits and that the court itself will not be the one to influence it, as the scales of justice are blind.

281.     That is what I used to believe. I used to have faith in the integrity of the legal system to protect those from exploitation, such as my mother and father, which it has failed to do.

282.     The willful acts of the defendants allowed and supported the actions of those that caused harm and the defendants acts will continue if the federal court does not show that there is integrity in the judiciary still.

283.     I used to have faith that the court would not, and should not, condone perjured testimony, yet on numerous occasions I have seen the courts allow and condone it.

284.     The court, itself, suborns perjury in order for the judge to reach her predetermined decisions.

285.     I used to believe in the rule of law, yet I have seen those rules ignored, and manipulated and used as a means to an end for a legal profession and judge who has no respect for the law or the people. I have seen a judge who on numerous occasions has had ex-parte communication with lawyers involved in this case.

286.     She has allowed the opposing lawyer Todd Torvinen to write many orders that this court has issued thus making these orders non judicial acts as the court neither structured nor correct the self-serving language placed in these orders. .

287.     The opposing counsel has done this without any input by myself or allowing me a superficial reading and response to the flagrantly biased, one sided, and self-serving orders written by the opposing counsel.

288.     As with the orders after hearings, the court signs documents that contain numerous changes from the court's orders from the bench, yet the court never reviews

the documents nor asks for my input, as I am representing myself at this point and have done so for the last two years, for input from both sides is required per NRCP, and WDCR 9 prior to the signing of these official court orders.

289.    This court has used its power as a means to an end of enriching the lawyers that practice before it.

290.    I have heard personal slanders, threats, and oppression under the color of authority from the judge, while she has sat on the bench, such statements as, Roger Hillygus' lack of respect for the family court and its judge, Frances Doherty.

291.    My father, who was at the time determined by physicians to lack his ability to make many decisions for himself, walked out of the first hearing before this judge. In which he had seen the court officers domineer and bully myself and show no concern as to his wishes or the trust documents themselves and he spoke clearly as to my need to "get this issue out of this court. You will never get a fair shake from this woman Judge, she is biased against the opposite sex discrimination and if you stay in that court she will ruin all I have worked for."

292.    I have always respected my father as he was good judge of character. He stated what he believed to be their character as they had presented it in front of him.

293.    After my first hearing in the family court I told my lawyer, "I want this case out of this court and into a real business court of contract or trust law", he insisted by stating, "This was the best court for this matter".

294.    I did not even conceive of the possibility that what he meant was, "this is the best court for this matter, as they will make sure the trust pays my legal bills, my opponent's legal bills and gives us all we want, and need in the way of payments".

295.     If I would have known then, what I know now, I would have removed both of my parents from the jurisdiction of the Nevada court system.

296.     I have received an education in the ways of this corrupt legal system, and the lawyers and judges that exploit the trusts and guardianships that have the misfortune of coming into contact with their system.

297.     This is only possible by the acts of the defendants being supported by those who gave control over them.

298.     These defendants have a duty to discipline and correct the actions of those that are under their control and they are legally responsible for their actions.

299.     I myself have been exploited, lied to, defamed and used by this system and those that make their "living "by being part of it.

300.     I have lost the respect of the practitioners who call themselves protectors of the law and have sworn an oath to uphold the rights afforded to citizens of this great nation.

301.     As the individuals who practice under the guardianship system have perfected the art of slanderous allegations.

302.     Knowing that is all that is needed to convict someone in the Family court system as the rules of evidence do not apply. They have figured out how to use the system of hearsay, innuendos, and false statements to convict someone of a crime without due process all in their pursuit of the all mighty dollar. .

303.     This system has for years been fine tuning its nefarious actions to reap the greatest benefit for all those involved in exploiting people.

304.     As this system is purely set up for the monetarily benefit the guardians, and the lawyers who represent said guardians.

305.    By imposing guardianships on those with money or property the court ensures a never ending source of money and victims.

306.    The police were apathetic and only after persistence can you get them to do a halfhearted investigation of the exploitation and undue influence practiced upon the vulnerable.

307.    This does not include the judges involved, who see themselves as the bullet proof. Until they get caught with blood on their hands, and are forced to retire. This is the exact behavior that is being perpetrated upon the Hillygus Family in this case.

308.    All of this exploitation would not be possible, if it were not for judges like Judge Doherty and the other defendants that have allowed her actions to go unchallenged.

309.    The defendants sponsoring and illegally conscripting individuals who have pre-planned for the future by compiling a trust and placing a family as the power of attorney for healthcare and durable power of attorney for financial decision making is a crime.

310.    She, and the other defendant's, illegal actions have thrown my life into a drastic and seemingly insurmountable turmoil.

311.    The defendants through their actions changed my life, my family's life, the life of my mother and that of my father who was neglected and hastened into an early death. His death was accomplished by his daughter, who the judge said should be his guardian, without even using the resources available from the state to launch an investigation.

312.    It was solely based on a petition written by the divorce attorney for Robin Renwick, Todd Torvinen who knew of her drinking, prescription medication issues and her financial thefts/embezzlement and mismanagement that caused the destruction of her marriage and family.

313.     Any and all of which he knew would have disallowed and barred Robin Renwick as a guardian for anyone.

314.     As she did not meet the legal requirements, or have the moral character to be the guardian of a dog let alone a person in need of guardianship.

315.     Robin Renwick wanted the money that was in the trust, as she had recently divorced and had failed as a real estate agent.

316.     She is only surviving by living in a client's home who she has convinced not to sell their home in the down market, and instead rent it to her. The amount her ex-husband is required to pay in child support and alimony as a result of their divorce decree has a clause placed into the agreement that if she is determined to be squandering the payments by the ex-husband than he is no longer required to make the payments.

317.     In her original petition for guardianship she wanted the trust split giving her control of Herbert Hillygus' portion, of the community property or trust property.

318.     This however, was never accomplished. When she found out she could not get to the money in the trust, she lost interest in her ward and began a pattern of neglect that caused his premature death.

319.     This neglect was brought to the attention of the court, by me, however, the court ignored my pleas for help and allowed Robin Renwick to continue to abuse and neglect her father.

320.     Once she had killed her father she set her sights on her mother and filed a petition to become the guardian of Mrs. Susan Hillygus. The court showed no consideration for the health and welfare of either Herbert Eugene Hillygus, or his wife Susan Hillygus.

321.     The Court was only concerned with the trust and the money therein. This money was intended for her sycophants and they need this money to fund their life style.

322.     Judge Doherty had one goal, that was to empty the trust of every penny that they (the five attorney's appointed by the judge) could possibly get away with.

323.     These orders would leave the settlors destitute and relying on others for their daily needs.

324.     The Judge accomplished this monumental feat by removing Roger Hillygus from his lawful position as trustee.

325.     He refused to pay the lawyers, who sponsored the frivolous litigation, and instead filed the necessary appeals and had positioned the trust for entry into the protection and jurisdiction of the Federal Bankruptcy court.

326.     The court by replacing him with his sister, Robin Renwick, allowed her to empty every investment account, through wire fraud, set aside by the trust for the benefit of the settlors.

327.     Instead she sold every asset she could get her hands on and gave the money to those who claimed to earn it, the lawyers. One of which only filed two documents in the cases a notice of appearance, and an application for fees and costs. Gordon Muir.

328.     The Nevada legislature in 2015 enacted a new regulation affecting the way guardians conduct business known as NRS 628B. It requires those who are private professional guardians and those who are supposed to be in the business of being professionals to be licensed and bonded.  Zusman failed to become licensed in time.

329.     Some of the professionals do in fact follow the law and are registered, bonded and licensed, in order to help their wards.

330.     The court has allow a person, Kaycee Zuzman and her company, who is not bonded, who had not even bothered with doing the paperwork with the state to become legal, let alone to have the people in her office become legally able to work for her in the business.

331.     This became a known fact to Judge Doherty and she excused it just like she has every other action by Kaycee Zuzman, including the theft of property, money and documents by her and her staff which she has admitted to in court.

332.     They accomplished this by breaking and entering my locked vehicle that was sitting on the property owned and lived in by my family.

333.     She has also on numerous occasions committed frauds upon the court, including when she claimed to be the landlord of the Hillygus' Family home and that Roger Hillygus his wife and mother were tenants who did not pay the Rent.

334.     Roger filed notice with the Reno Justice Court that the documents that were submitted to the court to try and accomplish a lock out were fraudulent and that he was legal and rightfully in residence of their family home.

335.     Judge Frances Doherty has failed myself, my family, society, and the generations to come in my family and even failed the court system itself.

336.     The whole sale theft of my family's assets and the depriving of those that my parents had determined and wished to help through the distribution of their trust.

337.     My parents were convinced to establish a trust, by Steve Moss Esq., who after many billable hours and at a great expense helped my father and mother determine what assets they would need to have placed into their trust.

338.     He helped determine who would be the successor trustee and who would be the power of attorney.

339.    He and my mother established the best way for their wishes to be carried out when they were no longer able to make decisions for themselves.

340.    The first and most crucial of those issues was to determine, who the most trusted person that they knew?  Who would guard them from being exploited in their later years? They selected their son, me, Roger Hillygus.

341.    As a boy, I was honest to a fault and showed compassion for those around me. I had proven myself,  throughout his life, not only to care for others, more than his own self, and when the chips were down they knew that I would be there for them.

342.    I have held my ground and Stood on principle, told the truth and expected justice to prevail even when a group like the defendants have put their joint effort into distorting all my family has worked for.

343.    When others confronted with this same scenario would have succumbed to the pressure of an elite group of defendants I did not allow them to break my will.

344.    Without court involvement, the establishment of a working criminal conspiracy and allowing the court to have jurisdiction, they cannot get the signed order approving their application for fees and costs.

345.    This is problematic for it encourages an escalation of the issues, which increase litigation cost and ensures all players benefit financially from the trumped up emotional drama.

346.    If you are one of the select few welcomed into the conspiracy, this is a great system for all those involved individuals.

347.    The power that is derived, by dictating how, who, why, where ones money will be spent even knowing that it is in direct violation of the rights of the person who had guardianship imposed on them.

348.     This is the incentive that drives the judges, and the driving forces behind the abuse by the judges and the other defendants.

349.     There are those who rely on guardianship orders for their income, knowing they will not be paid if they do not impose a guardianship upon the vulnerable disabled individual.

350.     If it were not for Judge Doherty's ties to WLS Dave Spitzer Esq. would be without any cases, and therefore without a paycheck.

351.     By not rocking the boat or to actually fighting to protect his client's rights by opposing a guardianship he is the defendants go to guy with regards to guardianship appointments. Remember, guardianship is good for the court because it knows better how to care for and spend someone else's money.

352.     This is a great system and it even works better for the judge when she wants to force an action on someone who she lacks any legal authority over.

353.     This she did when she ordered that Debbie Hillygus, who holds a legitimate promissory note and deed of trust against the title on the Hillygus trusts property, Judge Doherty order her to participate in a forced illegal attempt at judicial extortion.  Judge Doherty ordered in a closed secret ex-parte meeting excluding Roger, even though he is the person who was served and used as the defendant in the motion to set aside the facts of a trustee, but he was held outside the court room by bailiffs that kept him from even talking to his wife.

354.     This negotiation was accomplished by coercion, threats, extortion and the use of an arbitrator that had a monetary outcome in the note being removed from the title on the house.

355.     The judge withheld the pertinent information that she had no legal authority to alter the note or have it removed.

356.     This forced stipulation would be arbitrated by the GAL Ryan Earl Esq... Who had a financial interest in seeing the note set aside, along with Todd Torvinen, Kaycee Zusman, and Dave Spitzer?

357.     This appointed lawyer, Ryan Earl Esq. was appointed by Judge Doherty as guardian ad litem, who has presented outrageous bills to the court, and uses a combination of over billing and double billing as a way of creating his income.

358.     He was appointed to represent both Herbert Hillygus, and now his wife Susan Hillygus. Judge Doherty just recently approved Ryan Earl's most recent billing in excess of seventeen thousand dollars. THIS IS NOT BAD FOR REPRESENTING A CLIENT THAT DAVE SPITZER ESQ. CLAIMED HE COULD NOT FORM AN ATTORNEY CLIENT RELATIONSHIP WITH.

359.     This individual who claims to be of sound legal mind is the one who Judge Doherty sees as an unbiased arbitrator.

360.     The court fails to disclose that the only way that all five of the courts appointed lawyers get paid is to sell the house of Susan Hillygus.

