UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROGER HILLYGUS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FRANCIS DOHERTY, *et al.*,<br><br>Defendants. | Case No. 3:18-cv-00212-MMD-WGC<br><br>ORDER |

**I.   SUMMARY**

Plaintiff Roger Hillygus[1] sued numerous defendants who are people and entities allegedly involved in a long-running dispute surrounding the care of his parents and the administration of his family's trust. Nearly all the named defendants have moved to dismiss the claims Plaintiff asserted against them.[2] (ECF Nos. 24, 25, 26, 27, 30, 33, 37, 40, 41, 43, 44, 45, 49, 51, 52, 54, 57, 61, 62, 63, 89.) These motions are currently before the Court.[3] As explained below, the Court will dismiss Plaintiff's claims to the extent they are

---

[1]Plaintiff also purports to represent other plaintiffs, but cannot because he is proceeding *pro se*. *See* LR IA 11-(1-2); *see also Buran v. Riggs*, 5 F. Supp. 3d 1212, 1216 (D. Nev. 2014); *S.E.C. v. Inteligentry, Ltd.*, Case No. 2:13-cv-00344-GMN, 2013 WL 3995272, at *1 (D. Nev. Aug. 5, 2013). For this reason, and because the Court will dismiss Plaintiff's case, the Court only refers to the other purported plaintiffs in this order as necessary. However, this order applies to the other purported plaintiffs because the allegations and claims are the same.

[2] Defendant Ryan L. Earl filed a motion for a more definite statement. (ECF No. 35.) That motion is also before the Court. Otherwise, only defendant Integrated Behavioral Healthcare did not file a motion to dismiss.

[3]The Court also reviewed Plaintiff's omnibus response to these motions (ECF No. 68), and Defendants' replies (ECF Nos. 69-86). However, Defendant John Machen's motion (ECF No. 89) was filed on December 6, 2018 and seeks dismissal based on the running of the two-year statute of limitations. (ECF No. 89.) The Court therefore also reviewed Plaintiff's response to that motion. (ECF No. 92.) Plaintiff's response to

1 based on federal law because he fails to state claims upon which the Court may grant
2 relief. The Court will also decline to exercise jurisdiction over Plaintiff's state law claims,
3 and will therefore dismiss Plaintiff's case in its entirety.

## II.  BACKGROUND

Plaintiff alleges as follows in the operative amended Complaint ("FAC") unless otherwise indicated. (ECF No. 19.) All of these events took place in the Reno, Nevada area, and all parties are resident to, or operate in, that area. Plaintiff's parents, Eugene and Susan Hillygus, put their assets, including their house, in a trust ("the Family Trust"). They appointed Plaintiff the successor trustee of the Family Trust. Plaintiff also expected that he would be responsible for caring for his parents as they aged. Plaintiff's father Eugene has passed away, but his mother Susan is still alive and is currently housed in a facility designed to care for people suffering from Alzheimer's disease called Stone Valley Alzheimer's Center.

Plaintiff has a sister, now known as Robin Renwick. It appears to the Court from the FAC that Plaintiff and his sister have disagreed about how best to care for their aging parents. This disagreement has apparently led to a series of legal disputes regarding their care and the disposition of the Family Trust's assets. It is also apparent that Plaintiff's dissatisfaction with the outcomes of these legal disputes in Nevada state court led to his filing of this case.

Plaintiff was involved in the care of his aging parents and the administration of the Family Trust. For some time, Plaintiff, on behalf of the trust, employed his wife Debbie as a caregiver for his mother, Susan. Plaintiff arranged for the Family Trust to pay his wife

---

Defendant John Machen's motion greatly exceeds the page limit. *See* LR 7-3(b). Nonetheless, the Court reviewed it because Plaintiff is *pro se*, and the Court must afford greater latitude to *pro se* litigants. Further, to the extent Plaintiff requests that the Court disqualify the Nevada Attorney General's office from representing Defendant John Machen (ECF No. 92 at 3-5), the Court declines to do so.

through a series of promissory notes. (*Id.* at 89-91.) His father having moved out, Plaintiff and his wife moved into his parents' home to care for his mother. (*Id.* at 88, 92.)