361.     It has been proven that in the past some judges have been given direct contribution to their reelection campaigns from those that practice before them, but that practice seemed more like buying a judge, than those involved were comfortable with.

362.     Now the lawyers direct the clients to contribute to reelection campaigns along with lawyers contributing to PACS that do contributions to judges.

363.     There have been judges that take numerous trips abroad, all-expense paid of course, as compensation from happy lawyers that have been awarded large legal fees by that Judge.

364.     They have even caught one Judge who was taking out home improvement loans against his home, only to have that note against his home mysteriously paid off by third parties.

365.     There is a lot of money being exchanged, more than from just from the Hillygus Trust, many others, and one of the first questions at the first hearing before Judge Doherty she asked the parties was "Just how much money is there in this trust?" That was a real unusual question from a judge that had no legal basis for keeping this trust under the control of the court.

366.     When Appellant herein Roger Hillygus, after consulting with the investment advisors, tax accountants, lawyers and business professionals paid off the note against the family home he left his mother in a position where none of her income was going out to be paying on a high interest loan.

367.     This fiduciary decision infuriated the judge and the Lawyers. This paying off the home was also done to position The Hillygus Family Trust, and Susan Hillygus, in a position of entering bankruptcy protection and having a federal Judge Take charge of the actions of Judge Doherty.

368.     As a fiduciary he was to protect the trust and allow it to do what it was intended to do and protect the settlors, and see Susan Hillygus through till the end of her life in her own home.

369. When Roger Hillygus announced to the judge and the legal team of lawyers that the Hillygus Family Trust was being positioned to enter bankruptcy the judge removed Roger Hillygus as trustee and guardian.

### FACTS REGARDING PROMISSORY NOTE

370. In August 1993, H. Eugene Hillygus ("Gene") and his wife Susan L. Hillygus ("Sue") formed a revocable trust and then restated that trust in August 2011, which is entitled "The Hillygus Family Trust, Restated, Dated August 17, 1993" (the "Hillygus Trust").

371. The Hillygus Trust. Gene and Sue had only two children from their marriage—Robin Hillygus-Renwick ("Robin") and Roger Hillygus ("Roger"). The Hillygus Trust expressed Gene and Sue's intent that in the event that neither of them was able to act as a Trustee of the Hillygus Trust then their son, Roger, would serve as the Successor Trustee of the Hillygus Trust.

372. The Hillygus Trust obligated the Trustee to, in his/her discretion, use so much of the net income and any portions of all of the principal of the Hillygus Trust for the support, comfort, and welfare of Gene and Sue in their accustomed manner of living or for any other purpose the Successor Trustee believed to be in Gene and Sue's best interest.

373. The Trustee is also expressly granted the authority to borrow money for any purpose and to mortgage or pledge any trust property.

374. Furthermore, the Trustee is granted the authority to execute contracts, notes, conveyances, and other instruments.

375. Finally, the trustee had the authority to exercise all other rights, power, and privileges, not inconsistent with the Hillygus Trust agreement, then granted to a Trustee

under NRS Chapter 163 and any future additions thereto even though said law may be repealed after the Hillygus Trust went into effect.

376.     Since Debbie married Roger, they both have been very active participants in the lives of Gene and Sue.  Debbie and Roger would typically travel to Gene and Sue's home twice a week and on the weekend to spend time with Gene and Sue. Debbie and Roger would regularly visit and spend time with Gene and Sue and even traveled, vacationed, and camped with them throughout the years.

377.     Beginning in 2011, Debbie and Roger started to notice that Gene and Sue were requiring more and more assistance as they aged. Finally, in or about March of 2013, Roger, Debbie, Gene, and Sue sat down and had conversation about Gene and Sue's options and preferences for their care moving forward.

378.     Gene and Sue explained that they did not desire to either move into Roger and Debbie's mother-in-law's cottage at their house in Dayton or a retirement home. Both Gene and Sue expressed their desire to stay in their home of over 40 years with the support of family.

379.     During the conversation in March 2013, both Gene and Sue were adamant that they desired to have Debbie care for them and that Debbie should be paid for her time in caring for them.

380.     They expressed that they wanted to compensate Debbie for all the work she would do around the house, including cooking, cleaning, laundry, and tracking their medical needs.

381.     Gene and Sue told Debbie to keep track of her time and that they would pay her $20 an hour during the week and $30 an hour on weekends.

382. Based upon Debbie's relationship with both Gene and Sue, coupled with her desire to try to fulfill Gene and Sue's wishes, Debbie agreed and accepted Gene and Sue's offer.

383. Initially, Debbie did not track her time but as Gene and Sue's needs continued to grow, Debbie realized the extent to which they desired her to help. Beginning in July 2013, Debbie began tracking her time of taking care of Gene and Sue.

384. As Gene and Sue aged, they started to grow apart and no longer desired to live together. After a family conversation including Gene, Sue, Roger, and Robin, everyone decided that Gene would move to Lakeside Manor Care, which he did in December 2013. The four individuals discussed other options such as an apartment or another single-family residence, but ultimately decided he was unable to independently care for himself.

385. By the end of 2013, Debbie had contributed and worked in excess of 730 hours with over 50 of those hours being worked on weekends.

386. In February 2014, Sue was hospitalized and following her hospitalization stayed with her friend Kathleen.

387. During this time, Gene's then counsel, Mr. Moss, filed an eviction notice seeking to remove Sue from the home causing Roger and Debbie to move Sue to their home in Dayton in early March.

388. While Sue was in Dayton, Debbie helped Sue in the mornings with bathing, dressing, medications, and breakfast.

389. When Debbie returned home from a full work day, she would continue to care for Sue by again cooking, caring for, and helping Sue get ready to go to bed.

*390.*   On May 21, 2014, Roger, with the assistance of counsel, executed a Notice Confirming Appointment of Successor Trustee in which Roger accepted the appointment as Successor Trustee pursuant to the Hillygus Trust.1At this point, upon the advice of counsel, Roger reasonably believed he was the Successor Trustee of the Hillygus Trust.

*391.*   Sue repeatedly asked Debbie to take care of her full time. In May 2014, Sue, Debbie and Roger discussed Sue's request for Debbie's full time assistance.

*392.*   The three agreed that Debbie would (1) help Sue full time, (2) give notice that she was resigning her employment position in June, and (3) cease working outside the home in July 2014 so that Debbie could take care of Sue full time.

*393.*   On May 26, 2014, Debbie's agreement to provide caretaking services was formally reduced to writing in an employment agreement.

*394.*   The Employment Agreement was executed by Roger as Successor Trustee of the Hillygus Trust. Within the Employment Agreement, the Hillygus Trust and Debbie confirmed that the written agreement was a continuation of the prior verbal agreement.

*395.*   In June 2014, the Hillygus Trust executed a promissory note in favor of Debbie in the principal amount of $21,760 in exchange for the care giving services provided from July 1, 2013 through December 31, 2013 (the "2013 Note").

*396.*   The 2013 Note was due on or before January 1, 2024.  The Note contained an attorneys' fees provision and was secured by a deed of trust encumbering the Hillygus Trust's real property asset. Deed of Trust and Assignment of Rents Securing Promissory Note executed June 12, 2014. The 2013 DOT, while attached to the property, was not recorded.

397.     During 2014, Debbie had contributed and worked over of 3,000 hours with more than 1,000 of those hours being worked on weekends or as overtime.

398.     Debbie performed typical caretaking services including bathing, cooking, cleaning, shopping, companionship, ensuring medications were taken accurately and timely, and transportation to medical appointments.

399.     Rather than paying Debbie immediately, on January 1, 2015, the Hillygus Trust provided Debbie with a Promissory Note in the amount of $76,010 for services rendered from January 1, 2014 to December 31, 2014 ("2014 Note").

400.     The 2014 Note was due on or before January 1, 2025. The Note contained an attorneys' fees provision and was secured by a deed of trust encumbering the Hillygus Trust's real property asset ("2014 DOT").

401.     Ex. 9; Deed of Trust and Assignment of Rents Securing Promissory Note executed January 1, 2015. The 2014 DOT, while attached to the Property, was not recorded.

402.     From January 2015 through November 2015, Debbie had contributed and worked more than 2,000 hours with over 840 of those hours being worked on weekends or as overtime.

403.     During 2015, Debbie received payments as set forth in the Summary.

404.     At the end of November 2015, the Hillygus Trust provided Debbie with a Promissory Note in the amount of $160,882.21 for all services rendered from July 2, 2013 to November 30, 2015 after taking into account the amounts that had been paid during 2015 and the accrued, unpaid interest in the 2013 Note and 2014 Note ("2015 Note").

405.     The 2015 Note was due and payable thirty days after written demand by Debbie.

406.  The Note contained an attorneys' fees provision and was secured by a deed of trust encumbering the Hillygus Trust's real property asset ("2015 DOT").

407.  Deed of Trust and Assignment of Rents Securing Promissory Note executed November 30, 2015.  The 2015 DOT, while attached to the Property immediately, was not recorded until March 15, 2016.

408.  Once the 2015 Note was executed, the 2013 Note and 2014 Note were deemed satisfied.

409.  Beginning in January 2016, Debbie attempted to reach an accord with the Hillygus Trust concerning the outstanding amounts owed to her for caretaking services.

410.  Debbie sought payment for her care giving services, expenses she paid on Sue's behalf, and for appropriate tax documentation related to her compensation.

411.  Debbie's attempts were unsuccessful. Rather than attempting to resolve the amounts owed to Debbie, the Hillygus Trust filed the Petition to Set Aside Acts of Trustee with this Court seeking to unwind the 2015 Note and 2015 DOT without any indication of its intent to compensate Debbie for the significant time commitment she made to Sue.

412.  In August of 2016, Debbie issued written demand for payment of the amounts owed pursuant to the 2015 Note.

413.  To date, Debbie has not been paid in full for the services she rendered in the amounts set forth in the 2015 Note and the attached summary.

## *PROCEDURAL HISTORY*

414.  On January 14, 2014, Gene filed a petition was seeking to appoint Adam Clark as the successor trustee of the Hillygus Family Trust.

415.     Petition Regarding Administration of Revocable Trust filed on January 14, 2014. At a hearing on March 13, 2014, Gene, Roger, and Sue through their respective counsel agreed to continue or vacate the hearing related to the petition regarding administration of trust.

416.     On May 21, 2014, Roger, upon the advice of counsel, executed a Notice Confirming Appointment of Successor Trustee in which Roger accepted the appointment as successor trustee pursuant to the Hillygus Trust.

417.     Objection to Petition Regarding Administration of Revocable Trust filed in this matter on June 18, 2014.The next day, Gene re-noticed the hearing on his petition to administer the Hillygus Trust.

418.     Notice of Hearing: Petition Regarding Administration of Revocable Trust filed in this matter on May 22, 2014.

419.     Roger opposed the petition with respect to the appointment of Adam Clark because the amendment adding Adam Clark as the successor trustee was invalid. Objection to Petition Regarding Administration of Revocable Trust filed in this matter on June 18, 2014.

420.     Following a hearing on June 18, 2014, the Court assumed in rem jurisdiction of the Hillygus Trust pursuant to NRS 164.010(1) and confirmed that Roger was the duly acting Successor Trustee of the Hillygus Trust pending a trial concerning his sister's objections to his appointment.

421.     The Court, Sue, through counsel, and Robin Renwick, through counsel, were informed at least as of September 9, 2014 that Roger and Debbie had moved into Sue's residence to assist with Sue's care.

422.     Mediation was held in or about October 2014 in the related guardianship matters. While Debbie was physically present, she was not there to participate substantively, was not represented by counsel, did not participate in the mediation, and was solely there as emotional support for her husband.

423.     Ultimately, there was no settlement or agreement reached in October 2014 with respect to compensation to be paid to Debbie for the care she was providing to Sue.

424.     If a draft settlement agreement was transmitted between the parties at that point, Debbie was not privy to that information nor was she informed of the terms of that proposed settlement.

425.     Trial was set in this matter on February 23, 2015, but the parties stipulated and the Court Ordered to convert the trial to a settlement conference to take place on February 23, 2015 instead.  A violation of mediation and rights to trial.

426.     A settlement conference/mediation took place on February 23, 2015.  Stipulation Regarding Settlement Agreement filed in this matter on June 24, 2015.  The following individuals were present at the mediation: Robin Renwick and her counsel Todd Torvinen, Esq.; Roger Hillygus, with his counsel Michael Keane, Esq.; Susan Hillygus with her counsel Gordon Muir, Esq.; Ryan Earl as guardian ad litem for Gene Hillygus. Id. Debbie and Gene were not present.  Not valid as all parties not present.