In the winter and spring of 2014, Plaintiff's father Eugene sought to replace Plaintiff as successor trustee of the Family Trust. (*Id.* at 91-92.) Plaintiff opposed this move in legal proceedings that extended from 2014 through 2015. (*Id.* at 92-93.) Those proceedings did not fully resolve in part because the parties could not agree how much to pay Plaintiff's wife Debbie for caring for Plaintiff's mother. (*Id.* at 93.)

In November of 2015, Plaintiff's sister Robin filed another legal action in Nevada state court to remove Plaintiff as trustee of the Family Trust. (*Id.* at 94.) It appears Judge Frances Dougherty presided over this case. A court order removed Plaintiff as trustee for the Family Trust in December of 2015 and appointed Plaintiff's sister Robin as acting trustee until another trustee could be appointed by that court. (*Id.* at 94-95.) A subsequent order of that court appointed Fiduciary Services of Nevada, LLC as trustee of the Family Trust, specifically an individual named Kaycee Zusman. (*Id.* at 95.) In July 2016, Ms. Zusman filed a petition to set aside the documents through which Plaintiff was attempting to pay his wife—on behalf of the Family Trust—for caring for his mother. (*Id.*) In May or June 2016, the court also ordered Plaintiff's mother be placed in the Stone Valley Alzheimer's care home, replaced Plaintiff's mother's attorney with another who would better represent her interests, and ordered the sale of Plaintiff's parents' home so that the Family Trust would remain solvent and cover the cost of Plaintiff's mother's care. (*Id.* at 70.)

To facilitate the sale of the house, Ms. Zusman, on behalf of the Family Trust, filed another legal action in the summer of 2016 to evict Plaintiff and his wife from Plaintiff's parents' house. (*Id.* at 70-71.) They had apparently continued to live there—though Plaintiff's mother no longer did—without paying rent. (*Id.* at 71.) Justice of the Peace David Clifton presided over that action. (*Id.*) Judge Clifton ordered Plaintiff and his wife be evicted from Plaintiff's parents house. (*Id.*) Plaintiff filed motions with Judge Clifton to oppose the

1  eviction. Plaintiff also apparently refused to leave the house when Washoe County
2  Sheriff's department deputies arrived. Judge Clifton eventually issued a lockout order, and
3  ordered that any items found on the property be inventoried and sold to further replenish
4  the money available to the Family Trust. Washoe County Sheriff's department deputies
5  on scene to facilitate the eviction allegedly took guns that belonged to Plaintiff from a truck
6  on the property. (*Id.* at 46.)

Plaintiff generally alleges that the attorneys and judges involved in the legal proceedings briefly described above have wrongfully conspired against him to deprive him of money and property he expected to be entitled to through the Family Trust. He also alleges that his sister is responsible for their father's death, and that his mother's constitutional rights have been violated because she was placed in care facility for people with Alzheimer's disease. He further alleges that the Washoe County Sheriff's Office and the Nevada Attorney General's Office failed to investigate his reports to them that his sister killed his father. (*Id.* at 9, 118.) The 147-page FAC includes twenty-two causes of action, primarily alleging violations of state law, though seven of them mention either federal statutes or constitutional rights. (*Id.* at 115-147.)

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

The Court takes particular care in reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Still, a liberal construction may not be used to supply an essential element of the claim not initially pled. *See Ross v. Williams*, 896 F.3d 958, 969 (9th Cir. 2018) (citation omitted).

**IV.    DISCUSSION**

As noted above, nearly all the defendants named in the FAC have moved to dismiss Plaintiff's claims against them. These motions to dismiss make overlapping arguments. Further, the FAC is so unclear that it is difficult for the Court to determine which claims are asserted against which defendants, not to mention the full scope of Plaintiff's claims. In addition, Plaintiff mostly alleges violations of state law in the FAC. This Court does not have original jurisdiction over those claims. In general, the Court finds that the FAC fails to state any federal claims against any of the named defendants. For these reasons, the

Court's analysis below is organized in terms of Plaintiff's claims against groups of defendants, and does not specifically address each of the numerous motions to dismiss. The Court first discusses below Plaintiff's non-constitutional federal claims, his constitutional claims, and then finally addresses his state law claims.