427.     The settlement confirmed that Roger would continue to serve as the Successor Trustee for the Hillygus Trust.  Id.; Minutes from February 23, 2015 filed in this matter on December 14, 2015.  The stipulation, to which Debbie was not a party or signatory, provided. Again invalid not all parties not present.

428.     Roger and/or Debbie Hillygus shall be compensated for their services as caregivers for Sue in the amount of $3,400 per month beginning March 1, 2015.  Roger

and Debbie Hillygus shall at their discretion determine which portion of the above-mentioned fees shall be allocated between them according to the services they each performed.   Roger and Debbie Hillygus will maintain records of the services provided, including date, time spent, and a description of services provided and said time records shall be submitted with each annual accounting in support of the fee payments.

### *FORCED STIPULATION FILED IN THIS MATTER ON JUNE 24, 2015*

429.     In November 2015, Robin, through counsel, filed a Petition seeking, among other things, to remove Roger as the Successor Trustee of the Hillygus Trust.  Petition for Redress of Breach of Trust and Removal of Guardian filed in this matter on November 25, 2015.

430.     The Petition seeking removal of Roger contains no certificate of service and there is no indication in the docket that Roger was ever served with it.

431.     Nonetheless, Roger challenged Robin's efforts to remove him as trustee in mid-December 2015.  Respondent's Response to Petition for Redress of Breach of Trust and Removal of Guardian and Counter Claim filed in this matter on December 17, 2015.

432.     In late December 2015, the Court removed Roger as trustee during a hearing, which was later set forth in a written order.  Minutes from hearing dated December 22, 2015 filed in this matter on January 4, 2016; Order Removing Trustee and Appointing Temporary Trustee of the Hillygus Family Trust filed in this action on December 23, 2015.

433.     The December 2015 order removing Roger as trustee specifically required that the payments to Roger and Debbie for care giving to Sue continue pending further Court order.  A violation of order which never happened.

434.     Robin was to serve as the temporary successor trustee until subsequent order.  Id. That subsequent order was filed April 20, 2016 and placed Fiduciary Services of Nevada, LLC as the successor trustee once they took the necessary oath and accepted the position.  Order After February 9, 2016 Hearing filed in this matter on April 20, 2016. Ultimately, Kaycee Zusman was appointed as the Successor Trustee of the Hillygus Trust.

435.     In July 2016, the Hillygus Trust, acting though its trustee Kaycee Zusman filed a petition to set aside the Note and Deed of Trust. See Petition to Set Aside Acts of Trustee filed in this matter on July 21, 2016.

436.     Despite NRS 164.033(4)2,at no time prior to Debbie's formal notice of appearance in this action on December 9, 2016 had the Hillygus Trust served Debbie with notice that the Hillygus Trust intended on invalidating the 2015 Note or the 2015 Deed of Trust that were provided in consideration of the services she provided to Sue.

437.     After making a limited appearance as an interested party, the parties agreed to continue the hearing on the Petition to Set Aside Acts of Trustee until February 21, 2017 at 2:00 pm.

438.     The primary purpose for the extension was to allow Debbie to submit a written opposition to the Successor Trustee's Petition to Set Aside Acts of Trustee.

439.     However, counsel for the Successor Trustee also wished to supplement his client's Petition to include additional legal analysis.

440.     Counsel for Debbie and the Successor Trustee agreed that the Successor Trustee would submit his supplemental authorities on or before January 19 and that Debbie would file her Opposition ten court days, plus any extension for manner of service.

441.     Interestingly, on December 8, 2016, Robin filed an accounting for the time during which she acted as the Trustee of the Hillygus Trust.

442.     Accounting for Robin Renwick's Time as Temporary Trustee filed in this matter on December 8, 2016.

443.     While the Successor Trustee, Ms. Renwick compensated at least eight different people for care giving services provided to Sue without prior request or approval from the Court.

444.     So of those individuals, such as Monica Fletes was compensated $15 per hour while others were compensated at $24 per hour and $36 per hour for any overtime.

### *LEGAL ANALYSIS*

445.     The Successor Trustee's Petition to Set Aside Acts of Trustee asks this court to assert its limited in rem jurisdiction over the 2015 Note and 2015 Deed of Trust to set them aside.

446.     There is no other relief requested by the Successor Trustee.   While the Supplemental Petition includes additional arguments, they do not modify, amend, or adjust the Court's jurisdiction or the requested relief.

447.     The 2015 Note and 2015 Deed of Trust were not improper, were supported by consideration, and should not be set aside.   The Successor Trustee's Petition to Set Aside Acts of Trustee should be denied in its entirety.

448.     The Family Court Lacks Jurisdiction over the 2015 Promissory Note and 2015 Deed of Trust Because They Are No Longer Part of the Court's In Rem Jurisdiction. Also, they lack jurisdiction of the person of Debbie Hillygus.

449.     Once this court falsely claimed to have assumed jurisdiction of the Hillygus Trust, it could only have assumed jurisdiction as a proceeding in rem.  NRS 164.010(1).

450.      As recently confirmed by the Nevada Supreme Court, the District Court's in rem jurisdiction does not allow it to enter orders concerning property that no longer belongs to the trust and precludes it from entering personal judgments against individuals.  In Re Aboud Inter Vivos Trust, 129 Nev. Adv. Op. 97, 314 P.3d 941, 945 (2013).  In rem jurisdiction permits the district court to enter judgment against specific property; in contrast, in personal jurisdiction permits the district court to enter a judgment against a person.

451.      It appears the Successor Trustee is relying upon In Re Aboud Inter Vivos Trust to assert a constructive trust over property that the Hillygus Trust no longer owns or controls—the 2015 Note and 2015 Deed of Trust.  See Supplemental Petition at 8. However, as acknowledged in In Re Aboud Inter Vivos Trust, a Trust can only maintain a constructive trust when (1) the trustee breached their fiduciary duty by improperly transferring assets to a third party; (2) the third party had notice of the Trust; and (3) the third party had notice of a breach of a duty by the trustee.  Id. at 945; NRS 163.115(1) (f) (A court may set aside the acts of a trustee only if the trustee breached the trust").

452.      The Successor Trustee must prove each element to prevail in asserting a constructive trust over the 2015 Note and 2015 Deed of Trust.

453.      If the trustee fails to do so or when the court finds that the trustee transferred the trust assets with authority, the transfer operates to pass the legal and equitable title to the purchaser outside the Court's reach of in rem jurisdiction.

454.      In In Re Aboud Inter Vivos Trust, all beneficiaries of the subject trusts consented to the transfer of all trusts' assets to a Limited Partnership in consideration for the two trusts acquiring an ownership interest in the Limited Partnership. ID. at 942.

455.     The Limited Partnership then transferred those same assets to a Corporation without the consent of all trust beneficiaries and in exchange for two promissory notes and the renunciation of one of the beneficiary's beneficial interest. Id. at 942-43.

456.     After the transfer to the corporation, the Court assumed jurisdiction of both the subject trusts and, after a hearing and receiving accountings, enter an order finding a breach of trust for transferring the assets from the Limited Partnership to the Corporation.  The District Court entered a judgment against the Corporation and Betty Jo, who was the former trustee of the trusts and the general partner of the Limited Partnership, jointly and severally in the sum of $782,078.98.

457.     The District Court also imposed a constructive trust over the assets that were transferred from the subject trusts, to the Limited Partnership, and by the time the judgment was entered, were in the hands of the Corporation.

458.     The District Court based its decision on a finding that Betty Jo breached both her duty as general partner and as a trustee of the two trusts.

459.     The Nevada Supreme Court invalidated the constructive trust over the transferred assets because the transfer from the two subject trusts to the Limited Partnership was proper; and since the transfer was proper, the only remaining trust assets were ownership interests in the Limited Partnership.

460.     Because the transfer from the two subject Trusts to the Limited Partnership was proper, the District Court's in rem jurisdiction could not extend to the assets acquired by the Corporation.  Likewise, the Nevada Supreme Court voided the $782,078.98 personal judgments against Betty Jo and the Corporation because it was a judgment against them personally and not against any trust property therefore exceeding the District Court's in rem jurisdiction over trust assets provided by NRS 164.010(1) and NRS 164.015(6).

461.     Similarly in this action, this Family Court assumed only in rem jurisdiction of the Hillygus Trust pursuant to NRS 164.010(1).  As in In Re Aboud Inter Vivos Trust, this Court lacks jurisdiction to enter a personal judgment against Debbie, or any other party for that matter.  It also lacks the ability to assert any jurisdiction over the 2015 Note and 2015 Deed of Trust unless it finds (1) Roger, as trustee of the Hillygus Trust, breached his fiduciary duty by improperly transferring assets to Debbie; (2) Debbie had notice of the Trust; and (3) Debbie had notice of Roger's breach of trust. NRS 163.115(1) (f) (A court may set aside the acts of a trustee only if the trustee breached the trust").

462.     If the Court does not make these findings, then it lacks the ability to assert a constructive trust over the 2015 Note and 2015 Deed of Trust requiring the parties to resolve their differences, if necessary, through a separate civil action.  NRS 164.033(2) (The Court shall not grant a petition concerning trust property if the court determines the matter should be determined by civil action).  As set forth below, there was no breach of trust and, even if there were, Debbie did not have notice of Roger's alleged breach.

463.     The 2015 Note and 2015 Deed of Trust Were Not Improper Because Roger Possessed the Ability and Obligation to Ensure Care for Gene and Sue by Compensating Debbie for Her Time.

464.     To bind a principal, the agent must have actual authority, express or implied, or apparent authority.  Dixon v. Thatcher, 103 Nev. 414, 417, 742 P.2d 1029, 1031 (1987). Apparent Authority is that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence.

465.     Roger had the express authority to provide for the care of Sue and Gene and to compensate Debbie for doing so with the 2015 Note and 2015 Deed of Trust.  Prior to

entering into the employment agreement, Roger had been informed and the world had been put on notice that Roger was the acting trustee of the Hillygus Trust pursuant to the Notice confirming Roger's appointment as trustee of the Hillygus Trust, which was recorded in Washoe County on May 22, 2014. Likewise, this Court confirmed his appointment in July 2014.

466.    The Hillygus Trust provides that a trustee has the power and obligation as provided in the Hillygus Trust instrument, expressed by law, or granted by the court upon petition.

467.    The Hillygus Trust obligates the Trustee to use the Hillygus Trust's assets to ensure the support, comfort, and welfare of Gene and Sue in their accustomed manner of living or for any other purpose the Trustee believed to be in Gene and Sue's best interest during any time in which Gene and Sue were incapacitated. The Trustee is also expressly granted the authority to borrow money for any purpose and to mortgage or pledge any trust property. Furthermore, the trustee is granted the authority to execute contracts, notes, conveyances, and other instruments.

468.    The Hillygus Trust also provides that the Trustee had the authority to exercise all other rights, power, and privileges, not inconsistent with the Hillygus Trust agreement, then granted to a Trustee under NRS Chapter 163 and any future additions thereto even though said law may be repealed after the Hillygus Trust went into effect. Applicable statutes allow the Trustee to make payment in money or in property for the benefit of an incapacitated person for the support or maintenance of the incapacitated person. NRS 163.400(1)(b).

469.    Here, Sue and Gene while they were lucid and then Roger once he became the trustee of the Hillygus Trust employed Debbie to serve as, initially a part time care taker

and then transitioning into a full-time care taker.  In the summer of 2014, Debbie resigned her employment position based upon these representations to be compensated for her time so she could devote more of her time to taking care of Sue.  There can be no legitimate dispute that Roger had the authority to employ an individual, including Debbie, to care for Sue.  His authority in this regard is not limited simply because Debbie is married to Roger.

470.     There is no indication that Debbie's rates were unreasonable, that Debbie did not spend the time indicated on the attached timecards, or that Debbie failed to perform the services in an acceptable fashion. In fact, according to the accounting filed in this matter on December 8, the rates charged by Debbie were less than the amounts charged by Sue's primary in home care givers acquired by the Successor Trustee. See Exhibit 8 to Accounting for Robin Renwick's Time as Temporary Trustee filed in this action on December 8, 2016.  Debbie provided services to Sue, and to a lesser extent Gene, for which she is entitled to compensation as a matter of law.

471.     The Successor Trustee's argument and reliance upon NRS chapter 159 is misplaced.  NRS Chapter 159 only applies to actions done by an individual in his/her capacity as a guardian, not in a capacity as a trustee of a trust.  Rather, acts of a trustee are governed by NRS Chapter 164.