### A. Plaintiff's Non-Constitutional Alleged Federal Claims

Plaintiff alleges violations of three federal statutes, but has not stated a claim for various defendants' purported violations of them.

First, and while he does not plead it as an explicit cause of action, Plaintiff alleges throughout the FAC that various named defendants are liable to him under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. (*See generally* ECF No. 19). "The elements of a civil RICO claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citations omitted). But the FAC does not allege a plausible RICO claim. Plaintiff does not allege any predicate acts or resulting injury to his business or property, nor does Plaintiff make any attempt to match the elements of a civil RICO claim to any of the misconduct alleged in the FAC. To the extent the RICO claim is that all attorneys, judges and courts involved in the state court litigation surrounding the Family Trust and the care of his parents are engaged in a conspiracy simply because Plaintiff disagrees with their decisions—that is beyond implausible. The RICO claim must therefore be dismissed. *See Pugh v. City of Bakersfield*, 166 F.3d 343 (Table), 1998 WL 895252, at *1 (9th Cir. 1998) (affirming district court's dismissal of *pro se* Plaintiff's RICO claim where "the complaint is devoid of any facts whatsoever from which it could be inferred that any of the defendants violated RICO or that [plaintiff] suffered a cognizable injury.").

Further, Plaintiff appears to allege a violation of federal, criminal wire fraud laws. (ECF No. 19 at 128.) But no such claim is cognizable because the laws Plaintiff appears to be attempting to reference do not confer private rights of action. *See Ateser v. Bopp*,

29 F.3d 630 (Table), 1994 WL 377872, at *2 (9th Cir. 1994) ("Courts have consistently found that the mail and wire fraud statutes do not confer private rights of action.") This claim is therefore dismissed with prejudice.

Plaintiff also alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Plaintiff appears to assert this claim on his mother's behalf. (ECF No. 19 at 144.) Plaintiff cannot assert this claim on her behalf because he cannot represent her. *See* LR IA 11-(1-2); *see also Buran*, 5 F. Supp. 3d at 1216; *Inteligentry*, 2013 WL 3995272, at *1. Further, even if Plaintiff could represent his mother in this case, his vague and conclusory allegations of ADA violations fail to state a claim. *See Thurston v. U.S. Behavioral Health*, 124 F.3d 212 (Table), 1997 WL 577429 (9th Cir. 1997) (affirming district court's dismissal of *pro se* plaintiff's ADA claim where his complaint contained only vague and conclusory allegations).

### B. Plaintiff's Alleged Federal Constitutional Claims

Plaintiff also alleges violations of his constitutional rights against various named defendants. While the link is unclear in the FAC, Plaintiff's mechanism for alleging violation of his constitutional rights is 42 U.S.C. § 1983 ("Section 1983"). To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff cannot state a claim against the defendants whom he appears to allege violated his constitutional rights for the reasons explained below.

#### 1. Against Judges

First, Plaintiff appears to allege various judges violated his constitutional rights. His allegations are against Judge Doherty, who presides or presided over one or several cases regarding the administration of the Family Trust and guardianship over his parents (ECF No. 19 at 5-6), and Justice of the Peace David Clifton, who presided over the judicial foreclosure that resulted in Plaintiff and Plaintiff's wife being force to vacate his parents'

house (*Id.* at 5, 7). Plaintiff also named in the FAC Scott Freeman, Chief Judge of the Washoe County District Court, because he allegedly has oversight responsibility over Judge Doherty (*id.* at 6.), and deceased Judge Patrick Flanagan (*id.* at 1). The Court will collectively refer to these judges as "the Judges."

It is well established that judges who perform judicial functions are immune from suit. *See Mireles v. Waco,* 502 U.S. 9, 9-10 (1991) (per curiam). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* at 11 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). In *Mireles*, the United States Supreme Court explained the rationale for giving judicial officers absolute immunity:

> Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.* at 10 (quoting *Bradley v. Fisher,* 13 Wall. 335, 347, 20 L. Ed. 646 (1872)).