472.     Accordingly, had Roger been appointed only as the Guardian and was acting in his capacity as a guardian when he entered into the employment agreement with Debbie, the 2015 Note, or the 2015 Deed of Trust, then arguably he could have been required to seek court approval pursuant to NRS 159.113.

473.     However, the express terms of the Hillygus Trust and applicable portions of NRS Chapter 164 provide Roger with the ability to provide for the support of his mother

Sue including entering into an employment arrangement with Debbie and providing for a manner of payment to Debbie.

474.     In any event, Roger had the apparent authority to provide for the care of Sue and Gene and to compensate Debbie for doing so with the 2015 Note and 2015 Deed of Trust.  The trustee of a trust is held out to the world by the trust as having the ability to ensure care for and to compensate others for the care of the trust's settlers.

475.     A subsequent trustee must be estopped from denying and refusing to compensate a prior care giver for services rendered simply because the caregiver may have some family relationship to the settlor or Successor Trustee. This would preclude settlors from being taken care of by the chosen caregivers in situations such as this.  Accordingly, as a matter of law, Roger had the actual, express authority and at the very least the apparent authority to provide the 2015 Note and 2015 Deed of Trust to Debbie as compensation for services she rendered for almost three years.

476.     Debbie Did Not Know Roger Was encumbering the Hillygus Trust by Executing the 2015 Note and 2015 Deed of Trust.

477.     Roger had the express and at least the apparent authority to act as Trustee when he entered into the employment agreement on behalf of the Hillygus Trust with Debbie and when he provided the 2015 Note and 2015 Deed of Trust as consideration for services Debbie rendered.

478.     The Trustee makes no argument about how Debbie could or should have known that Roger was acting without authority.  Debbie knew before she entered into the employment agreement that Roger as vested as the Trustee pursuant to the Notice Confirming Appointment of Successor Trustee and shortly after entering into the Employment Agreement that even the Court confirmed that Roger was the trustee.

Additionally, ever since Roger was removed as Trustee, the current Successor Trustee has paid individuals for caretaking services without prior court approval.

479.     Without analyzing the applicable law, the now Successor Trustee is now attempting to unwind the compensation Debbie received and was owed due to the care she provided to Sue and to a lesser extent Gene. The Successor Trustee's attempts in this regard are inappropriate, meritless, and should be denied.

### *STIPULATION DID NOT LIMIT THE AMOUNTS OWED TO DEBBIE FOR THE CARE SHE PROVIDED*

480.     It appears the now Successor Trustee attempts to use the Stipulation Regarding Settlement Agreement (the "Stipulation") as grounds to refuse to compensate Debbie for the time she contributed to Sue as an employee. While the Stipulation reached in February 2015 contained a provision concerning compensation for providing care to Sue, that provision is silent concerning the amounts owed for past care that Debbie provided to Sue, and to a lesser extent Gene. The Stipulation does not invalidate, limit, or otherwise hinder Debbie's claims for labor that she provided prior to the Stipulation.

481.     Likewise, Debbie was not involved with and never consented to the Stipulation. She did not attend the mediation that occurred on February 23, 2015.

482.     There can be no dispute that a person's right to notice and an opportunity to be heard are paramount. Soebbing v. Carpet Barn, Inc., 109 Nev. 78, 83, 847 P.2d 731, 735 (1993).

483.     Debbie's contractual rights cannot be infringed and invalided without her agreement or without due process afforded to her such as a notice and a hearing. The Court and the signatories of the Stipulation lack the ability to retroactively unwind the amounts Debbie was contractually and equitably due.

484.     The Successor Trustee includes a screen shot of a "Draft Mediated Agreement" from October 2014. The citation to a "draft mediated agreement" in an apparent attempt to bind Debbie to the Stipulation that was entered months later and after subsequent settlement efforts.

485.     The Draft Mediated Agreement is irrelevant and provided in violation of Nevada's evidence code.

486.     While Debbie was physically present at only one of many settlement conferences in the fall of 2014, she did not participate, was not represented, and was present solely to emotionally support her husband during a single settlement conference.

487.     As this Court acknowledged in its Order after Hearing after the "Draft Mediated Agreement" was apparently circulated, despite participating in mediation, the parties were unable to settle.

488.     Order after Hearing filed in GR14-00158 on January 14, 2014. Likewise, the contents of the "Draft Mediated Agreement" are inadmissible settlement negotiations pursuant to NRS 48.105, which precludes evidence of conduct or statements made in compromise negotiations.

489.     Ultimately, the language relied upon by the Successor Trustee in the "Draft Mediated Agreement" to imply that Debbie was somehow part of the Stipulations entirely absent from the final draft which was actually entered in this matter.

490.     Simply put, whether Debbie attended an unsuccessful mediation in the fall of 2014 is wholly irrelevant to determining whether she is entitled to compensation for services she rendered and any reference to the "Draft Mediated Agreement" violates NRS 48.105.

491.    If the Court sets aside the 2015 Note and 2015 Deed of Trust, It Subjects the Hillygus Trust to Debbie's Legal Claims to Reimbursement for Services She Provided

492.    The Petition seeks to have the 2015 Note and 2015 Deed of Trust set aside yet remains silent concerning how to address Debbie's claims against the Hillygus Trust for compensation if it does.

493.    Debbie entered into agreements with Gene, Sue, and the Hillygus Trust for her to take care of Gene and Sue in exchange for an hourly wage.  In fact, Debbie even resigned her employment at Sue's request so she could devote more time to Sue.

494.    There is no question that the Hillygus Trust has an obligation to Debbie to compensate her for her time.

495.    If the 2015 Note and 2015 Deed of Trust are invalidated, then it would subject the Hillygus Trust to breach of contract, unjust enrichment liability, and/or hour and wage violations.

496.    Debbie's claims for reimbursement and payment are not within this Court's jurisdiction pursuant to NRS 164.010, In Re Aboud Inter Vivos Trust, 129 Nev. Adv. Op. 97, 314 P.3d 941 (2013).  Accordingly, the Court should decline to address those claims pursuant to NRS 164.033(2).

### _DEBBIE HAS NOT COMMITTED ELDER ABUSE_

497.    In passing in the original Petition, the current Successor Trustee argues that "the acts of Roger and Debbie Hillygus described herein are financial abuse and exploitation of a vulnerable person or an older person pursuant to NRS 41.1395." Petition at 6:7-9.

498.    The Successor Trustee attempts to expand upon this argument in her Amended Supplemental Points and Authorities.

499.     However, the attempt to include additional argument in the Amended Supplemental Points and Authorities is untimely and should be ignored by the Court.

500.     As explained previously, the Court lacks in personal jurisdiction precluding it from entering a judgment against Debbie.   Additionally, there is no analysis or explanation of how Debbie or Roger committee elder abuse.

501.     The Successor Trustee only includes conclusory allegations without an explanation.   Certainly, providing caretaking services and compensation for those services cannot be considered elder abuse.

502.     Debbie has committed and expended substantial time and effort towards caring for Sue, for which she is entitled to reasonable compensation.

503.     Neither Debbie nor Roger exploited Sue by having Debbie, at Sue's express request and desire, provide caretaking services to Debbie.

504.     It was Sue and Gene that were adamant that Debbie be compensated for her time she contributed to them.

505.     Assuming jurisdiction, Attorneys' fees and costs are only appropriate if the Successor Trustee can demonstrate that the person who exploited the vulnerable person acted with recklessness, oppression, fraud, or malice. NRS 41.1395(2). There cannot be no such finding here given the circumstances.

506.     Debbie provided thousands of hours of care to Sue for which she was compensated by the 2015 Note and 2015 Deed of Trust.

507.     It cannot be recklessness, oppression, fraud, or malice to provide caretaking services to an individual and for that individual's trust to provide compensation in return.

508.     Neither Debbie nor Roger exploited either Sue or Gene when Debbie was provided the 2015 Note and 2015 Deed of Trust.  The Court should not and cannot enter a judgment against Debbie for exploitation of a vulnerable person.

### ***DEBBIE HAS NOT BREACHED A FIDUCIARY DUTY*** ATTORNEY JOHN FUNK HAS BREACHED HIS CONTRACT AND FIDUCIARY DUTY.

509.     Debbie nor Roger breached any fiduciary duty nor was the 2015 Note and 2015 Deed of Trust the result of fraud, duress, or undue influence.

510.     John Funk breached his fiduciary duty, his contract and through deceptive trade practices failed to inform his client of a huge conflict of interest with Washoe Legal Services. As one of his partners at the firm of the Gunderson Law Firm is the President of Washoe Legal Services. One Austin K. Sweet. Funk also failed to obtain waivers from individuals who he has previously represented against his client.

511.     The Successor Trustee relies upon NRS 155.0973 as a basis to find a fiduciary relationship and in support of invalidating the 2015 Note and 2015 Deed of Trust.  That statute and its presumption that a transfer if void is only applicable or appropriate, with respect to a transfer to a caregiver, when the transferor is a dependent adult.

512.     NRS 155.097(2) (b).  Moreover, NRS 155.097 does not make or create a fiduciary relationship between a caregiver and the person to whom they provide services.  It merely creates an avenue to unwind certain transactions in a limited set of circumstances.

513.     NRS 155.097 is not applicable to the 2015 Note and 2015 Deed of Trust.  The transferor of the 2015 Note and the 2015 Deed of Trust was the trustee of the Hillygus Trust, who is not the dependent adult.

514.    The transfer was not made by a dependent adult but rather by the then empowered and appointed Trustee of the Hillygus Trust.

515.    Debbie had no ability to use her position as a caregiver of Sue to exert any undue influence, duress, or fraud upon Sue because Sue did not make the transfers in question—the transfer for compensation to Debbie was made by the then trustee of the Hillygus Trust.

516.    Thus, there is no presumption that the 2015 Note and 2015 Deed of Trust was void.

517.    Moreover, even if the Court were to disagree, the facts set forth previously demonstrate by clear and convincing evidence that the transfer was not the result of fraud, duress, or undue influence.

518.    Roger was the acting trustee of the Hillygus Trust when he executed and provided the 2015 Note and 2015 Deed of Trust to Debbie.

519.    As the Court is likely aware through Roger's actions in this matter, he is not likely to have been influenced, threatened, or put under duress in order to create the 2015 Note and 2015 Deed of Trust.

520.    There is no indication that Debbie obtained the 2015 Note and 2015 Deed of Trust by fraud, duress, or undue influence over Roger.  Rather, all the evidence reveals that the documents were provided to Debbie as consideration for the extensive caretaking services provided by Debbie to Sue pursuant to a written, valid agreement.

521.    The Successor Trustee's reliance upon Perry v. Jordan is likewise misplaced. The Successor Trustee appears to argue that Debbie breached a confidential relationship with Sue when Debbie provided services for years to Sue and only received promises to pay in the future, i.e.… the 2013 Note and 2014 Note.

522.     There is no indication that Debbie breached any confidential relationship with either Sue or the Hillygus Trust's then trustee.

523.     The Successor's Trustee's analysis that Debbie somehow breached her confidential relationship with Sue by accepting the 2015 Note and 2015 Deed of Trust in lieu of full payment for all services rendered is misplaced.

524.     Debbie had no ability to assert any influence over Sue in breach of any duty because Sue was not making financial decisions concerning the property in the Hillygus Trust.

525.     Rather, the then trustee of the Hillygus Trust was making those decisions as he was required to pursuant to the applicable statutes and trust documents.  .

526.     Debbie did not breach a fiduciary or confidential relationship by accepting the 2015 Note and 2015 Deed of Trust in consideration for the extensive care giving services she provided to Sue for years.

### *THE 2015 NOTE AND 2015 DEED OF TRUST ARE NOT THE RESULT OF DEBBIE'S SELF-DEALING IT IS SELF-DEALING OF JOHN FUNK.*

527.     In Nevada, there is no breach of a duty by a trustee if the trustee has acted in good faith and in a manner he believes was for the best interest of the trust.

528.     John Funk has acted in bad faith. He has failed to inform his client that a conflict of interest exists with Washoe Legal Service. He has been compromised by the fact his partner Austin K. Sweet is the president of Washoe Legal Services, who are in direct violation of the rules of ethical professional duties, and is bad faith.

529.     Bank of Nevada v. Speirs, 95 Nev. 870, 874, 603 P.2d 1074, 1077 (1979).  In Bank of Nevada, the successor trustee challenged the prior trustee's investment

decisions with trust property arguing that the prior trustee had engaged in self-dealing with respect to his investment decisions.