Plaintiff's claims against the Judges are based on challenges to their performance of judicial functions in the handling of Plaintiff's state court cases. The FAC contains no factual allegations to support his contention that they somehow acted in a non-judicial capacity. Further, it does not appear from the FAC that Judge Freeman or the deceased Judge Flanagan were involved in any way with Plaintiff's state court cases. The Judges are therefore entitled to judicial immunity even if they harbored actual prejudice against Plaintiff. *See Mireles*, 502 U.S. at 11. Thus, the Court will dismiss the Section 1983 claims against the Judges with prejudice.

### 2. Against Jacqueline Bryant, Washoe County Clerk

Next, Plaintiff alleges that the Washoe County Court Clerk Jacqueline Bryant violated his rights by allegedly preventing him from filing certain documents and failing to seal certain documents. (ECF No. 19 at 8.) Quasi-judicial immunity protects those performing functions "closely associated with the judicial process." *Duvall v. County of*

*Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (quoting *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996)). In determining whether an official is entitled to absolute immunity, the court must look at the nature of the function performed as opposed to the identity of the official performing it. *See In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002). Officials are entitled to immunity where their judgments are "functionally comparable" to those of judges*. See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993).

The Ninth Circuit has held that "court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process . . . unless [the] acts were done in the clear absence of all jurisdiction." *Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1390 (9th Cir. 1987). This includes merely administrative acts that are a part of the judicial function, including a clerks' filing or refusing to file documents with the court. *See id.*; *In re Castillo*, 297 F.3d at 952. The FAC does not allege that Jacqueline Bryant did anything beyond the scope of her job, much less provide any factual allegations suggesting that Jacqueline Bryant is not entitled to immunity here. Therefore, the Court finds that Jacqueline Bryant is immune from the Section 1983 claims asserted in this case because she is entitled to quasi-judicial immunity, and will dismiss the Section 1983 claims against her with prejudice.

### 3. Against Nevada Attorney General Adam Laxalt

Plaintiff also added a claim against Nevada Attorney General Adam Laxalt to the FAC. (ECF No. 19 at 9.) Plaintiff alleges Laxalt failed to investigate complaints and crimes reported to him, and that Laxalt's office's defense of the Judges in this case creates a conflict of interest. (*Id.*) But these claims against Laxalt are not cognizable. Again, Plaintiff has made no allegation that Laxalt's office has done anything beyond its job in representing the Judges in this case—and has made no allegations Laxalt has personally done anything in this case. Under the circumstances presented here, Nevada Attorney General Adam Laxalt is entitled to absolute immunity. *See Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991) (stating that where the "government attorney is performing acts

'intimately associated with the judicial phase' of the litigation, that attorney is entitled to absolute immunity from damage liability."). Thus, the Section 1983 claim against Laxalt will be dismissed with prejudice.

### 4. Against Individual Commissioners of the Washoe County Board of Commissioners

Plaintiff also sued individual Commissioners of the Washoe County Board of Commissioners: Kitty Jung, Bob Lucy, Jeanne Herman, Vaughn Hartung, and Marsha Berkbigler. (ECF No. 19 at 8-9.) Plaintiff appears to seek to hold these individual county commissioners responsible for the decisions of the Judges he disagrees with on a type of *respondeat superior* theory, and vaguely alleges they failed to comply with public records requests. (*Id.*) The FAC contains no specific factual allegations regarding allegedly deficient responses to public records requests, or how these individual defendants were personally involved in responding to any public records requests. In fact, the FAC contains no specific factual allegations against the individual county commissioners, much less any allegations that any of them interacted with the Plaintiff, any allegations that they acted outside their official capacities, or any allegations that they violated Plaintiff's constitutional rights. Under these circumstances, the individual county commissioners cannot be liable to Plaintiff under Section 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, the Court will dismiss the Section 1983 claims against them.

### 5. Against Individuals Employed by the Washoe County Sherriff's Office

Plaintiff also sued individuals employed by the Washoe County Sherriff's Office—its chief, Chuck Allen, and individual Sheriff's deputies Plaintiff interacted with, Jerry Baldridge, Greg L. Herrera, and John Machen—primarily for their involvement in the judicial foreclosure that resulted in Plaintiff and his wife being ejected from his parents' house. (ECF No. 19 at 17-19.) But Plaintiff cannot state a claim under Section 1983

against the individuals associated with the Washoe County Sherriff's Office he sued, as further explained below.