530.     In that case, the trust granted the trustee broad powers empowering the trustee to buy, sell, and invest the trust's property in whatever manner seems best to the trustee.

531.     The Nevada Supreme Court acknowledged that that situation concerned a family arrangement where a decedent mother left property to her daughter in a trust controlled by the father's daughter and that the trust specifically provided the trustee father with complete discretion in investing the trust property.

532.     The Nevada Supreme Court concluded that a broad grant of authority, a testamentary exoneration of the trustee for mistakes must be accorded respect by the Court.

533.     Here, the Hillygus Trust contains similarly broad grant of authority and testamentary exoneration of the Trustee.  Specifically, the Hillygus Trust obligated the Trustee to, in his/her discretion, use so much of the net income and any portions of or all of the principal of the Hillygus Trust for the support, comfort, and welfare of Gene and Sue in their accustomed manner of living or for any other purpose the Successor Trustee believed to be in Gene and Sue's best interest.

534.     The Trustee is also expressly granted the authority to borrow money for any purpose and to mortgage or pledge any trust property.   Furthermore, the Trustee is granted the authority to execute contracts, notes, conveyances, and other instruments. Finally, the trustee had the authority to exercise all other rights, power, and privileges, not inconsistent with the Hillygus Trust agreement, then granted to a Trustee under NRS Chapter 163 and any future additions thereto even though said law may be repealed after the Hillygus Trust went into effect.

535.     There can be no dispute that the Hillygus Trust extends broad powers to its trustee allowing the trustee to act as he/she deems best, just as the trustee was granted broad authority in Bank of Nevada.

536.     Roger acted in good faith and in the best interest of the Hillygus Trust's settlors when he retained Debbie, at the direct, specific request of both Sue and Gene, to provide caretaking services.  There were no gifts provided to Debbie.

537.     Both the 2015 Note and 2015 Deed of Trust were provided to Debbie as compensation for her services provided to Sue; just as Home Instead Senior Care was compensated for the time of their employees.

538.     Interest was included in each of the notes in recognition of the time value of money and that Debbie was forgoing payment now in exchange for an obligation to pay in the future.  The amount of interest was proposed by the then Trustee and was accepted by Debbie.

539.     The Successor Trustee cites no law precluding the amount of interest agreed upon in each Note.

540.     The Successor Trustee failed to offer any evidence of what a commercially reasonable rate would be.

541.     To the extent the Court believes the interest rate is too high, Debbie would consent to a novation of the 2015 Promissory Note reducing the applicable interest rate in half to twelve percent per annum, simple interest.

542.     The Successor Trustee's citation to In Re Estate of Tate is also misplaced for a number of reasons.

543.     First, In Re Estate of Tate is an unpublished decision in the state of Illinois and pursuant to Illinois Supreme Court Rule 23(e)(1), it may not be cited as precedent by

any party except to support contentions of double jeopardy, res judicata, collateral estoppel, or law of the case. IL R S CT Rule 23(d) (1).

544.    Second, the Illinois trial court found a fiduciary relationship existed between the caretaker and decedent because the decedent trusted the caregiver with blank checks and debit cards linked to his personal bank accounts.

545.    Debbie's relationship with Gene and Sue is not the same as the relationship in In Re Estate of Tate.

546.    Debbie was not provided with the ability to pay expenses on behalf of Sue or the estate, rather that power was properly vested with the trustee at the time. Likewise, the transaction in question, the 2015 Note and 2015 Deed of Trust did not benefit Debbie as the transactions did in In Re Estate of Tate; rather, they simply made Debbie whole by providing her the compensation she was owed for her years of dedicated service and labor to Sue and Gene.

547.    Likewise, the Successor Trustee's citations to treatises and secondary sources lacks merit. Binding authority is found in Bank of Nevada v. Speirs making any reliance upon either Bogert's treatise or the Restatement unnecessary.

548.    Moreover, even the Restatement of Trusts acknowledges that transactions involving a trustee's spouse is not per se void. Restatement (Second) of Trusts, § 170, Cmt e (1957). The comments to the Restatement (Second) of Trusts provides, with regard to sales to third parties, that "If the third person is the spouse of the trustee, the sale can be set aside as though it were made to the trustee himself.

549.    The mere fact, however, that the purchase is related to the trustee does not make the sale improper…[rather the beneficiary or successor trustee must demonstrate] that the [trustee] sold the property for less than he could have obtained for others, or

otherwise abuses his discretion in making the sale." Restatement (Second) of Trusts, § 170, Cmt e (1957).

550.     Thus, the Restatement requires the transaction to be analyzed on a case by case basis.  Here, the terms of Debbie's employment and services were reasonable, proper, and provided value to both Gene and Sue.

551.     Under the Restatement section and its comments cited by the Successor Trustee, there is no self-dealing if the terms of the transaction are commercially reasonable.

552.     There has been no self-dealing by either Debbie or Roger.  As evidenced by her time cards and the attached summary, Debbie performed extensive services for Sue and to a lesser extent Gene.  She is entitled to be compensated for that work, which is why the 2015 Note and 2015 Deed of Trust exist.  They are supported by valid, substantial consideration and should not be set aside.

### *DEBBIE STATUS AS ROGER'S WIFE AND NEVADA'S COMMUNITY PROPERTY LAWS ARE IRRELEVANT ROGER IS HER POA AND AGENT*

553.     The Successor Trustee repeatedly asserts that Roger and Debbie are alter egos of one another given their marital relationship and Nevada's community property laws. The Successor Trustee's analysis ignores the very real, tangible, and meaningful consideration provided to the Hillygus Trust's Settlor, Sue by Debbie.

554.     While Nevada recognizes community property, it is irrelevant in this instance because only if and when there is a dissolution of the marriage can Roger assert any claim to the 2015 Note and 2015 Deed of Trust.  Until then, his interest, if any exists, is purely theoretical.

555.     It was Debbie who fulfilled Sue's wishes to have Debbie care for Sue.  To now invalidate Debbie's compensation for doing so would work a manifest injustice against Debbie and would be contrary to the equities.

## *DEBBIE AND ROGER HAVE RESERVED THEIR RIGHTS TO A JURY MULTIPLE TIMES ALWAYS DENIED BY THE COURT A VIOLATION RIGHTS*

556.     The Nevada Constitution secures all the right of a jury trial in certain contexts. Nev. Const. art. 1, § 3.Nevada's jury trial right is based on an 1864 version of the English common law as statutorily modified in this country.

557.     Aftercare of Clark Cty. v. Justice of Las Vegas Twp. ex rel. Cty. Of Clark, 120 Nev. 1, 6, 82 P.3d 931, 933 (2004).  Other courts interpreting a similar constitutional provision explained that actions brought against a trustee alleging breach of trust were heard in courts of equity and not before a jury.  Bank One, N.A. v. Borse, 351 Ill. App. 3d 482, 488–89, 812 N.E.2d 1021, 1027 (2004).

558.     However, breach of contract claims trigger a defendant's right to trial.  See Awada v. Shuffle Master, Inc., 123 Nev. 613, 618–20, 173 P.3d 707, 711–12 (2007). Courts are not always required to proceed first with legal issues before addressing equitable claims.

559.     Id. at 621, 173 P.3d at 712.To the extent that this Court may attempt to adjudicate Debbie's contractual claims with respect to the 2015 Note and the 2015 Deed of Trust, Debbie has a right to have this matter heard by a jury and has asserted that right.

560.     Given the limited language in the petition, the only relief sought is the assertion of a constructive trust over the 2015 Note and 2015 Deed of Trust coupled with an invalidation of those items.

## CLAIMS

### FIRST CAUSE OF ACTION

### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FIVE COUNTS)*

561.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

562.     Plaintiff refers and re-pleads each and every allegation contained herein and by reference incorporates the same herein and makes each a part thereof the following causes of action.

563.     The officers of the District Court in the county of Washoe in the State of Nevada and those that are to regulate and control the actions of those that operate said court should have regulated the use of the court and the actions of the court as a method to vex and harass others. Have violated the ADA rights, discrimination, HIPPA laws, involuntary servitude, false arrest, false imprisonment. Causing harm to plaintiffs.

564.     The court and the other defendants have allowed proceeding to continue, in a case that is meritless and specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

565.     This action was initiated by a fraud upon the court, was allowed to continue purely for the financial gain of those involved in a criminal RICO conspiracy.

566.     This conspiracy was orchestrated and regulated by Frances Doherty who through her non-judicial acts, discrimination, and violation of civil rights have provided others with the ability to plunder the Hillygus family trust to the damage of all plaintiffs.

567.     The Court ordered and allowed the person of Robin Renwick to secure a position as guardian of Herbert Hillygus, against his objections. A violation of due process.

568.     The court appointed lawyers to represent Herbert who worked not for his benefit but for the advancement of the courts ongoing criminal conspiracy and that of the other defendants. A RICO conspiracy, fraud, and fraud upon the court. Including theft.

569.     These attorneys worked not for the protection of Herbert and protecting his life and property, but as a means of self-enrichment of themselves and their coconspirators.

570.     The court ordered and work as a collection agency to ensure that its co-conspirators be richly compensated at the expense of the Hillygus Family trust.

571.     This behavior by the co-conspirators and defendants has cause the plaintiffs harm as they feel vexed, harassed and set upon by the full weight of the power of the State of Nevada, County of Washoe in the State of Nevada, and the city of Reno and all orchestrated by the Washoe County District Court and its officers and supported by the acts of the defendants.

572.     The court and the other defendants have allowed proceeding to continue, in a case that is meritless and specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

573.     Judge Frances Doherty continuation of the damage to the defendant was exacerbated by the Judge who issued an order granting numerous lawyers an excess of 50% of the accumulated wealth held in trust at that time.

574.     The Hillygus Family Trust was established for the care of Settlors of said trust was established and funded for the purpose seeing the settlors through to the end of their lives and pass assets on to their family.

575.     The Defendants continued their financial assault upon the trust till every available asset; accept that of the family home, had been extinguished.

576.     The Defendants have through their intentional actions have converted, to the use of the co-conspirators in the criminal syndicate, every asset that the Plaintiffs saved their whole life to acquire.

577.     They have done this with the goal of self-enrichment of the co-conspirators and supported by the action of the defendants.

578.     The settlors both had been suffering from debilitating illnesses, Herbert diagnosed with vascular dementia, and his wife Susan Hillygus is suffering the effects of Alzheimer's. They planned for such an eventuality and their wishes were outlined, and specifically stated, in their trust documents.

579.     Under their powers of Attorney issued to protect and care for them if they lacked the ability to do so Roger Hillygus became their de-facto guardian, medical decision maker and the successor trustee of their estate.

580.     The defendants intervened in the wishes of the settlors and circumvented the contractual relationship between parties for the purpose of self-enrichment of the defendants.

581.     The Defendants have caused long term financial and mental anguish to the Plaintiffs.

582.     The actions of the court were both arbitrary and capricious and were not within the legal practices a determined by the Nevada Revised Statues with regards to the legal procedure with regards to a civil case brought before the court.  No jurisdiction.

583.     The court and the other defendants have allowed proceeding to continue, in a case that is meritless and specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

584.     The officers of the State of Nevada and personnel of Washoe County, and the employees of the County, and the City for allowing and authorizing the Washoe court to utilize the Name of Reno, and the other defendants had been involved in a pattern of actions that are both illegal and unethical.

585.     The State of Nevada and County of Washoe and the WCSO and the others including Reno for allowing and authorizing the use of Reno for the Washoe County court had failed to act to protect the persons of Defendants and failed to act on the complaint brought forth for the first degree murder of Eugene Hillygus by Robin Renwick in her cold an calculating neglect of Herbert Eugene Hillygus after he was determined to be unable to care for himself and his guardianship was removed from Roger Hillygus by Judge Frances Doherty.

586.     The Plaintiff was forced to file a complaint with the Sheriff's Department internal affairs and the head Sheriff to try and gain some protection for his family, yet his plea for help were left unanswered, including NRS 239 public records requests, leaving all of the plaintiffs to feel emotional distress causing harm.

587.     The court and the other defendants have allowed proceeding to continue, in a case that is meritless and specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

588.     The court should award not less than ten thousand dollars for each and every incident in compensatory damages to be award to each plaintiff from each defendant who is proven to have participated in said act and an award in punitive damages in the amount the court sees fit.