### a. Sheriff Chuck Allen

Plaintiff includes allegations against Washoe County Sherriff's Office Chief Chuck Allen in the FAC. (ECF No. 19 at 17-18.) But none of his allegations against Chuck Allen include any purported constitutional violations, much less that Chuck Allen personally participated in or directed any alleged constitutional violations committed by the Washoe County Sherriff's Office or anyone it employs. Therefore, Chuck Allen cannot be liable to Plaintiff under Section 1983. *See Taylor*, 880 F.2d at 1045. The Section 1983 claims against Chuck Allen must be dismissed.

### b. Jerry Baldridge and Greg L. Herrera

Plaintiff further alleges that Washoe County Sheriff's Office deputies Jerry Baldridge and Greg Herrera committed misconduct and violated his constitutional rights when they appeared at his parents' house in August and September 2016 to enforce the lockout order, and related orders, issued by Judge Clifton. (ECF No. 19 at 17-19.) But he offers no factual allegations against them to suggest they were doing anything beyond executing valid court orders. Therefore, Washoe County Sheriff's Office deputies Jerry Baldridge and Greg Herrera are entitled to absolute immunity for their actions. *See Dahlz v. Cty. of San Mateo*, 6 Fed. App'x 575, 576 (9th Cir. 2001) ("The arresting officers were executing a valid court order and are entitled to absolute immunity for their actions.") (citing *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 764-65 (9th Cir.1987)). The Court will also dismiss the Section 1983 claims against them with prejudice.

### c. John Machen[4]

Plaintiff also alleges that former Washoe County Sherriff's Deputy John Machen engaged in misconduct at Plaintiff's parents' house "in the fall of 2013 and 2014." (ECF

---

[4] While his name is spelled "Macken" in the FAC, apparently the correct spelling is "Machen." (ECF No. 89 at 1.)

No. 19 at 19). Plaintiff filed the FAC on June 6, 2018, which named John Machen as a defendant for the first time. (*Id.*) Thus, more than three years elapsed between John Machen's alleged wrongdoing and the date Plaintiff sued him. Plaintiff does not appear to allege that John Machen violated his constitutional rights. But to the extent that Plaintiff is claiming John Machen violated his constitutional rights, Plaintiff cannot state a claim against him because the applicable statute of limitations elapsed before Plaintiff added John Machen as a defendant to this case. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (holding that applicable statute of limitations under Nevada law is two years and affirming dismissal of Section 1983 claim on this basis). The Court is not persuaded by Plaintiff's arguments to the contrary. (ECF No. 92 at 17-27.) Thus, the Court will also dismiss any Section 1983 claim Plaintiff is attempting to allege against John Machen with prejudice.

### 6. Against City and County Entities

Plaintiff also alleges that a number of city and county entities are liable to him for constitutional violations related to the events outlined *supra* in Section II. Specifically, Plaintiff sued the Washoe County Board of Commissioners, Washoe County District Court, the City of Reno, the Reno City Council, and the Washoe County Sheriff's Office (collectively, the "County Defendants").[5] (ECF No. 19 at 5-17.)

---

[5] The Court assumes without deciding that the County Defendants are properly named, and may be sued under Section 1983—and therefore proceeds to address their lack of liability under *Monell.* While state agencies or departments are not "persons" under 42 U.S.C. § 1983, municipalities are "persons" and may be sued under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). Further, Sherriff's departments may be sued under Section 1983, but their liability also depends on the *Monell* analysis. *See Streit v. Cty. of Los Angeles*, 236 F.3d 552, 566 (9th Cir. 2001); *see also Roe v. Cty. of Lake*, 107 F. Supp. 2d 1146, 1148 (N.D. Cal. 2000) ("the Ninth Circuit has considered a California sheriff a local law enforcement agent for purposes of establishing section 1983 liability under *Monell*.").

1 "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *See Monell*, 436 U.S. at 691. *Monell* instructs that in order to impose liability on a county, municipality, or a subdivision of the municipality under Section 1983, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-04 (citations omitted). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (citations omitted).