**(SECOND CAUSE OF ACTION)**

*__INTENTIONAL  INTERFERENCE  WITH  A  CONTRACTUAL  RELATIONSHIP__*

*__(FIVE COUNTS)__*

*__FIRST COUNT__*

589.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

590.     The Defendants jointly and as a group entered into a pattern of action to interfere with the contractual relationship between the plaintiffs and society that has established a contractual relationship with the plaintiffs that by their sacrificing their right of self-protection and protection of their own property to that of the institutions set out by society to establish and maintain, the courts, the legislature, the police, the fire department and many other public services established for the good of the public.

591.     This covenant with the court is set down so as to keep from vigilantly justice being the norm.

592.     Persons who come to the court come with the expectation of a court that would weigh the facts, apply the applicable law, look at, understand and abide by court precedent set by the preceding cases ruled on by higher court all of which were not used by the defendants. This fact and the subsequent act resulted in harm to plaintiffs.

593.     The defendants treat the court system, the laws and the regulations as just a suggestion and the only real rules are those that the court decides are applicable at that time even if they run contrary to any know laws, rules or court precedent.

594.     The defendants have known or should know of the corruption of the system when an individual after being abused and tormented by a judge, who is listed as the worst judge in the United States, finally snapped and took matters into his own hands.

595.    The county response was to immediately not to look at the reasons the family court system and the system as a whole was broken but instead to invest in bullet proof glass and better security for the court.

596.    The defendants have allowed and condone the corruption of the system as a whole and thus are as capable as those that broke and interfere with the social contract and legal contract for a court of fair dealing.

**SECOND COUNT**

597.    The court has interfered with the contractual relationship between Roger Hillygus and the Hillygus family trust.

598.    They circumvented the contractual relationship between Roger Hillygus and the trust that was established and came into effect when Roger through the incapacitation of his parents became the successor trustee.

599.    The court had no legal reason for the circumventing of the contractual relationship established by this trust and thus has interfered with said contractual relationship.

**THIRD COUNT**

600.    The court and the other defendants have interfered with the contractual relationship between Debbie Hillygus and the other defendants as to her contract for care of the settlers causing her financial harm.

**FOURTH COUNT**

601.    The court has interfered and attempted to interfere with the contract established in the deed of trust executed and filed at the county recorder's office by the court issuing a notice to the county recorder that said deed of trust has been satisfied and the other

defendants through their action in support and lending their support for said actions become themselves culpable for said actions.

602.     Their intentional actions of the defendants have intentionally caused the plaintiffs irreparable emotional and financial harm.

**FIFTH COUNT**

603.     The justice court in allowing and suborning perjury and using said perjury as a means to issue a lockout order on the Hillygus' family home in an administrative action.

604.     The other defendants have supported the said administrative action, ether by their actions directly in support or through their inaction in failing to control the illegal actions of an administrator who acts under the color of their authority granted to the defendants. Violation of civil rights USC 1983.

605.     The defendants action individually and as a group has caused the plaintiffs irreparable harm.

606.     The action of the defendants is specifically initiated for the purpose to harass and vex the plaintiffs causing intentional mental anguish and cause financial harm.

607.     The court should award not less than ten thousand dollars for each and every incident in compensatory damages to be award to each plaintiff from each defendant who is proven to have participated in said act and an award in punitive damages in the amount the court sees fit.

### (THIRD CAUSE OF ACTION)

### *UNINTENTIONALLY CAUSING EMOTIONAL DISTRESS*

608.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

609.      The actions of the defendants both knowing and unknowing have caused emotional distress to the plaintiffs. The defendants of have through their actions caused the distress of the plaintiffs in their defense of a barrage by the defendants or supported by the defendants. Their action though unintentional but should have been deemed to cause ever emotional distress to the plaintiffs.

610.      The defendants have intentionally separated Roger Hillygus from his mother at the end of her life as she slowly succumbs to the effects of Alzheimer's. This time was precious to not only to Roger and his mother but to Rogers's wife, Debbie, who put her life and carrier on hold to care for her mother-in-law in her time in need.

611.      Debbie and Susan became closer as they spent more time together, each growing to understand and appreciate the other, and then to have her ripped from their arms by those with the specific intent to exploit, isolate and cause her eventual death in a ware house where she knows no one and is left to the care and hands of strangers as she is exploited till the time of her death and then cremated and cast out by these strangers.

612.      All for their want and need at self-enrichment. This is an emotional scar that can never be healed as that precious time can never be repaid by any amount of money or an attempt at those Defendants fake attempt at remorse.

613.      The court should award not less than ten thousand dollars for each and every incident in compensatory damages to be award to each plaintiff from each defendant who is proven to have participated in said act and an award in punitive damages in the amount the court sees fit.

**(FOURTH CAUSE OF ACTION)**

### *LIABLE*

614.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

615.     The court has entered into the court record libelous statements that should have never been made from the bench or been allowed to be entered into the court record as they were not facts and provided no pertinent testimony but were only the slanderous statements of attorneys and agents specifically intent in casting Roger Hillygus, his wife and family in a bad light and making them objects of public ridicule.

616.     These statements are such as to cast the plaintiff individually and jointly in a bad light. As to such these statements can be used as a mean to decrease compensation in employment or as a means of denying contractual agreement thus causing the financial harm to the plaintiffs individually and jointly because of the actions of the defendants.

617.     The court allowed and condoned slanderous statements by Robin Renwick demeaning Roger Hillygus and his wife's character and their fitness to care for his mother and father.

618.     These statements deprived Roger Hillygus of spending the last days of his father's life with him. Deprived him of hours of talking and discussion with his father along with long discussions as to his father's hopes and wishes for the Hillygus linage into the future.

619.     The statements of Robin Renwick, Todd Torvinen, Kaycee Zusman and other defendants deprived Roger Hillygus of the company, companionship, the care and concern of his mother for him and for her. This loss is irreparable and without the possibility of ever being return to the both of them.

620.     Numerous other statements and actions by the defendants enter into the court record in the way of statements made in open court entered into the court record or made in motions placed before the court have diminished those in the communities concept of who the Plaintiffs are and why they have fought for the Hillygus name and the reputation that has been defamed by the Defendants.

621.     The plaintiffs have knowingly and with malice entered statements that they know are false and have no basis in fact as a means to demean and demonize the Plaintiff with the sole intent of exploiting venerable and elderly person purely as a means of self-enrichment.

622.     Todd Torvinen Esq., Steve Moss Esq., Robin Renwick and Frances Doherty Esq. conspired and entered into the public record statements the know are false and have no basis in fact purely to gain control of the Hillygus Trust and its settlors so as to exploit them and convert their retirement funds to cash and transfer that cash for their own use.

623.     Todd Torvinen Esq., Steve Moss Esq., Robin Renwick and Frances Doherty Esq. Conspired to create a defamatory document penned by Debra Frederick's claim and demonizing Roger Hillygus and his family as a means of gaining control of the Hillygus Family trust and all of its assets with the sole and only intention of converting all trust assets to cash and dividing the cash amongst the conspirators.

624.     The court should award not less than ten thousand dollars for each and every incident in compensatory damages to be award to each plaintiff from each defendant who is proven to have participated in said act and an award in punitive damages in the amount the court sees fit.

### (FIFTH CAUSE OF ACTION)

### *SLANDER*

625.    The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

626.    The defendants jointly and individually have made slanderous statements about Plaintiffs these statements were made specifically with the intent of harming the plaintiffs

627.    The defendants have under the guise of official and sanctioned activity issued statement demeaning the medical mental health of Roger Hillygus claiming him to be mentally deranged and in need of psychological help.

628.    These statements are made by a judge with no medical training, who failed as a lawyer and only through her exerting of her political influence was she allowed to become a family court magistrate and when the supreme court found out those magistrates were rendering decisions in criminal matters were they give the title of full district court judge.

629.    Judge Frances Doherty is a non-qualified person who renders arbitrary and capricious decisions with no legal background nor does she follow the law, but when challenges she uses her array of slanderous statements as a means of quieting opposition and badgering those that oppose her.

630.    These statements are damaging to the reputation of those that oppose her and damage the plaintiffs financially as these statements cast them in a bad light and limit their ability to conduct normal business proceeding.

631.    The court should award not less than ten thousand dollars for each and every incident in compensatory damages to be award to each plaintiff from each defendant

who is proven to have participated in said act and an award in punitive damages in the amount the court sees fit.

### (SIXTH CAUSE OF ACTION)

### *INVASION ON THE SECLUSION AND PRIVACY OF ANOTHER*

### *(THREE COUNTS)*

632.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

633.     The defendants through their actions have turned the plaintiff's lives into a living hell. The Defendants jointly and separately have damage familial relation and caused financial harm to the Plaintiffs.

634.     The Defendants have used the power an authority of their positions as a means to bully, vex and harass the plaintiffs.

635.     They have used and condoned the actions of other of the defendants and their joint action has intruded on the privacy and sanctity of familial relationships.

636.     The court and the other defendants have used the power and authority as a means of interjecting themselves into the lives and contractual relationship of the plaintiffs.

637.     This interference and interjection into the personal space that a normal person would conclude, and feel the intrusion into the personal space and seclusion of the plaintiffs.

638.     This intrusion has caused the expenditure of time and money in defending against this intrusion along with the loss of time that should have been used in spending as much time as possible with those that where slowly losing their ability to comprehend and understand their relationship within the world.

639.     The court intruded into the lives of the Hillygus family causing the Hillygus' to loss valuable time that Roger and other family members could have spent with Herbert Hillygus.

640.     The court appointed as his guardian that only wanted his money and through her abuse and neglect caused his premature death.

641.     This death was avoidable if even the semblance of care would have been exercised by the defendants toward Herbert, but instead their main and overwhelming concern was the attack on the trust and its successor trustee.

642.     This intrusion into the seclusion of another has caused irreparable harm and financial expense to the plaintiffs.

### (SEVENTH CAUSE OF ACTION)

### *ABUSE OF PROCESS*

643.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

644.     The Plaintiff claim and affirm the actions of the Defendants to be an abuse of process that has been used as a means of self-enrichment and the creating and using the political capital that has been gained through years of using the court and the other defendants as a weapon that can be wielded against enemies and used to award coconspirators or political allies.

645.     The actions of the defendants sole and specific purpose is in creating of controversy manufacture by the Defendants with the specific purpose of creating BILLABLE HOURS  which are to the benefit of the defendants in exploiting the trust and the settlers were forced into a guardianship to exploit their assets.

646.     The legal action and accompanied actions are an abuse of process that has caused irreparable harm to the plaintiffs at the hands of the defendants. This cause of action should pay the plaintiffs the amount of seventy-five thousand dollars per occurrence from each of the participants proven to be part of the conspiratorial actions.

### (EIGHTH CAUSE OF ACTION)

### INTERSTATE WIRE FRAUD

647.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

648.     The defendants individually in the furtherance of their ingoing criminal conspiracy in which the conspirators colluded and used the interstate money transfer system to arrange for money to be transmitted from the accounts setup and maintained in the national stock market system and the national banking system into the accounts of the co-conspirators so as to transfer the ill-gotten gains from the servers maintained for and for the exclusive use of Peterson Wealth Management and maintained in another state than Nevada to others financial recipients that maintain their financial electronic storage in states that are not within the boundaries of the state of Nevada.

649.     This transfer of funds that are the rightful property of Hillygus Family Trust and exceed a loss in excess of three hundred thousand dollars. The court should award treble damages to the plaintiffs in the amount no less than nine hundred thousand dollars or an amount that the court sees fit to award.

### (NINTH CAUSE OF ACTION)

### FRAUD THROUGH INTENTIONAL MISREPRESENTATION

650.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

651.     The defendants in conjunction with the Person claiming to be a lawful judge conducting the business of the court, conducted a fraudulent hearing in which she tried to and issued orders stating that she had the lawful authority to Remove a deed of trust that was issued in conjunction with a promissory note owed to Debbie Hillygus for services rendered to the settlers of the Hillygus Trust.

652.     This note was issued for payment for funds due to Debbie and in such was lawfully issued by the trustee.

653.     This deed was placed against the property owned by the trust as it was to ensure payment for service rendered.

654.     The defendants have defrauded Debbie by their claim that the note has been satisfied and that in such she is no longer the person who I to receive payment in the event of the sale of the home.

655.     This fraud is accomplished by using the resources and power wielded by the defendants and the credence associated with the use of the names listed as defendants official titles. Damage done is in excess of two hundred and fifty thousand dollars and is accruing interest.

656.     The defendants have been conducting and orchestrating an elaborate conspiracy in which the defendant claims to have the legal authority to raid and destroy the Hillygus family Trust.

657.     They have used this supposed authority to orchestrate their criminal activity and have oppressed any opposition challenging their authority.

658.     Frances Doherty Esq. hides behind the protection that is associated with her title of Judge and claims that protection as a means of avoiding the payment of damages for her conspiratorial acts as a co-conspirator involved in a RICO conspiracy, but because

their acts are outside the bounds of what legally is consider to be their official acts, these act are non-judicial in nature as they have no legal authority to do said acts and thus they are acts not protected under their title. Lacking jurisdiction orders are void.

659.    These non-judicial acts are part of an ongoing criminal conspiracy and this conspiracy use the defendants, ether with their knowledge or by their non-action in trying to curtail the actions that they have legal authority over.

660.    Because the acts and the conspiracy reach the standard of a RICO conspiracy it is not required that all the parties know of and are participating in the entire act to be charged as participants in such.

661.    The acts of fraud are a way in which the defendants have been using to become the owners of and have use of property that is actually legally the property of the Hillygus trust.

662.    The court should award not less than ten thousand dollars for each and every incident in compensatory damages to be award to each plaintiff from each defendant who is proven to have participated in said act and an award in punitive damages in the amount the court sees fit.

### (TENTH CAUSE OF ACTION)

#### *PROFESSIONAL NEGLECT*

663.    The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

664.    The defendants are tasked, by their position and its authority, to monitor and when necessary correct and discipline the actions of those that are operating under their authority.

665.     The county commissioner has the authority to correct and discipline those at the Reno Justice Court when their actions are outside the scope and authority of the court system.

666.     The state of Nevada must discipline and correct the family court which has been on the radar for its actions that are arbitrary and capricious in nature and the string of corruption that flows through its halls.

667.     The shooting of a judge should have raised some question and the general knowledge that a judge in the family court is having sex with those divorcees that come into his court.

668.     With even a brief investigation of asking any legitimate lawyer in Washoe county about representation in the family court and they will refuse to practice law in that court and all will have the same response, that they will not practice law in the family court as the law does not exist in that court.

669.     The judge and staff fail to follow any know law and ignore the rules of civil procedure.

670.     It is a kangaroo court with the head kangaroo on the bench making decisions and calling them rulings of law.  The actions of all of the defendants are acts of professional misconduct for ether their direct or indirect actions in support of the family court.

**(ELEVENTH CAUSE OF ACTION)**

***WRONGFUL DEATH***

671.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

672.     The defendants jointly and separately have through their actions caused the wrongful death of Herbert Eugene Hillygus.

673.     The court placed Herbert into the guardianship with Robin Renwick as his guardian.

674.     This situation left a vulnerable and unprotected man in the hands of a person who only and specifically wanted Herbert's money.

675.     She began a pattern of conduct that even in a fully competent adult would cause them harm.

676.     The actions of his guardian were those of a person with no concern for the human life which she had become the guardian.

677.     This fact became known to the court and the court ignored the pleas for help, instead the judge continued in its never ending pursuit of the money in the trust.

678.     Herbert was left on his own to deal with the world. His guardian would take him places and rather than staying with him she would leave him to find his own way home.

679.     On his walks toward home he would sometimes defecate on himself, sometimes urinate, usually fall and hurt himself and even one time was found lying in the bottom of a ditch with no way to get himself out.

680.     All of these walks toward home ended in trips to the hospital.

681.     When he was visiting a friend in a rehab center he was dropped off by his guardian and the staff at this center would feed him, and take care of him and call his assisted living center to get him a ride back to them.

682.     They finally told his guardian that she could not leave him there, yet she would still drop him on their front door step and run away leaving him to fend for himself.

683.     When a hospital would call after he would arrive by ambulance she would not answer her phone leaving him to deal with the complexities of the hospital process on his own.

684.     All of this and more was brought up to the court and they did nothing to help him and this lack of concern and his abuse caused his death.

685.     The plaintiffs request a sum of one million dollars be paid by the defendants in compensatory damages and a sum as the court sees fit in punitive damages for the loss of Herbert Hillygus. Through the bond held by the state or the judicial officer.

### (TWELVETH CAUSE OF ACTION)

### OPPRESSION UNDER THE COLOR OF AUTHORITY

686.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

687.     The courts used their unbeatable power that came from their position as a means to force what they wished on the plaintiffs.

688.     They have thrown the plaintiffs from their family home at gunpoint. WCSO.

689.     They have kidnapped Susan Hillygus and placed her in a locked facility that holds her against her will. ADA violations

690.     They have acted in the manor of a thug or an organized crime figure that can and will do whatever they deem necessary as the means to an end for accomplishing their goal. Violations of RICO conspiracy.

691.     All of this is their technique for obtaining what they want, the Money and power that comes with placing a person in a guardianship the guardianship gives them complete control of a person's life and most of all their money and rights.

692.     When Roger tried to enter a court room in which his wife was being bullied and cajoled to relinquish control of her promissory note, he was surrounded by bailiffs of the WCSO and forced to sit and stay where they ordered him to.

693.     If this was anyone else who had done that it would have been called kidnapping, but for the court it is their business as usual.

### (THIRTEENTH CAUSE OF ACTION)

### *VIOLATION OF THE SECOND AMENDMENT RIGHTS*

694.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

695.     The defendants separately and jointly have acted to bar Roger Hillygus from possession of the guns that are rightfully his.

696.     Their actions have allowed his guns to be stolen from his personal vehicle and his family home all while county employees watched and aided in the theft of Rogers guns and personal property.

697.     The court became aware of the theft and even has been presented with testimony by the person, who has said guns in their safe, yet the court will not nor has it ever made the attempt through law enforcement to have said guns returned, let alone the other stolen items.

698.     The defendants individually and jointly have conspired to deprive the plaintiffs of their constitutional rights to keep and bear arms.

699.     This is a constitutional violation.

### (FOURTEENTH CAUSE OF ACTION)

### *VIOLATION OF THE FIRST AMENDMENT RIGHTS*

700.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

701.     The defendants have individually and jointly take Susan Hillygus' rights away from her. By their actions they have barred her and stopped her from attending the

church that she wishes and has attended for years, They have restrained her movement and thus her right to peacefully assemble with her friends and family and discuss the matters of the day, all of which she enjoyed doing. Violations of ADA rights.

702.     By the establishment of a guardian who nether knows her nor care about her, she no longer has the right to petition the government for redress of grievance as he would surely oppose her treatment and incarceration.

703.     Her first amendment rights have been barred by the action of the defendants.

### (FIFTEENTH CAUSE OF ACTION)

### *VIOLATION OF THE 14TH AMENDMENT RIGHTS*

704.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

705.     The defendants have separately and jointly taken action to deprive the plaintiffs of their 14th amendment right of due process of law.

706.     The defendants have taken the plaintiff right to life liberty and property and done so without due process of law.

707.     Said action has been done through the use of a fictitious court process that could only be considered a court process if the only requirement is that it happened in a building known as a court house.

708.     The "court" had no intent of providing court service only in furtherance of organized criminal activity.

709.     The removal of money and property without due process is a clear violation of the 14th amendment and I supported by the actions or inactions of the defendants.

## (SIXTEENTH CAUSE OF ACTION)

## LEGAL MALPRACTICE/PROFESSIONAL NEGLIGENCE

710.     The Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

711.     Defendants had an attorney-client relationship with the plaintiffs.

712.     David Spitzer Esq., Todd L. Torvinen Esq., Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn and Wedge a Chartered Domestic Professional Corporation, Stephen Craig Moss Esq., Michael Springer Esq.,  John R Funk Esq., Joel Benet Barber Esq., Ryan J Earl Esq., Ryan J McElhinney Esq., Frances Doherty Esq., Scott Freeman Esq., David Clifton Esq. and Gordon R Muir Esq.  , had a duty to the Plaintiff a duty to use the skill, prudence, and diligence possessed by lawyers of ordinary skill and capacity in exercising and performing tasks which they undertook on the trusts behalf.

713.     David Spitzer Esq., Todd L. Torvinen Esq., Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn and Wedge a Chartered Domestic Professional Corporation, Stephen Craig Moss Esq., Michael Springer Esq.,  John R Funk Esq., Joel Benet Barber Esq., Ryan J Earl Esq., Ryan J McElhinney Esq., Frances Doherty Esq., Scott Freeman Esq., David Clifton Esq. and Gordon R Muir Esq.  each individually and as a group breached their respective duties to Plaintiffs by acts and/or omissions that include, but are not limited to, the following:

714.     Failure to disclose the fact and/or extent of Defendants' conflicts of interest;

715.      Failure to assert claims against persons who had wronged the plaintiffs within the statutory period. Failure to identify and/or assert claims against David Spitzer Esq., Todd L. Torvinen Esq., Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn and Wedge a Chartered Domestic Professional Corporation, Stephen Craig Moss Esq.,

Michael Springer Esq., John R Funk Esq., Joel Benet Barber Esq., Ryan J Earl Esq., Ryan J McElhinney Esq., Frances Doherty Esq., Scott Freeman Esq., David Clifton Esq. and Gordon R Muir Esq.  arising out of the events at issue and damage done through the use of the courts in establishing an illegal and unwarranted guardianship and the seizure of the Hillygus family trust by the court, the professional guardian, the court appointed attorneys and members of an ongoing criminal conspiracy a RICO claim.

716.    Failure to adequately investigate and prosecute Plaintiffs case allowing for the continuation of ongoing frivolous litigation with no other purpose than to create billable hours for the attorneys.

717.    Failure to communicate with Plaintiffs regarding the status of their case, the means by which their objectives should be accomplished, and respond to Plaintiffs questions about their case.

718.    Plaintiffs suffered actual loss or damages as a result of Defendants' negligence and conspiratorial conduct.

719.    Had Defendants timely brought claims against the parties that are involved in the criminal conspiracy then the statute of limitations would not have expired leaving the guilty parties free from obligation to pay for their actions, if the defendants would have started litigation in a timely manner then Plaintiffs would have been able to recover far more in damages, either through judgment or settlement,

720.    Had Defendants adequately investigated and prosecuted Plaintiffs case, they would not have be forced to settle on some of the causes of action in this federal case and have other causes of action declared to be invalid as the statutes of limitations had expired. The Plaintiffs would have been able to obtain a judgment against defendants for far more than they would have received in settlement if the legal professionals would have meet their duty to provide services in a legal and ethical manor.

721.     As a direct and proximate result of the foregoing acts, the Plaintiffs have suffered damages in excess of $75,000.00, according to proof.

## (SEVENTEENTH CAUSE OF ACTION)

## BREACH OF FIDUCIARY DUTY (AGAINST ALL DEFENDANTS)

722.     Plaintiffs re-allege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

723.     Plaintiffs and Defendants, David Spitzer Esq., Todd L. Torvinen Esq., Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn and Wedge a Chartered Domestic Professional Corporation, Stephen Craig Moss Esq., Michael Springer Esq., John R Funk Esq., Joel Benet Barber Esq., Ryan J Earl Esq., Ryan J McElhinney Esq., Frances Doherty Esq., Scott Freeman Esq., David Clifton Esq. and Gordon R Muir Esq.  Had an attorney-client relationship, which is a relationship in which the client has the right to trust and have confidence in the integrity and fidelity of another.

724.     Defendants, David Spitzer Esq., Todd L. Torvinen Esq., Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn and Wedge a Chartered Domestic Professional Corporation, Stephen Craig Moss Esq., Michael Springer Esq., John R Funk Esq., Joel Benet Barber Esq., Ryan J Earl Esq., Ryan J McElhinney Esq., Frances Doherty Esq., Scott Freeman Esq., David Clifton Esq. and Gordon R Muir Esq.,  each owed Plaintiffs the highest duty of fidelity, loyalty, and honesty in representing their clients and proceeding forward in the respective cases.

725.     David Spitzer Esq., Todd L. Torvinen Esq., Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn and Wedge a Chartered Domestic Professional Corporation, Stephen Craig Moss Esq., Michael Springer Esq.,  John R Funk Esq., Joel Benet Barber Esq., Ryan J Earl Esq., Ryan J McElhinney Esq., Frances Doherty Esq., Scott Freeman

Esq., David Clifton Esq. and Gordon R Muir Esq. Each breached their respective duties to the plaintiffs by failing to represent their clients and adequately investigate and proceed forward with their cases.

726.     David Spitzer Esq., Todd L. Torvinen Esq., Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn and Wedge a Chartered Domestic Professional Corporation, Stephen Craig Moss Esq., Michael Springer Esq., John R Funk Esq., Joel Benet Barber Esq., Ryan J Earl Esq., Ryan J McElhinney Esq., Frances Doherty Esq., Scott Freeman Esq., David Clifton Esq. and Gordon R Muir Esq. is liable for the acts and omissions of its partners,

727.     David Spitzer Esq., Todd L. Torvinen Esq., Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn and Wedge a Chartered Domestic Professional Corporation, Stephen Craig Moss Esq., Michael Springer Esq., John R Funk Esq., Joel Benet Barber Esq., Ryan J Earl Esq., Ryan J McElhinney Esq., Frances Doherty Esq., Scott Freeman Esq., David Clifton Esq. and Gordon R Muir Esq. (and each of its partners) also separately failed to ensure that it had proper measures in place to ensure that its attorneys competently and diligently represented their clients

728.     As a direct and proximate result of the foregoing acts, plaintiffs have suffered damaged in excess of $75,000.00, according to proof.

## (EIGHTEENTH CAUSE OF ACTION)

## DECEPTIVE TRADE PRACTICES (AGAINST ALL DEFENDANTS)

729.     Plaintiffs re-alleges and incorporates by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

730.     Defendants, and each of them, have violated the Nevada Deceptive Trade Practices Act, NRS 598.0915(15), by knowingly making false representations by omission, including:

731.     Failing to disclose the existence of a concurrent conflict of interest and its effect on common representation.

732.     Failing to disclose their divided loyalty and compromised professional judgment in light of the conflicts of interest; and

733.     Failing to disclose their unwillingness to competently and diligently represent Plaintiffs.

734.     Defendants, and each of them, have violated the Nevada Deceptive Trade Practices Act, NRS 598.0923(2) by knowingly failing to disclose material facts related to the representation, including:

735.     The existence of a concurrent conflict of interest and its effect on common representation,

736.     Their divided loyalty and compromised professional judgment in light of the conflicts of interest; and

737.     Their unwillingness to competently and diligently represent Plaintiffs.

738.     Defendants, and each of them, have violated the Nevada Deceptive Trade Practices Act, NRS 598.0923(3) by knowingly violating myriad regulations relating to the sale of their legal services, including:

739.     Failing to competently and diligently represent Plaintiffs in violation of Nevada Rules of Professional Conduct (NRPC) 1.1 and 1.3;

740.     Failing to promptly inform Plaintiffs of, and to consult with Plaintiffs regarding, their litigation and trial strategy

741.     Failing to exercise independent professional judgment and to provide candid advice in violation of NRPC 2.1; and

742.     Engaging in professional misconduct by violating the Nevada Rules of Professional Conduct in violation of NRPC 8.4(a).

743.     All of the aforementioned Esquires are responsible for each of the violations of NRS 598.0915(15), NRS 598.0923(2), and NRS 598.0923(3) committed by the group of esquires working together in a RICO conspiracy.

744.     Defendants each had a statutory duty to refrain from knowingly committing deceptive trade practices in the course of their businesses.

745.     As a direct and proximate result of the foregoing deceptive trade practices, Plaintiffs have suffered damages in excess of $75,000.00, according to proof.

### (NINETEENTH CAUSE OF ACTION)

### DISGORGEMENT OF FEES (AGAINST ALL ESQUIRES)

746.     Plaintiffs re-allege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

747.     On or about January of 2016 without a proper and lawful order by any court the puppet successor trustee Robin Renwick issued payment to the following individuals, these funds were distributed THROUGH A FEDERAL WIRE TRANSFER to the parties from Hillygus family trust, in full satisfaction of attorney's present billing to that date. This is a violation of federal law.

748.     Payment to Woodburn and Wedge in the amount of $84,566 paid for their participation in the legal fraud perpetrated in the family Court and participated by the lawyers working in said law group.

749.     Payment to Margret Crowley Esq. who participated in the fraud by claims of being an impartial mediator who operates on behalf of the court received payment in the amount of $4000 as such payment was in furtherance of the criminal conspiracy known as the Washoe county District Court Family Court.

750.     Payment to Gordon Muir Esq. in the amount of $9057 paid for their participation in the legal fraud perpetrated in the family Court and participate as a lawyer working as a participating individual in the fraudulent acts.

751.     Payment to Ryan Earl Esq. in the amount of $5940 paid for their participation in the legal fraud perpetrated in the family Court and participate as a lawyer working as a participating individual in the fraudulent acts.

752.     Payment to Todd Torvinen Esq.  in the amount of $18,883 paid for their participation in the legal fraud perpetrated in the family Court and participate as a lawyer working as a participating individual in the fraudulent acts.

753.     Payment to Steve Moss Esq. with Springer Law group Successor Corporation for Michael B Springer PC and an entity under the name of Silver State Law LLC in the amount of $11,904 paid for their participation in the legal fraud perpetrated in the family Court and participate as a lawyer working as a participating individual in the fraudulent acts.

754.     The payment was for attorney's fees and costs incurred by Roger Hillygus as a result of its representation of plaintiffs in the state court action against Robin Renwick et al.

755.     Because each breached its fiduciary duties to plaintiff, and engaged in professional negligence and deceptive trade practices, attorneys appointed by Judge Frances Doherty are not entitled to recover the fees and costs incurred in representing plaintiffs in the state court actions that were orchestrated and accomplished by the use and actions of an ongoing criminal conspiracy which sole and specific purpose of liquidating the Hillygus Family Trust.

756.     Plaintiffs requests that the Federal Court  disgorge the costs and fees received in satisfaction of the attorney's lien, and that plaintiff, Roger Hillygus and the Hillygus Family Trust, be refunded all funds expended as the original action was commenced by the Fraud upon the court,  as the court was informed as to such fraud, was made aware of the illegitimacy of said action, any action forward of that notification and the court taking it upon itself to continue the litigation as if it were legitimate litigation should not be the financial responsibility of Roger Hillygus or the Hillygus Family Trust and thus the disgorging of funds illegitimately paid to the criminal participants is warranted.

757.     Roger Hillygus personally paid the following amounts to the Barber Law group in the amount of twenty thousand dollars, who failed to provide proper legal services, violated client confidentiality and provide no legal advice or proper legal counsel to Roger Hillygus.

758.     Roger Hillygus personally paid the following amounts to the John Funk Esq. of the Gunderson Law Firm in the amount of twenty thousand dollars, who failed to provide proper legal services, violated client confidentiality, failed to disclose conflict of interest in their business relationship with parties involved in the said accounting and provide no legal advice or proper legal counsel to Roger Hillygus and Debbie Hillygus.

759.     The Fiduciary services in their fraudulent and excessive billing of the Hillygus Family Trust and exploitation of Susan Hillygus the amount is in excess of thirty thousand to be determined in litigation after discovery and full disclosure. This money was obtained through fraud, extortion and will full acts of elder exploitation.

### (TWENTIETH CAUSE OF ACTION)

### SEXUAL DISCRIMINATION

760.     Judge Doherty has commenced a pattern of action that shows a clear bias in favor of females who appear before her to the detriment of the males who are forced to appear in her court from the time the parties are introduced the courts demeaned and

actions are apparent and blatantly sexist in nature cause any action in her court is detrimental to those that are male and are opposed by females. This shall be proven through a review of cases in her court along with personal testimony from males who have appeared before her to the detriment. Her actions against the plaintiffs are a violation of the equal protections clause and the laws against gender bias in the tribunal. The plaintiffs ask as compensation treble damages of the cost to the Hillygus family trust for the litigation in the Second Judicial District Court in the family court presided over by Judge Doherty a state employee.

## TWENTY-FIRST CAUSE OF ACTION

## AMERICANS WITH DISABILITIES (ADA) VIOLATIONS

761.     The violations regarding the rights afforded to disabled individuals have been ignored by the defendants, the court, and the establishment Susan is locked up against her will. This has cause extreme damage to the plaintiffs and the court shall consider all rights afforded to individuals who find themselves locked up.

## TWENTY-SECOND CAUSE OF ACTION

## CIVIL RIGHTS VIOLATIONS

762.     Many of the civil rights have been violated relating to the plaintiffs rights by the defendants. A partial list includes the following; involuntary servitude, habeas corpus rights, freedom of movement, freedom of speech, freedom of life liberty and the pursuit of happiness, second amendment, perjury, false statements, labor law, fair debt collection act, 18 USC chapter 96 RICO, 18 USC 241, 18 USC 242, 18 USC 1621, 18 USC 1623, 42 USC 1983 , 42 USC 1985, 42 USC 1986, 42 USC 10801, 18 USC 1343 wire fraud, UCC contract law, and NRS 159, 164, 107, and any other state regulations which have been violated.

### ***PREY FOR RELIEF***

Roger Hillygus comes to the court and prays for relief and compensation for the acts of the defendants who through criminal negligence, civil rights violations, or willful misconduct, discrimination, fraud, RICO conspiracy, wrongful death and operating without legal jurisdiction have damaged the plaintiffs separately and jointly.

1.  The plaintiffs request that the defendants be required to restore the Hillygus Family Trust To the level of funding that was part and whole of the Hillygus Family Trust, to include cash, stocks, bonds, motor vehicles and real property along with personal possessions that were taken from their home, their residence and their person.

2.  This making the trust whole is to be required that all stocks and bonds held by the trust be purchased at current market value and returned to the trust, this purchase of stocks is for the number of stock certificates and not at the value that is presently associated with said stocks.

3.  They shall also be required to a pay the cash value of any bonds sold by order of the plaintiffs at an amount as if said bonds had continued to accrue interest at the stated interest rate associated with each bond.

4.  They shall be required to replace in kind any property lost because of the actions of the defendants or pay the current market value of said property as of the date of this decision. A list of items lost stolen or miss placed as a result of the action of the defendants.

5.  These valuable items sold or stolen by any party shall be purchased at fair market value and returned to the plaintiff it was taken from or to the Hillygus family trust.

6.  The Plaintiffs request the sum of one hundred thousand dollars be paid to each plaintiff for each occurrence of a tortuous violation that have been found to be in part or in whole the responsibility of defendants jointly or individually.

7.  The plaintiffs pray that the court will award the surviving plaintiffs as of January 2018 an amount not less than one million dollars per plaintiff for the actions of the defendants individually and jointly that caused the premature death of Herbert Eugene Hillygus and the separation from his loved ones.

8.  His loss and the loss of time with his family can never be undone but a dollar amount judged by this court to be appropriate for the family's loss of the head of the family, husband to Susan, Father to Roger and guiding light in their time of need.

9.  His loss was purely a means to an end for the defendants to use his assets, to pay off political favors, buy political points and fund their own enterprises.

10. Roger Hillygus and Susan Hillygus request that the court order that this son and mother who had a lifelong bond and had planned to in the eventually of the diminished health and Susan becoming incapacitated, as stated in their trust documents, that Roger was to become the successor trustee of the Hillygus family trust and the care take of his mother as her health declined.

11. The defendants could not allow this and circumvented the natural occurrence of a son taking care for a mother who was unable to care for herself. They circumvented the trust and the wishes of the settlors and removed Roger Hillygus as trustee placing his sister in his place for the sole reason that she would destroy the trust and give the money to the sycophants of the defendants and place her mother, at the urging of the defendants, into a LOCKED AND DANGEROUS FACILITY WHERE SHE HAS BEEN INJURED NUMEROUS TIMES. A violation of ADA rights of disabled persons.

12. All of this in the purest of forms of greed and attempt to leave the surviving settlor penniless and alone in a facility that is allowed to siphon whatever amount they wish to and claiming that as being necessary for her care.

13. This separation and estrangement of the last years of her life are inexcusable as she had prepared for and she so clearly had stated and prepared for her retirement and her wishes in a trust document that has been ignored by the defendants. The court should award each of the plaintiffs no less than one million dollars as the damage can never be undone and the time lost but the plaintiffs can never be returned to them.

14. The court should also award punitive damages in an amount to deter the defendants, and any other group, from entering into an arrangement to willfully take advantage of those that cannot defend themselves.

15. The plaintiffs also wish for the court to enter into the record the nature of the action undertaken by the defendants and the egregious result to the Hillygus family.

Respectfully submitted,

Roger Hillygus

### *AFFIRMATION*

I affirm the foregoing document does not contain the Social Security number of anyone.

Subscribed and sworn to before me this _5TH _ day of June, 2018.

Roger Hillygus
90 Wells Fargo Ave.
Dayton, NV 89403
(775) 232-5583
rhillygus@gmail.com
Pro Se Litigant