Plaintiff includes no factual allegations in the FAC against any of the County Defendants suggesting that any of them have a policy or custom that causes constitutional torts. Plaintiff has not pointed to any policies, nor has he explained any potentially applicable customs. Lacking such allegations, the FAC fails to state a claim against the County Defendants for any alleged violations of Plaintiff's constitutional rights. Thus, the Court will dismiss the Section 1983 claims against the County Defendants.

### 7. Against Private Parties

In addition, Plaintiff named many private parties in the FAC, and appears to attempt to allege constitutional claims against them because some of his constitutional claims are directed generally at "defendants." (*See, e.g.*, ECF No. 19 at 134.) Specifically, he sued Washoe Legal Services, Washoe Legal Services Board of Directors, Washoe Legal Services President Austin K. Sweet and employee David Spitzer, Todd L. Torvinen, Robin R. Renwick, Kaycee Zusman, Robert Zusman, Fiduciary Services of Nevada, LLC, Lund Enterprises LLC, Kelly K. Lund of Lund Enterprises LLC, Daniel Lund of Lund Enterprises

LLC, JEA Senior Living d/b/a Stone Valley Alzheimer's Center, Dr. Debra A. Fredricks, Integrated Behavioral Healthcare, Ryan L. Earl Esq., Gordon Muir Esq., Hawkins Folsom and Muir, Don Leslie Ross Esq., Michael W. Keane Esq., Woodburn & Wedge Chtd. PC, Stephen Craig Moss Esq., Michael B. Springer Esq., Silver State Law LLC, The Barber Law Group, Joel Bennett Barber and Ryan J. McElhinney (part of Barber Law Group), Gunderson Law Group, Mark A. Gunderson, and John R. Funk (collectively, the "Private Party Defendants"). (ECF No. 19 at 9-26.)

Private individuals may only enforce rights guaranteed by the Fourteenth Amendment through Section 1983. However, Plaintiff has failed to state a claim even under Section 1983 because Plaintiff has not alleged facts to show that the Private Party Defendants—private actors—were involved in state action.

The Ninth Circuit has identified four different tests for determining when private actors may be involved in a state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999)). Under the public function test, a defendant would be a state actor if it were "endowed by the State with powers or functions governmental in nature." *Kirtley*, 326 F.3d at 1093. Under the joint action test, a defendant would be a state actor if the state insinuated itself into a position of interdependence with the private entity such that it became a joint participant in the challenged activity. *Id.* Under the compulsion test, defendant would be a state actor if it acted under the coercive influence or significant encouragement of the state. *Id.* at 1093. Under the nexus test, defendant would be a state actor if there was a close nexus between the state and the challenged action. *Id.* at 1094-95.

Plaintiff's allegations in the FAC satisfy none of these tests. The Private Party Defendants are not state actors. Plaintiff therefore cannot state a claim against the Private

Party Defendants under Section 1983. Thus, the Court will also dismiss the purported Section 1983 claims against the Private Party Defendants.

### C. Plaintiff's State Law Claims

Having dismissed all of Plaintiff's claims based on federal law, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome the motions pending before the Court.

It is therefore ordered that the city, county, and alleged state actors' motions to dismiss (ECF Nos. 24, 25, 26, 30, 33, 40, 62, 89) are granted.

It is further ordered that the remaining pending motions (ECF Nos. 27, 35, 37, 41, 43, 44, 45, 49, 51, 52, 54, 57, 61, 63) are denied as moot.

The Court dismisses the FAC's Section 1983 claims against the following defendants with prejudice: Judge Francis Doherty, Justice of the Peace David Clifton, Judge Scott Freeman, deceased Judge Patrick Flanagan, Washoe County Court Clerk Jacqueline Bryant, Nevada Attorney General Adam Laxalt, and Washoe County Sheriff's Office deputies Jerry Baldridge, Greg Herrera, and John Machen. The remaining Section 1983 claims are dismissed without prejudice.

The Court declines to exercise supplemental jurisdiction over the remaining state law claims in the FAC and therefore dismisses those claims without prejudice.

The Clerk of the Court is directed to enter judgment accordingly and close this case.

///

///

///

DATED THIS 21st day of December 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE